**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN THEIR INSURANCE POLICIES AND PAY RELATED PREPETITION OBLIGATIONS AND (B) RENEW, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE COVERAGE, AND FINANCE RELATED PREMIUMS AND (II) GRANTING RELATED RELIEF**

Cerca Trova Restaurant Group Holdings, Inc. and its affiliated debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**") hereby move (the "**Motion**") the United States Bankruptcy Court for the District of Delaware (the "**Court**") for entry of interim and final orders, substantially in the forms attached hereto as Exhibit A (the "**Proposed Interim Order**") and Exhibit B (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**"), pursuant to sections 105(a), 363(b), 363(c), 364(c), 364(d), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), Rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing the Debtors to (a) maintain their insurance policies and pay

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

related prepetition obligations and (b) renew, supplement, extend, or purchase insurance coverage in the ordinary course and finance related premiums; and (ii) granting related relief. In support of the Motion, the Debtors rely on the *Declaration of David Goronkin in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**") filed substantially concurrently herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. The Court has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the Court's entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 363(c), 364(c), 364(d), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, and 6004, and Local Rule 9013-1.

## II. BACKGROUND

4. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been

appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") in these Cases. Concurrently herewith, the Debtors filed a motion seeking joint administration of the Cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

5. The Debtors operate sixty-one (61) Outback Steakhouse® restaurants in California, Arizona, Colorado, Nevada, and New Mexico as franchisees of Outback Steakhouse of Florida, LLC (the "**Franchisor**"), an affiliate of Bloomin' Brands, Inc. Goldman Sachs Specialty Lending Group, L.P. is the administrative and collateral agent (the "**Prepetition Agent**") under the Debtors' prepetition secured credit facility. The Debtors commenced these Cases to pursue a sale of substantially all of their assets under section 363 of the Bankruptcy Code.

6. Additional information about the Debtors' business, capital structure, and the circumstances leading to these Cases is set forth in the First Day Declaration.[2]

## III. RELIEF REQUESTED

7. By this Motion, the Debtors request entry of the Proposed Orders (i) authorizing, but not directing, the Debtors to (a) maintain their Insurance Policies (as defined below) and pay, in the ordinary course, all premiums, deductibles, audit adjustments, broker fees, administration fees, and other obligations arising under or in connection with the Insurance Policies (collectively, the "**Insurance Obligations**"), including Insurance Obligations that arose before the Petition Date; and (b) renew, supplement, extend, modify, or replace the Insurance Policies, and purchase new insurance coverage in the ordinary course of business and finance related premiums; (ii) authorizing the Banks (as defined below) to honor and process related checks and

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

electronic payment requests; and (iii) granting related relief. The Debtors also request that the Court schedule a final hearing to consider entry of the Proposed Final Order.

## IV. THE DEBTORS' INSURANCE PROGRAM

### A. The Insurance Policies

8. In the ordinary course of business, the Debtors maintain approximately fifteen (15) insurance policies (collectively, the "**Insurance Policies**," and together with the related broker, financing, and administration arrangements, the "**Insurance Program**") that provide coverage for, among other things, general liability (including liquor liability, employee benefits liability, and hired and non-owned auto liability), umbrella and excess liability, property and earthquake (difference in conditions), workers' compensation and employers' liability, directors' and officers' liability, employment practices liability, fiduciary liability (and excess and Side A coverage), crime, cyber, and food-borne illness (trade-name restoration). A schedule of the Insurance Policies, including the coverage, carrier, policy number, approximate annual premium, and payment method for each, is attached hereto as Exhibit C.[3] Each of the Insurance Policies has a policy period running from December 1, 2025 through December 1, 2026, before giving effect to the extension of certain of the Insurance Policies described below.

