**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749<br><br>(Joint Administration Requested) |

**DECLARATION OF ANISH GANDHI IN SUPPORT OF THE DEBTORS' DIP FINANCING AND CASH COLLATERAL MOTION**

I, Anish Gandhi, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Managing Director of Brookwood Associates, L.L.C. ("**Brookwood**"), an investment banking firm with offices at 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, Georgia 30305. Brookwood is the proposed investment banker to the above-captioned debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**") in these chapter 11 cases. I am authorized to submit this declaration (this "**Declaration**") on behalf of Brookwood.

2. I submit this Declaration in support of the *Debtors' Motion for an Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing from Outback Steakhouse of Florida, LLC, (B) Use Cash Collateral, (C) Provide Adequate Protection to Prepetition Secured*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

*Creditors; and (II) Granting Related Relief* (the "**DIP Motion**"), filed contemporaneously herewith.[2]

3. Except as otherwise indicated, the statements in this Declaration are based on (a) my personal knowledge, (b) my discussions with the Debtors' management, other members of the Brookwood team, and the Debtors' other advisors, (c) my review of relevant documents, or (d) my opinion based on my experience and my knowledge of the Debtors' business, the restaurant industry, and the marketing process described below. I am over the age of eighteen. I am not being compensated for this testimony other than through the compensation Brookwood will receive as a professional retained by the Debtors, none of which is payable on account of this testimony. If called upon to testify, I could and would testify competently to the facts set forth herein.

## I. BACKGROUND AND QUALIFICATIONS

4. Brookwood is an Atlanta-based investment banking firm that provides mergers and acquisitions, financing, strategic advisory, and restructuring services to middle-market companies. Brookwood is a registered broker-dealer and a member of FINRA and SIPC. Brookwood's professionals have particular experience in multi-unit, consumer-facing businesses, including restaurant concepts, franchisors, and multi-unit franchisees.

5. I joined Brookwood in 2011. I have approximately twenty years of experience providing financial and strategic advisory services to senior management teams, boards of directors, and shareholders of public and private companies, including exclusive sale assignments, acquisitions, divestitures, public debt and equity offerings, and private debt and

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the DIP Motion or the proposed Interim Order, as applicable.

equity placements. At Brookwood, I focus on middle-market companies in the consumer and retail sector, including the restaurant industry, and I have advised both franchisors and multi-unit franchisees. From 2006 to 2011, before joining Brookwood, I worked in investment banking at Bank of America Merrill Lynch in New York, most recently as a Vice President, focusing on mergers and acquisitions and capital raising for large-capitalization public companies. I hold a Bachelor of Business Administration from Emory University. I am registered with FINRA through Brookwood as a General Securities Representative and an Investment Banking Representative, and I have passed the Series 7, Series 63, and Series 79 examinations and the Securities Industry Essentials examination.

## II. BROOKWOOD'S RETENTION

6. The Company engaged Brookwood under an engagement letter dated June 29, 2026, which became effective upon its execution on June 30, 2026.[3] Since then, Brookwood has, among other things, (a) prepared a financial model and marketing materials, including a confidential information memorandum (the "**CIM**"); (b) worked with the Company to organize a virtual data room; (c) identified and contacted potential strategic and financial buyers; (d) responded to diligence requests and coordinated buyers' access to management; (e) evaluated the letters of intent received; (f) assisted the Debtors in negotiating the Stalking Horse Agreement and developing the Bidding Procedures; and (g) prepared regular reports on the marketing process for the Company's management and its prepetition lenders. Through this work, I and the other members of the Brookwood team have become familiar with the Debtors' business, operations, and financial condition.

[3] The terms of Brookwood's engagement, including its compensation, will be described in the Debtors' application to retain Brookwood.

## III. THE PREPETITION MARKETING PROCESS

7. The Debtors operate sixty-one Outback Steakhouse restaurants as franchisees of Outback Steakhouse of Florida, LLC (in its capacity as franchisor, the "**Franchisor**," and in its capacity as postpetition lender, the "**DIP Lender**"). The marketing process is described in detail in my declaration in support of the Debtors' bidding procedures motion, filed contemporaneously herewith (the "**Bidding Procedures Declaration**"). In summary, beginning in the week of August 17, 2026, Brookwood contacted 177 potential buyers, consisting of 115 strategic parties and 62 financial parties. Twenty parties executed non-disclosure agreements and received the CIM and access to the data room. By the September 17, 2026 deadline, the Debtors received three letters of intent.