9. The aggregate annual premium for the Insurance Policies for the 2025–2026 policy year was approximately $6.2 million (net of broker commissions). The Insurance Policies are essential to the Debtors' operations. Many are required by law, including workers' compensation coverage and, in many jurisdictions, liquor-liability coverage as a condition to the Debtors' liquor licenses. The Debtors' leases, the Master Franchise Agreement, the Prepetition

---

3 The Debtors request that the relief requested herein apply to all of the Debtors' insurance policies, including any policy inadvertently omitted from Exhibit C. The descriptions of the Insurance Policies in this Motion are summaries; the terms of the Insurance Policies control.

Credit Agreement, and the U.S. Trustee's operating guidelines also require the Debtors to maintain insurance.

**B. The Broker**

10. The Debtors obtain the Insurance Policies through Marsh & McLennan Agency, LLC ("**Marsh**"), which assists the Debtors in obtaining coverage, negotiating policy terms, and administering claims. The Debtors pay Marsh an annual service fee of approximately $450,000 (the "**Broker Fee**"), together with certain pass-through charges. The Debtors also pay third-party claims administration fees under certain of the Insurance Policies, including approximately $50,625 per year under the general-liability policy (together with the Broker Fee, the "**Administration Fees**"). The Debtors have paid the Administration Fees through the end of November 2026, consistent with their past practice, and do not expect any Administration Fees to be outstanding as of the Petition Date.

**C. Payment of Premiums and Premium Financing**

11. **Financed policies.** The Debtors financed the premiums for certain of the Insurance Policies for the 2025–2026 policy year under a premium finance agreement with FIRST Insurance Funding, a division of Lake Forest Bank & Trust Company, N.A. (the "**Premium Financing Agreement**," and the lender, the "**Premium Financier**"). Under the Premium Financing Agreement, the Debtors made a down payment of approximately $669,373 on total financed premiums, taxes, and fees of approximately $3.14 million, and financed the balance of approximately $2.47 million at an annual percentage rate of approximately 6.594%, payable in nine (9) monthly installments of approximately $282,131 from January 1 through September 1, 2026. The Premium Financier holds a security interest in the unearned premiums and certain other amounts payable under the financed policies. The Debtors paid the final

installment under the Premium Financing Agreement in September 2026, and no amount remains outstanding.

12. **Workers' compensation.** The Debtors pay the premium for their workers' compensation policy issued by Pacific Compensation Insurance Company (CopperPoint) directly to the carrier, through a deposit of 10% of the estimated annual premium and ten (10) monthly installments, each by ACH debit initiated by the carrier. The premium is calculated on the basis of estimated payroll and is subject to audit after the end of the policy period, which may result in additional premium owed by the Debtors or a refund to the Debtors (together with similar adjustments under other Insurance Policies, the "**Audit Adjustments**").

13. **Other policies.** The Debtors paid the premium for the property policy issued by Continental Casualty Company ("**CNA**") directly to the carrier on a prepaid, full-pay basis. Certain of the Insurance Policies also require the Debtors to pay deductibles or self-insured retentions in connection with covered claims (the "**Deductibles**"). No surety bonds or letters of credit support the Insurance Program.

14. As of the Petition Date, the Debtors estimate that approximately $250,000 in Insurance Obligations is outstanding, consisting principally of a potential Audit Adjustment under the workers' compensation policy, which the carrier will not determine until after the current policy period ends. The Debtors do not expect any material prepetition Insurance Obligations to come due during the first twenty-one (21) days of these Cases, other than Deductibles in respect of covered claims. The Debtors request authority to pay prepetition Insurance Obligations in an amount not to exceed $50,000 pending entry of the Proposed Final Order and $300,000 in the aggregate (inclusive of amounts paid under the Proposed Interim Order) upon entry of the Proposed Final Order.