8. After evaluating the letters of intent with Brookwood and their other advisors, the Debtors concluded that the letter of intent submitted by Bloomin' Brands, Inc., the Franchisor's parent (the "**Franchisor LOI**"), offered the highest or otherwise best value and the greatest certainty of closing. The Franchisor LOI proposed both an acquisition of substantially all of the Debtors' operating assets through a sale under section 363 of the Bankruptcy Code and the financing that is now the DIP Facility. After negotiation, the revised Franchisor LOI was executed on October 2, 2026, and its terms were then documented in the Stalking Horse Agreement, which provides for a cash purchase price of $26,300,000, plus the assumption of certain liabilities and the payment of cure costs, and remains subject to higher or otherwise better offers under the proposed Bidding Procedures.

## IV. ALTERNATIVE FINANCING WAS NOT REASONABLY AVAILABLE

9. As described in the DIP Motion, the Prepetition Secured Creditors assert liens on substantially all of the Debtors' assets, including their cash. I understand that the Prepetition Obligations total approximately $319.9 million, which far exceeds the $26,300,000 cash

purchase price under the Stalking Horse Agreement, the market-tested value of the Debtors' business. I understand that the Debtors have no material unencumbered assets.

10. I understand that the Prepetition Secured Creditors declined to provide postpetition financing to the Debtors, and that they consent to the priming liens securing the DIP Facility only on the terms set forth in the Proposed Orders. I further understand that the Prepetition Secured Creditors have not consented to being primed by any other lender.

11. Under these circumstances, I do not believe any third party would extend postpetition financing to the Debtors on better or comparable terms. Because the Prepetition Obligations exceed the value of the collateral by a wide margin, there is no equity cushion or unencumbered value to support unsecured or junior-lien financing. A third-party lender that required a senior lien would have to prime the Prepetition Secured Creditors without their consent, which would require a contested hearing on adequate protection that, in my view, the Debtors would be unlikely to win and that would add cost and delay at the outset of these cases.

12. In addition, the value of the Debtors' restaurants depends on the continued support of the Franchisor. A lender other than the DIP Lender would bear that risk without any ability to control it.

13. The DIP Facility is also unusual in size and purpose. It is a small, contingent liquidity backstop that is expected to be outstanding for approximately two months and to be repaid at the closing of the sale. In my experience, third-party lenders are unlikely to commit to a facility of this kind except at interest rates and fees that would be disproportionate to the amount borrowed.

14. For these reasons, Brookwood did not conduct a separate solicitation for debtor-in-possession financing. Based on my experience and the circumstances described above, I

believe that such a solicitation would have been futile and would not have produced financing on better or comparable terms.

## V. THE TERMS OF THE DIP FACILITY ARE REASONABLE

15. As described in the DIP Motion, the DIP Facility provides for advances of up to $5,500,000, of which up to $2,500,000 is available on an interim basis, subject to the conditions in the Proposed Orders, including that advances are available only to the extent needed to maintain minimum liquidity of $2,000,000. The DIP Facility bears no interest. The only fees are a $50,000 DIP Commitment Fee and reimbursement of the DIP Lender's reasonable and documented out-of-pocket expenses. If the sale to the DIP Lender closes, any amounts outstanding under the DIP Facility will be credited dollar for dollar against the cash purchase price. If the Debtors instead close a sale with another buyer, the DIP Facility will be repaid in cash at that closing.

16. By comparison, debtor-in-possession facilities for middle-market companies in comparable circumstances commonly bear interest at 12% or more per annum and carry commitment, funding, and exit fees that, in my experience, can total 8% to 20% of the commitment. The DIP Facility bears no interest, and its only fee, $50,000, is less than one percent of the commitment. I understand that the DIP Lender agreed to these terms because, as the stalking horse bidder, it has an interest in the Debtors continuing to operate through the closing of the sale, and because any amounts it advances will be credited against the purchase price if its bid prevails. The milestones in the DIP Facility require, among other things, entry of the Bidding Procedures Order within fourteen days after the Petition Date, a bid deadline of December 8, 2026, an auction (if required) by December 11, 2026, and a closing by January 4, 2027. Because Brookwood began marketing the Debtors' business in August 2026, those

milestones provide approximately sixteen weeks of total marketing time before the bid deadline, which, in my view, is sufficient to market the Debtors' assets and conduct an auction.

17. The terms of the DIP Facility were negotiated at arm's length and in good faith as part of the Franchisor LOI and the Stalking Horse Agreement, under the oversight of the Debtors' board of directors. The Debtors were advised by KTBS Law LLP, Brookwood, and their other advisors, and the DIP Lender was represented by its own counsel.

## VI. CONCLUSION

18. For these reasons, I believe that the DIP Facility is the best financing reasonably available to the Debtors under the circumstances, that its terms are fair and reasonable, and that entering into it is a sound exercise of the Debtors' business judgment.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 2, 2026
Atlanta, Georgia

*/s/ Anish Gandhi*
Anish Gandhi
Managing Director
Brookwood Associates, L.L.C.