**D. Postpetition Extension of the Insurance Program and D&O Tail Coverage**

15. Other than the D&O Policies (as defined below), the Insurance Policies are scheduled to expire on December 1, 2026, shortly after the Petition Date. Prior to the Petition Date, the Debtors, with the assistance of Marsh, extended the D&O Policies for ninety (90) days and purchased a six-year extended reporting period ("**tail**") for the D&O Policies (other than the crime policy). The Debtors, with the assistance of Marsh, intend to extend the remaining Insurance Policies after the Petition Date before they expire, and to pay the related premiums, currently estimated at approximately $1.7 million, during these Cases in the ordinary course of business. The Debtors request authority to pay those premiums and, if necessary, to finance them, as described below. Because the Debtors intend to sell substantially all of their restaurant assets during these Cases, the Debtors may need to modify, extend, or replace coverage during these Cases, including in connection with the closing of the sale. The Debtors do not anticipate that their directors' and officers', employment practices, and fiduciary liability and crime policies (collectively, the "**D&O Policies**") will be acquired by the proposed purchaser. Nothing in this Motion is intended to determine whether any proceeds of the D&O Policies are property of the Debtors' estates.

16. The Debtors request authority, in the ordinary course of business and in consultation with the Prepetition Agent and any statutory committee, to renew, supplement, extend, modify, or replace the Insurance Policies, and to purchase new or additional coverage, without further order of the Court, upon three (3) business days' prior written notice to the U.S. Trustee, the Prepetition Agent, the DIP Lender, and any statutory committee. Absent such authority, the Debtors could be left without required coverage if any Insurance Policy expires or must be replaced during these Cases, which would force them to close their restaurants, place them in default under their leases, franchise agreements, and liquor licenses, and violate the U.S.

Trustee's operating guidelines. The Debtors also request authority, upon the same notice, to finance premiums for any such renewal, extension, or replacement coverage if a carrier requires it or the Debtors determine that financing is in the best interests of their estates, and to grant the premium financier a first-priority security interest in the unearned premiums and other amounts payable under the financed policies (the "**Premium Collateral**"), with the consent of the Prepetition Agent and the DIP Lender. Because the Insurance Policies other than the D&O Policies expire on December 1, 2026, the Debtors may need to bind or extend coverage, and enter into any related financing, before the final hearing on this Motion.

**E. Coverage for the Closed Restaurants**

17. The Debtors closed ten (10) restaurants (the "**Closed Restaurants**") before the Petition Date and are rejecting the leases for those locations by separate motion filed concurrently herewith. Until the leases are rejected and the premises surrendered, the Debtors will maintain property and liability coverage for those locations to the extent required by the applicable leases and the Insurance Policies.

## V. BASIS FOR RELIEF

**A. Maintaining the Insurance Program Is Required and Is a Sound Exercise of the Debtors' Business Judgment**

18. Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business. Implicit in those provisions is the debtor in possession's duty to protect and preserve the estate, including an operating business's going-concern value. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). The U.S. Trustee's operating guidelines for chapter 11 cases require debtors in possession to maintain adequate insurance coverage, and the Debtors' leases, franchise agreements, liquor licenses, and the Prepetition Credit Agreement impose similar requirements. *See* 3 U.S. Trustee Program

Manual & Policies, Chapter 11 Case Administration § 3-3.2.3 (Feb. 24, 2026) (requiring that chapter 11 debtors "maintain appropriate insurance coverage" that is "sufficient to cover the fair market value of the estate's property"). Maintaining, renewing, and paying for the Insurance Program in the ordinary course is authorized by section 363(c)(1) of the Bankruptcy Code. To the extent any such action is outside the ordinary course, it is a sound exercise of the Debtors' business judgment and should be authorized under section 363(b)(1). *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).

**B. Payment of Prepetition Insurance Obligations Is Warranted Under the Doctrine of Necessity**

19. Under section 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine, courts may authorize a debtor to pay prepetition claims where payment is essential to the continued operation of the debtor's business. *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581–82 (3d Cir. 1981); *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994). Failure to pay prepetition Insurance Obligations could result in cancellation or non-renewal of coverage, loss of the ability to renew or replace coverage, or the assertion of claims against the Debtors' officers and directors without coverage. The amounts at issue are small relative to the coverage at stake.

**C. The Court Should Authorize the Banks to Honor Payments on Account of the Insurance Obligations**

20. The Debtors request that the banks and financial institutions on which checks were drawn or electronic payment requests made in respect of the Insurance Obligations (the "**Banks**") be authorized to receive, process, honor, and pay all such checks and requests, whether presented before or after the Petition Date, to the extent that sufficient funds are on deposit. The Debtors can readily identify the checks and requests relating to the Insurance Obligations authorized by the Proposed Orders, and the Debtors do not believe that any Bank will

inadvertently honor a payment that is not authorized. The Debtors also request authority to issue postpetition checks or fund transfers to replace any checks or fund transfers on account of the Insurance Obligations that are dishonored as a consequence of these Cases.

### D. The Court Should Authorize the Debtors to Finance Premiums for Extended or Replacement Coverage

21. Section 364(c)(2) of the Bankruptcy Code permits the Court, after notice and a hearing, to authorize a debtor in possession that is unable to obtain unsecured credit allowable under section 503(b)(1) to obtain credit secured by a lien on property of the estate that is not otherwise subject to a lien, and section 364(d)(1) permits the Court to authorize credit secured by a senior or equal lien on property of the estate that is subject to a lien if the holder of that lien is adequately protected. 11 U.S.C. § 364(c)(2), (d)(1). Premium financiers customarily require a first-priority security interest in the unearned premiums under the financed policies, and the Debtors do not expect that premium financing would be available on any other basis. Any financing under the Proposed Orders would be limited to premiums for coverage the Debtors are required to maintain, would be secured only by the Premium Collateral, and would require the consent of the Prepetition Agent and the DIP Lender. Bankruptcy Rule 4001(c)(2) permits the Court to authorize credit before a final hearing to the extent necessary to avoid immediate and irreparable harm to the estate. Because the Insurance Policies other than the D&O Policies expire on December 1, 2026, a lapse in coverage pending a separate motion would force the Debtors to close their restaurants.

### E. Immediate Relief Is Necessary

22. Bankruptcy Rule 6003(a) provides that, unless relief “is needed to avoid immediate and irreparable harm,” the Court must not, within twenty-one (21) days after the petition is filed, grant a motion to use, sell, or lease property of the estate, including a motion to

pay all or part of a claim that arose before the petition was filed. Fed. R. Bankr. P. 6003(a). A lapse in coverage would force the Debtors to close their restaurants. Consistent with Bankruptcy Rule 6003, the Debtors seek authority to pay prepetition Insurance Obligations during the first twenty-one (21) days of these Cases only in the amount necessary to avoid a lapse in coverage, as reflected in the $50,000 interim cap. The requirements of Bankruptcy Rule 6003 are satisfied.

**F. Waiver of Any Applicable Stay**

23. The Debtors also request that the Court waive the notice requirements of Bankruptcy Rule 6004(a), to the extent applicable, and the stay imposed by Bankruptcy Rule 6004(h), which provides that, "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VI. RESERVATION OF RIGHTS

24. Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates, (iii) shall be construed as a promise to pay a claim, or (iv) shall be deemed a concession by the Debtors that any lien (statutory or otherwise) is valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection of, or seek avoidance of, any lien.

## VII. NOTICE

25. The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) the Prepetition Agent and its counsel; (iv) the Franchisor and DIP Lender and their counsel; (v) Marsh, the Premium Financier, and the insurance carriers under the Insurance Policies; (vi) the banks and financial institutions at which the Debtors maintain accounts; and (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within forty-eight (48) hours of the entry of an order with respect to this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m)(iv). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## VIII. NO PRIOR REQUEST

26. No prior request for the relief sought in this Motion has been made to this or any other court.

## IX. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request that this Court enter the Proposed Orders, granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated: November 2, 2026
Wilmington, Delaware


PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Bradford J. Sandler*

Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bsandler@pszjlaw.com
pkeane@pszjlaw.com

-and-

KTBS LAW LLP
Michael L. Tuchin (*pro hac vice* admission pending)
Nir Maoz (*pro hac vice* admission pending)
1801 Century Park East, Twenty-Sixth Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: mtuchin@ktbslaw.com
nmaoz@ktbslaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*