# EXHIBIT A

## Proposed Bidding Procedures Order

(attached)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749<br><br>(Jointly Administered) |

**ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) AUTHORIZING THE DEBTORS' ENTRY INTO THE STALKING HORSE AGREEMENT AND APPROVING THE BID PROTECTIONS, (III) SCHEDULING AN AUCTION AND A SALE HEARING, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**"), (a) authorizing and approving the bidding procedures attached hereto as Exhibit 1 (the "**Bidding Procedures**"),[2] in connection with the sale of substantially all of the Debtors' assets relating to the Restaurants, other than the Excluded Assets (the "**Assets**," as further defined in the Bidding Procedures); (b) authorizing the Debtors' entry into that certain Asset Purchase Agreement, dated as of November 1, 2026 (together with all exhibits and schedules thereto, and as may be amended, supplemented, or otherwise modified in accordance with its terms, the "**Stalking Horse Agreement**"), by and among the

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Bidding Procedures or, if not defined therein, in the Motion or the Stalking Horse Agreement, as applicable.

Debtors and Outback Steakhouse of Florida, LLC (together with any permitted assignee under section 12.4 of the Stalking Horse Agreement, the "**Stalking Horse Bidder**"), a copy of which is attached to the Motion as Exhibit B, and approving the Bid Protections; (c) scheduling the Auction and the Sale Hearing; (d) approving the form and manner of notice thereof; (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale Transaction; and (f) granting related relief, all as more fully set forth in the Motion; and upon the *Declaration of David Goronkin in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**") and the *Declaration of Anish Gandhi in Support of the Debtors' Bidding Procedures and Sale Motion* (the "**Brookwood Declaration**"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion, the First Day Declaration, and the Brookwood Declaration and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration, the Brookwood Declaration, and

at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES THAT:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The statutory and legal predicates for the relief granted herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"); Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D. Proper, timely, adequate, and sufficient notice of the Motion, the Hearing, and the relief granted herein has been given under the circumstances, and no other or further notice is required except as set forth herein. A reasonable opportunity to object or be heard regarding the relief granted herein has been afforded to all parties in interest. Notice of the Motion has been given to: (i) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (ii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a

consolidated basis); (iii) Goldman Sachs Specialty Lending Group, L.P., in its capacity as administrative agent and collateral agent under the Debtors' prepetition secured credit facility (the "**Prepetition Agent**"), and its counsel; (iv) the lender(s) under the Debtors' postpetition financing facility (the "**DIP Lender**") and its counsel; (v) the Stalking Horse Bidder and its counsel; (vi) the Franchisor (as defined in the Stalking Horse Agreement); (vii) all counterparties to the Potential Assigned Contracts (as defined below), including the landlords under the Debtors' Restaurant real property leases; (viii) all parties known by the Debtors to have expressed an interest in acquiring all or any portion of the Assets; (ix) all parties known by the Debtors to assert a lien on any of the Assets; (x) the United States Attorney's Office for the District of Delaware; (xi) the Internal Revenue Service; (xii) the attorneys general and alcoholic beverage control authorities for the states of Arizona, California, Colorado, Nevada, and New Mexico; (xiii) all applicable state and local taxing authorities; (xiv) [counsel to any official committee of unsecured creditors appointed in these chapter 11 cases (the "**Committee**");] and (xv) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

E. The Debtors have articulated good and sufficient business reasons for this Court to: (i) approve the Bidding Procedures; (ii) authorize the Debtors' entry into the Stalking Horse Agreement and approve the Bid Protections; (iii) schedule the Auction and the Sale Hearing and approve the form and manner of notice thereof; and (iv) approve the Assumption and Assignment Procedures (as defined below), including the form and manner of the Cure Notice (as defined below).

F. The Bidding Procedures were negotiated at arm's length and in good faith and are fair, reasonable, and appropriate. The Bidding Procedures are designed to maximize the value received for the Assets to the benefit of the Debtors' estates, their creditors, and other parties in

interest, are consistent with the Debtors' requirements to comply with the Milestones (as defined in the DIP Order[3]) in order to access the postpetition financing and cash collateral funding these Chapter 11 cases, and represent a sound exercise of the Debtors' business judgment that is consistent with their fiduciary duties under applicable law.

G. The Stalking Horse Agreement was negotiated by the Debtors and the Stalking Horse Bidder at arm's length and in good faith, and without collusion. The Stalking Horse Bid represents the highest or otherwise best offer the Debtors have received to date for the Assets and will enable the Debtors to secure an adequate floor for the Assets and to insist that competing Bids be materially higher or otherwise better than the Stalking Horse Bid.

H. The Bid Protections, including the break-up fee in the amount of $790,000 (the "**Break-Up Fee**"), payable in accordance with and subject to the terms of the Stalking Horse Agreement, the Bidding Procedures, and this Order: (i) are fair and reasonable in light of the size and nature of the Sale Transaction and the efforts that have been and will be expended by the Stalking Horse Bidder; (ii) were negotiated by the Debtors and the Stalking Horse Bidder at arm's length and in good faith; (iii) are actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (iv) have induced the Stalking Horse Bidder to submit a Bid that will serve as a minimum floor bid on which the Debtors, their creditors, and other bidders may rely; and (v) are necessary to ensure that the Stalking Horse Bidder will continue to pursue the Sale Transaction contemplated by the Stalking Horse Agreement. The Stalking Horse Bidder would not have entered into the Stalking Horse Agreement absent the Bid Protections.

---

[3] As used herein, "DIP Order" means [the [interim/final] order of this Court authorizing the Debtors to obtain postpetition financing and use cash collateral [Docket No. [•]]], as may be amended, supplemented, or otherwise modified from time to time.

I. The notice of the Sale Transaction, the Auction, and the Sale Hearing, substantially in the form attached hereto as Exhibit 2 (the "**Sale Notice**"), and the service and publication thereof as set forth herein, are reasonably calculated to provide all interested parties (including unknown parties) with timely and proper notice of: (i) the Sale Transaction, including the sale of the Assets free and clear of all liens, claims, interests, and encumbrances (except as set forth in the applicable purchase agreement), with such liens, claims, interests, and encumbrances to attach to the proceeds of the Sale Transaction; (ii) the Bidding Procedures and the Bid Deadline; (iii) the date, time, and place of the Auction (if one is held); (iv) the Sale Objection Deadline, the Supplemental Objection Deadline, and the date, time, and place of the Sale Hearing; (v) instructions for obtaining copies of the Motion, the Bidding Procedures, and the Stalking Horse Agreement; and (vi) the proposed assumption and assignment of executory contracts and unexpired leases in connection with the Sale Transaction, and no other or further notice of the foregoing shall be required.

J. The Assumption and Assignment Procedures and the notice of proposed assumption and assignment and Cure Costs, substantially in the form attached hereto as Exhibit 3 (the "**Cure Notice**"), are reasonably calculated to provide each counterparty to a Potential Assigned Contract with proper notice of the potential assumption and assignment of its Potential Assigned Contract, the proposed Cure Costs relating thereto, and the procedures and deadlines for objecting thereto, and no other or further notice is required.

K. The Motion and the Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

L. The legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. All objections to the relief granted herein that have not been withdrawn, waived, or settled as announced to the Court at the Hearing or by stipulation filed with the Court are overruled on the merits.

## I. Important Dates and Deadlines

3. The following dates and deadlines are hereby approved and established in connection with the sale process (subject to modification in accordance with the Bidding Procedures and this Order):

| Event | Date / Deadline |
|---|---|
| Service and Publication of Sale Notice | No later than two (2) business days after entry of this Order |
| Service of Cure Notice | No later than five (5) business days after entry of this Order |
| Cure Objection Deadline | December 7, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Bid Deadline | December 8, 2026 at 5:00 p.m. (prevailing Eastern Time) |
| Qualified Bid Determination Deadline | December 9, 2026 |
| Auction (if necessary) | December 11, 2026 at 10:00 a.m. (prevailing Pacific Time) |
| Notice of Successful Bidder | Within one (1) business day after the conclusion of the Auction |
| Sale Objection Deadline | December 1, 2026 at 4:00 p.m. (prevailing Eastern Time) |
| Supplemental Objection Deadline | At the Sale Hearing |
| Sale Hearing | December 15, 2026 at [__]:00 [a/p].m. (prevailing Eastern Time) |

4. ***Bid Deadline***. The deadline by which all Bids for the Assets must be ***actually received*** by the Bid Notice Parties in accordance with the Bidding Procedures is December 8, 2026 at 5:00 p.m. (prevailing Eastern Time) (the "**Bid Deadline**").

5. ***Auction***. If the Debtors receive one or more timely Qualified Bids in addition to the Stalking Horse Bid, the Debtors shall conduct the Auction on December 11, 2026 at 10:00 a.m. (prevailing Pacific Time) at the offices of KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, or virtually by video conference, or on such other date and/or at such other location as the Debtors, after consultation with the Consultation Parties, shall notify all Qualified Bidders, the Consultation Parties, and the U.S. Trustee. Only Qualified Bidders shall be permitted to bid at the Auction. The Auction shall be conducted in accordance with the Bidding Procedures.

6. ***Notice of Successful Bidder***. Within one (1) business day after the conclusion of the Auction, the Debtors shall file with the Court and serve on the counterparties to the Designated Contracts of the Successful Bidder and the Back-Up Bidder a notice identifying the Successful Bidder and the Back-Up Bidder, if any (the "**Notice of Successful Bidder**"), together with the applicable Adequate Assurance Information (to the extent not previously provided). If the Stalking Horse Bidder is designated as the Back-Up Bidder, its Bid shall remain open and irrevocable, and the Stalking Horse Bidder shall be obligated to consummate the Sale Transaction upon delivery of a Back-Up Closing Notice, in each case in accordance with section 4.3(c) of the Stalking Horse Agreement. If no Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, the Debtors shall, within one (1) business day after the Bid Deadline, file a notice of cancellation of the Auction and designation of the Stalking Horse Bidder as the Successful Bidder.

7. ***Sale Objections***. Objections, if any, to the Sale Transaction, including the sale of the Assets free and clear of all liens, claims, interests, and encumbrances and entry of the Sale Order (other than Cure Objections and Assignment Objections, which are governed by Section III of this Order, and Supplemental Objections), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state, with specificity, the legal and factual bases therefor; and (d) be filed with the Court and served so as to be ***actually received*** no later than December 1, 2026 at 4:00 p.m. (prevailing Eastern Time) (the "**Sale Objection Deadline**") by the following parties (collectively, the "**Objection Notice Parties**"):

| **Counsel to the Debtors** | **The United States Trustee** |
|---|---|
| KTBS Law LLP<br>1801 Century Park East, Twenty-Sixth Floor<br>Los Angeles, CA 90067<br>Attn: Nir Maoz<br>nmaoz@ktbslaw.com,<br><br>Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Attn: Bradford J. Sandler and Peter J. Keane<br>bsandler@pszjlaw.com | Office of the United States Trustee<br>for the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE 19801<br>Attn: Linda J. Casey<br>Linda.Casey@usdoj.gov |
| **Counsel to the Prepetition Agent** | **Counsel to the Stalking Horse Bidder and DIP Lender** |
| Goldberg Kohn Ltd.<br>55 East Monroe Street, Suite 3300<br>Chicago, IL 60603<br>Attn: Danielle Juhle and Drake Saffell<br>Danielle.juhle@goldbergkohn.com;<br>drake.saffell@goldbergkohn.com<br><br>Richards, Layton & Finger, P.A.<br>920 North King Street<br>Wilmington, DE 19801<br>Attn: John H. Knight<br>Knight@RLF.com | BakerHostetler<br>127 Public Square, Suite 2000, Cleveland, OH 44114-1214<br>Attn: Michael A. VanNiel, Alexis C. Beachdell and Janet Spreen<br>mvanniel@bakerlaw.com; abeachdell@bakerlaw.com;<br>jspreen@bakerlaw.com |
| **Counsel to the Committee (if any)** | |
| [__________] | |

8. ***Supplemental Objections***. Following service of the Notice of Successful Bidder, any objection relating solely to (a) the conduct of the Auction, (b) the identity of the Successful

Bidder (if other than the Stalking Horse Bidder), or (c) the adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder (each, a "**Supplemental Objection**") must be filed with the Court and served on the Objection Notice Parties so as to be ***actually received*** no later than the commencement of the Sale Hearing (the "**Supplemental Objection Deadline**").

9. Any party that fails to timely file and serve an objection in accordance with this Order shall be forever barred from asserting any objection to the Motion, the entry of the Sale Order, and/or the consummation of the Sale Transaction with the Successful Bidder pursuant to the applicable purchase agreement, including the sale of the Assets free and clear of all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, and shall be deemed to have consented to the entry of the Sale Order and consummation of the Sale Transaction and all transactions related thereto, including the assumption and assignment of the Designated Contracts in accordance with this Order.

10. ***Sale Hearing***. The Sale Hearing shall commence on December 15, 2026 at [__]:00 [a/p].m. (prevailing Eastern Time) before the Honorable [___________], United States Bankruptcy Judge, at the Court, located at 824 North Market Street, [__] Floor, Courtroom No. [__], Wilmington, Delaware 19801. The Sale Hearing may be adjourned or rescheduled by the Debtors, after consultation with the Consultation Parties, by announcement in open Court, in a notice of agenda, or in a notice filed on the docket of these chapter 11 cases, without further notice to any party. The Debtors shall file the proposed Sale Order and serve it on the Objection Notice Parties and each Potential Bidder no later than November 24, 2026.

## II. Auction, Bidding Procedures, and Related Relief

11. The Bidding Procedures are incorporated herein and are hereby approved in their entirety. The failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision. The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Sale Transaction, and any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures, and the Debtors and their professionals shall direct and preside over the Auction.

12. The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid is deemed a Qualified Bid. The Stalking Horse Bidder shall not be required to deliver the Preliminary Bid Documents or any deposit other than as set forth in the Stalking Horse Agreement, and shall be entitled to participate in the Auction and to submit Overbids at the Auction under all circumstances, in each instance without further qualification.

13. ***Consultation Parties***. Notwithstanding anything to the contrary in this Order or the Bidding Procedures, (a) neither the Stalking Horse Bidder nor any of its affiliates (including in its capacity as Franchisor or DIP Lender) shall be a Consultation Party, and (b) any Consultation Party that submits, or is an affiliate of any party that submits, a Bid shall not be a Consultation Party with respect to the evaluation of Bids or the conduct of the Auction unless and until it withdraws such Bid, and the Debtors shall not share with any such party the Bids or other confidential bidding information of any other Bidder.

14. The Prepetition Agent, on behalf of the Existing Lenders, has consented to the Sale Transaction with the Stalking Horse Bidder and the release of all liens on the Acquired Assets (but

not the proceeds thereof), subject to the receipt by the Prepetition Agent and the Existing Lenders of net cash proceeds of not less than $15,000,000 at the Closing (after giving effect to the funding of any wind-down reserve and any agreement regarding the use of cash collateral after the Closing) and the other terms of the Stalking Horse Agreement. Notwithstanding anything herein to the contrary, the Prepetition Agent and Existing Lenders (as defined in the Stalking Horse Agreement) have agreed not to submit a credit bid at the Auction, so long as the Stalking Horse Bidder is not in breach of the Stalking Horse Agreement, the Stalking Horse Agreement is still in full force and effect, and neither the Stalking Horse Agreement nor any other agreement contemplated thereby or hereby has been amended or otherwise modified in a manner that reduces the cash purchase price or is otherwise adverse to the Debtors, Prepetition Agent or Existing Lenders in any material respect; provided that the Prepetition Agent may credit bid, shall be deemed a Qualified Bidder, and shall be deemed to have submitted a Qualified Bid solely for the purpose of assigning such credit bid to the Stalking Horse Bidder if the Stalking Horse Bidder is the Successful Bidder, without representation, warranty or recourse, in exchange for cash payment of the Purchase Price (as defined in the Stalking Horse Agreement and as may be modified at the Auction) to effectuate the Transaction (as defined in the Stalking Horse Agreement).

15. If the Debtors do not receive any Qualified Bid other than the Stalking Horse Bid by the Bid Deadline: (a) the Debtors shall not hold the Auction; (b) the Stalking Horse Bid shall be the Successful Bid and the Stalking Horse Bidder shall be the Successful Bidder; and (c) the Debtors shall seek approval of the Sale Transaction with the Stalking Horse Bidder at the Sale Hearing. If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid, the Debtors shall conduct the Auction in accordance with the Bidding Procedures.

16. Nothing in the Stalking Horse Agreement, the Bidding Procedures, or this Order shall modify the automatic stay under section 362 of the Bankruptcy Code with respect to the Franchise Agreements, and the Franchisor shall not terminate the Franchise Agreements or exercise remedies thereunder except as permitted in the Stalking Horse Agreement or upon further order of this Court.

17. Pursuant to Local Rule 6004-1(c)(ii): (a) each Qualified Bidder participating at the Auction shall be required to confirm on the record that it has not engaged in any collusion with respect to the bidding or the Sale Transaction, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be transcribed or videotaped.

18. The Debtors are authorized to enter into the Stalking Horse Agreement, subject to higher or otherwise better offers in accordance with the Bidding Procedures and to entry of the Sale Order, and to perform all obligations thereunder that are to be performed prior to the Sale Hearing or entry of the Sale Order, including with respect to the Bid Protections. Approval of the Sale Transaction contemplated by the Stalking Horse Agreement (or any other Successful Bid) is reserved for the Sale Hearing.

19. The Bid Protections are approved in their entirety. The Debtors are authorized and directed to pay the Break-Up Fee to the Stalking Horse Bidder, without further order of the Court, if and when due in accordance with, and subject to, the terms of the Stalking Horse Agreement, the Bidding Procedures, and this Order. The Break-Up Fee shall be payable only upon the consummation of an Alternative Transaction (as defined in the Stalking Horse Agreement) with the Successful Bidder or a back-up bidder selected at the Auction, or consummated within one (1) year after termination of the Stalking Horse Agreement pursuant to section 10.2(c) or 10.2(d) thereof, solely from the cash proceeds thereof, concurrently with (and as a condition to) the closing

of such transaction, and on one occasion only. Notwithstanding anything to the contrary in the Stalking Horse Agreement, the Break-Up Fee shall not be payable if (a) the Stalking Horse Agreement is terminated pursuant to section 10.2(a), 10.2(b), 10.2(h), or 10.2(i) thereof, (b) the Stalking Horse Bidder (or an affiliate thereof) is the Successful Bidder, or (c) the Stalking Horse Bidder fails to participate in the Auction, withdraws or reduces its Bid, or fails to comply with this Order or the Bidding Procedures. Receipt of the Break-Up Fee, together with the return of the Deposit (subject to the terms set forth in Section 10.4(c) of the Stalking Horse Agreement), shall be in full satisfaction of all claims of the Stalking Horse Bidder arising from or relating to the Stalking Horse Agreement or any Alternative Transaction; provided that in the event of an Alternative Transaction with a purchaser who proposes to use the assets for purposes other than operating as an Outback Steakhouse restaurant, Buyer expressly reserves all rights and claims with respect to the Franchise Agreements, any other agreements and applicable law, including amounts owed under the Franchise Agreements, unless otherwise agreed by the Stalking Horse Bidder.

20. The Break-Up Fee, to the extent payable under the Stalking Horse Agreement and this Order, shall constitute an allowed administrative expense claim against the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code or otherwise, subject only to the DIP Order (including any carve-out for professional fees therein). The Debtor is authorized and, concurrently with the closing of an Alternative Transaction on account of which the Break-Up Fee is payable, directed to pay any amounts that may become due to the Stalking Horse Bidder on account of the Break-Up Fee on the terms set forth in the Stalking Horse Agreement and this Order.

21. Except for the Stalking Horse Bidder with respect to the Bid Protections, no person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived its right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

22. Each Bidder that submits a Bid shall be deemed to have: (a) consented to the core jurisdiction of this Court and to the entry of a final order or judgment by this Court in connection with any disputes relating to the Bidding Procedures, the Auction, the Transaction Documents, and the closing, as applicable; (b) waived any right to a jury trial in connection therewith; and (c) waived any right to pursue a substantial contribution claim under section 503(b) of the Bankruptcy Code related in any way to the submission of its Bid, the Bidding Procedures, or the sale process.

23. The Debtors, after consultation with the Consultation Parties, may (a) extend any of the deadlines set forth in the Bidding Procedures or this Order, and adjourn or reschedule the Auction and/or the Sale Hearing, (b) amend the Auction procedures at any time before or during the Auction, and (c) modify the Bidding Procedures and cancel the Auction in accordance with the Bidding Procedures; *provided* that the Debtors shall not, without the consent of the Stalking Horse Bidder, modify the Bidding Procedures in any manner that is inconsistent with this Order or the Stalking Horse Agreement or adverse to the Stalking Horse Bidder, including with respect to the Bid Protections, the Minimum Bid Requirement, the initial Overbid increment, or the Stalking Horse Bidder's right to participate in the Auction (it being understood that the extension of any deadline, or the adjournment or rescheduling of the Auction or the Sale Hearing, under clause (a) of this paragraph shall not require the consent of the Stalking Horse Bidder). The Debtors shall file a notice on the docket of these chapter 11 cases of any material modification of the Bidding

Procedures or any extension of the deadlines set forth therein or herein. Nothing in this Order or the Bidding Procedures shall limit, modify, or otherwise affect any consent or approval right of any party under the DIP Order.

24. Nothing in this Order or the Bidding Procedures shall require the Debtors or their respective boards of directors (or comparable governing bodies) to take any action, or to refrain from taking any action, that the Debtors determine would be inconsistent with their fiduciary obligations under applicable law.

**III. Approval of the Assumption and Assignment Procedures**

25. The following procedures regarding the assumption and assignment of executory contracts and unexpired leases pursuant to sections 363 and 365 of the Bankruptcy Code in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**") are hereby approved:

a. ***Cure Notice***. No later than five (5) business days after entry of this Order, the Debtors shall file with the Court and serve the Cure Notice, by first-class mail (and by email where available), on each counterparty to an executory contract or unexpired lease that may be assumed and assigned in connection with the Sale Transaction (collectively, the "**Potential Assigned Contracts**") and its counsel of record, if known, and shall provide a copy of the Cure Notice to the Stalking Horse Bidder and Prepetition Agent. The Cure Notice shall identify: (i) each Potential Assigned Contract; (ii) the name of each counterparty thereto; (iii) the Debtors' good faith calculation of the amount necessary to cure all monetary defaults under each Potential Assigned Contract (the "**Cure Costs**"); (iv) the identity of the Stalking Horse Bidder and the manner in which counterparties may obtain the Stalking Horse Bidder's adequate assurance information; and (v) the Cure Objection Deadline and the procedures for objecting. Service of the Cure Notice shall not constitute an admission that any Potential Assigned Contract is an executory contract or unexpired lease or that any stated Cure Cost constitutes a claim against the Debtors or a right against the Stalking Horse Bidder (or any other Successful Bidder), and all rights with respect thereto are expressly reserved.

b. ***Adequate Assurance Information***. Upon the written request of a counterparty to a Potential Assigned Contract, the Debtors shall provide such counterparty with the Stalking Horse Bidder's adequate assurance

information on a confidential basis. The Debtors are authorized to provide the Adequate Assurance Information submitted by any Qualified Bidder whose Bid includes a counterparty's Potential Assigned Contract to such counterparty, on a confidential basis, within one (1) business day after the Debtors' receipt thereof.

c. ***Cure Objections and Assignment Objections***. Any counterparty to a Potential Assigned Contract that wishes to object to (i) the proposed Cure Costs (a "**Cure Objection**") or (ii) the proposed assumption and assignment of its Potential Assigned Contract to the Stalking Horse Bidder, including the adequate assurance of future performance by the Stalking Horse Bidder (an "**Assignment Objection**"), must file and serve such objection on the Objection Notice Parties so as to be ***actually received*** no later than December 7, 2026 at 4:00 p.m. (prevailing Eastern Time) (the "**Cure Objection Deadline**"). Each Cure Objection and Assignment Objection must be in writing, state with specificity the legal and factual bases therefor, and, in the case of a Cure Objection, state the cure amount that the counterparty asserts is required, with appropriate documentation in support thereof. Objections to the adequate assurance of future performance of a Successful Bidder other than the Stalking Horse Bidder shall be Supplemental Objections and must be filed and served by the Supplemental Objection Deadline.

d. ***Failure to Object***. If a counterparty fails to timely file and serve a Cure Objection or Assignment Objection (or, as applicable, a Supplemental Objection) in accordance with this Order: (i) such counterparty shall be deemed to have consented to the assumption and assignment of its Potential Assigned Contract to the Successful Bidder, if designated as a Designated Contract, notwithstanding any anti-assignment or similar provision therein, and shall be forever barred from asserting any objection with regard thereto; and (ii) the Cure Costs set forth in the Cure Notice shall be controlling and binding, notwithstanding anything to the contrary in such Potential Assigned Contract or any other document, and such counterparty shall be forever barred from asserting against the Debtors, their estates, or the Successful Bidder, or the property of any of them, any additional cure amount or any other default or claim arising under such Potential Assigned Contract prior to the assignment thereof.

e. ***Supplemental Cure Notice***. If, at any time after service of the Cure Notice, the Debtors (i) identify additional Potential Assigned Contracts, (ii) remove any Potential Assigned Contract, or (iii) modify the Cure Costs for any Potential Assigned Contract, the Debtors shall promptly file and serve a supplemental Cure Notice (a "**Supplemental Cure Notice**") on each affected counterparty and its counsel of record, if known. Each counterparty to a Potential Assigned Contract identified for the first time in, or whose Cure Costs are reduced by, a Supplemental Cure Notice shall have not less than seven (7) days after service of such Supplemental Cure Notice to file

and serve a Cure Objection or Assignment Objection, limited to the matters first set forth in the Supplemental Cure Notice.

f. ***Resolution of Objections***. The Debtors and the objecting counterparty, in consultation with the Successful Bidder, may resolve any timely Cure Objection or Assignment Objection without further order of the Court. Any such objection that is not resolved prior to the Sale Hearing shall be heard at the Sale Hearing or at such later date as the Debtors (in consultation with the Successful Bidder) and the counterparty may agree or the Court may order. Pending resolution of a Cure Objection, the applicable Potential Assigned Contract may be assumed and assigned to the Successful Bidder, *provided* that the disputed portion of the asserted cure amount is reserved pending consensual resolution or order of the Court. The Successful Bidder may elect to remove any Potential Assigned Contract from its list of Designated Contracts in accordance with its purchase agreement.

g. ***Effectiveness of Assumption and Assignment***. No Potential Assigned Contract shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) entry of an order of the Court authorizing such assumption and assignment and (ii) the closing of the Sale Transaction.

h. ***Designation Notice***. No later than three (3) business days prior to the closing of the Sale Transaction, the Debtors shall file and serve on each counterparty to a Potential Assigned Contract a notice (the "**Designation Notice**") identifying the Potential Assigned Contracts designated as Designated Contracts by the Successful Bidder as of such date and the identity of the assignee of each.

i. ***Designees***. If the Successful Bidder intends to designate any person other than itself as the assignee of any Designated Contract, the Successful Bidder shall identify such designee, and the Debtors shall make such designee's Adequate Assurance Information available to the applicable counterparty, no later than December 8, 2026. Any counterparty whose Potential Assigned Contract is proposed to be assigned to a designee identified after such date may file and serve, within seven (7) days after service of notice identifying such designee, a Supplemental Objection limited to the adequate assurance of future performance by such designee.

26. The inclusion of a contract or lease on the Cure Notice or any Supplemental Cure Notice shall not: (a) obligate the Debtors to assume or assign such contract or lease; (b) obligate the Stalking Horse Bidder or any other Successful Bidder to designate such contract or lease as a Designated Contract; (c) constitute an admission or agreement of the Debtors that such contract or

lease is executory or unexpired, as applicable; or (d) constitute an admission or agreement that any stated Cure Cost constitutes a claim against the Debtors, and all rights with respect thereto are expressly reserved. Only those Potential Assigned Contracts that are designated as Designated Contracts under the definitive purchase agreement of the Successful Bidder, as approved by the Sale Order, will be assumed and assigned.

27. The Cure Notice, substantially in the form attached hereto as Exhibit 3, is hereby approved.

**IV. Sale Notice**

28. The Sale Notice, substantially in the form attached hereto as Exhibit 2, is hereby approved. As soon as reasonably practicable, but no later than two (2) business days after entry of this Order, the Debtors shall: (a) serve the Sale Notice on all parties that received notice of the Motion and all known creditors of the Debtors, in accordance with the E-mail Service Procedures approved by the Court in these chapter 11 cases (under which the Sale Notice is a Key Notice to be served by first-class mail on parties in interest other than the Debtors' current and former employees); (b) post the Sale Notice on the website maintained by the Debtors' claims and noticing agent, Stretto, Inc.; and (c) publish the Sale Notice, with any modifications necessary for ease of publication, on one occasion in *The Wall Street Journal*.

29. Service and publication of the Sale Notice as set forth herein constitute good and sufficient notice of the Sale Transaction, the Bidding Procedures, the Auction, the Sale Hearing, and the objection deadlines established herein, including to unknown parties, and comply with Bankruptcy Rules 2002, 6004, and 6006 and Local Rules 2002-1 and 6004-1, and no other or further notice shall be required.

**V. Miscellaneous**

30. In the event of any inconsistency between this Order and the Bidding Procedures, this Order shall govern. In the event of any inconsistency between the Bidding Procedures and the Stalking Horse Agreement, the Bidding Procedures shall govern.

31. Nothing in this Order shall be deemed to approve the Sale Transaction or the assumption and assignment of any executory contract or unexpired lease, and all rights of parties in interest to object to the Sale Transaction (other than with respect to the relief granted herein) at or before the Sale Hearing in accordance with this Order are preserved.

32. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

33. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion.

34. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: [●], 2026
Wilmington, Delaware

____________________________________
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749<br><br>(Joint Administration Requested) |

# BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' RESTAURANT ASSETS PURSUANT TO A SECTION 363 SALE

On November 2, 2026 (the "**Petition Date**"), Cerca Trova Restaurant Group Holdings, Inc. ("**Cerca Trova**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"). As of the Petition Date, the Debtors operate sixty-one (61) Outback Steakhouse® restaurants located in Arizona, California, Colorado, Nevada and New Mexico (the "**Restaurants**") as a franchisee of Outback Steakhouse of Florida LLC (in its capacity as franchisor, the "**Franchisor**").

On November 2, 2026, the Debtors filed the Debtors' *Motion for Entry of: (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter into the Stalking Horse Agreement and Approving the Break-Up Fee and (IV) Granting Related Relief; and (B) an Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (II) Approving the Stalking Horse Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. [•]] (the "**Motion**"), seeking approval of, among other things, the procedures by which the Debtors will determine the highest or otherwise best offer for the acquisition of substantially all of the Debtors' assets relating to the Restaurants, other than the Excluded Assets (as defined in the Stalking Horse Agreement) (the "**Assets**"), pursuant to section 363 of the Bankruptcy Code (a "**Sale Transaction**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

The Debtors have entered into that certain *Asset Purchase Agreement*, dated as of November 1, 2026 (together with all exhibits and schedules thereto, and as may be amended, supplemented or otherwise modified in accordance with its terms, the "**Stalking Horse Agreement**"), with Outback Steakhouse of Florida LLC (together with any permitted assignee under section 12.4 of the Stalking Horse Agreement, the "**Stalking Horse Bidder**"). Pursuant to the Stalking Horse Agreement, and subject to higher or otherwise better offers submitted in accordance with these Bidding Procedures, the Stalking Horse Bidder has agreed to acquire the Assets for consideration consisting of (i) cash in the amount of $26,300,000, plus the amount, if any, by which $6,100,000 exceeds the aggregate amount of the Specified Liabilities assumed by the Stalking Horse Bidder at closing; provided that if the aggregate amount of such Specified Liabilities equals or exceeds $6,100,000, such additional amount shall be zero (the "**Stalking Horse Cash Purchase Price**"), plus (ii) the assumption of the Assumed Liabilities (as defined in the Stalking Horse Agreement) and (iii) the payment of cure costs (subject to section 2.3(a) of the Stalking Horse Agreement) under the executory contracts and unexpired leases to be assumed and assigned to the Stalking Horse Bidder (collectively, the "**Stalking Horse Bid**").

On [__________], 2026, the Court entered an order [Docket No. [•]] (the "**Bidding Procedures Order**") approving, among other things, (i) these *Bidding Procedures for the Sale of Substantially All of the Debtors' Restaurant Assets Pursuant to a Section 363 Sale* (the "**Bidding Procedures**"), which set forth the process by which the Debtors are authorized to solicit bids for, and conduct an auction of, the Assets (the "**Auction**") to determine the Successful Bidder (as defined below), and (ii) the Bid Protections (as defined below). Capitalized terms used but not defined herein have the meanings given to them in the Stalking Horse Agreement or the Bidding Procedures Order, as applicable. The order of the Court approving the Sale Transaction with the Successful Bidder (as defined below) is referred to herein as the "Sale Order." References herein to "business days" mean Business Days as defined in the Stalking Horse Agreement.

As used herein, the "**Consultation Parties**" are (i) Goldman Sachs Specialty Lending Group, L.P., in its capacity as administrative agent and collateral agent under the Debtors' prepetition secured credit facility (the "**Prepetition Agent**"), (ii) the lender(s) under any postpetition financing facility approved by the Court (the "**DIP Lender**") other than any DIP Lender affiliated with the Stalking Horse Bidder, and (iii) any official committee of unsecured creditors appointed in these chapter 11 cases (the "**Committee**"); *provided* that if any Consultation Party, or any member or affiliate thereof, submits a Bid or otherwise participates as a bidder, such party shall not be a Consultation Party with respect to the evaluation of its own or any competing Bid for so long as it remains a bidder. Each reference in these Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith; provided that such consultation rights shall not limit the Debtors' discretion and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment. Materials and information provided to the advisors of any Consultation Party may be shared with such Consultation Party, subject to the applicable confidentiality agreement.

**Key Dates**

The following key dates and deadlines apply to the sale process, subject to modification as set forth herein:

a) Sale Notice: as soon as reasonably practicable, but no later than two (2) business days after entry of the Bidding Procedures Order, the Debtors shall serve the Sale Notice on all parties that received notice of the Motion, post it on the website of the Debtors' claims and noticing agent, and publish it, with any modifications necessary for ease of publication, on one occasion in *The Wall Street Journal*;

b) Cure Notice: no later than five (5) business days after entry of the Bidding Procedures Order;

c) Bid Deadline: December 8, 2026 at 5:00 p.m. (prevailing Eastern Time) (the "**Bid Deadline**");

d) Qualified Bid Determination: December 9, 2026 (the "**Qualified Bid Determination Deadline**");

e) Auction (if necessary): December 11, 2026 at 10:00 a.m. (prevailing Pacific Time);

f) Notice of Successful Bidder: within one (1) business day after the conclusion of the Auction;

g) Sale Objection Deadline: December 1, 2026 at 4:00 p.m. (prevailing Eastern Time);

h) Supplemental Objection Deadline (limited to the conduct of the Auction, the identity of the Successful Bidder (if other than the Stalking Horse Bidder) and adequate assurance of future performance by such Successful Bidder): at the Sale Hearing; and

i) Sale Hearing: December 15, 2026 at [__]:00 [a/p].m. (prevailing Eastern Time).

**Purchase Opportunity**

The Debtors are offering interested parties the opportunity to purchase all or substantially all of the Assets. Prior to the Petition Date, the Debtors, with the assistance of their investment banker, Brookwood Associates, L.L.C. ("**Brookwood**"), conducted a marketing process for the Restaurants that culminated in the Debtors' entry into a letter of intent with, and ultimately the Stalking Horse Agreement with, the Stalking Horse Bidder. Brookwood will continue to market the Assets from and after the Petition Date, and the Debtors' representatives, including Brookwood, shall oversee the sale process for the Assets. The Debtors will consider Bids (as defined below) for all of the Assets or for one or more Restaurants or other portions of the Assets; *provided* that any Bid for less than all of the Assets will be considered only to the extent that such Bid, alone or together with other Bids for non-overlapping portions of the Assets, satisfies the Minimum Bid Requirement (as defined below).

## Bidding Process

### I. Participation Requirements

From and after the Petition Date, to receive due diligence information, including access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a potential bidder (each, an "**Interested Party**") must deliver to each of (i) counsel to the Debtors: KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067 (Attn: Michael L. Tuchin (mtuchin@ktbslaw.com), Nir Maoz (nmaoz@ktbslaw.com) and Ryan Hicks (rhicks@ktbslaw.com)), and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Bradford Sandler (bsandler@pszjlaw.com)); and (ii) the investment banker to the Debtors: Brookwood Associates, L.L.C., 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, Georgia 30305 (Attn: Anish Gandhi), the following documents (the "**Preliminary Bid Documents**"):

a) an executed confidentiality agreement on terms reasonably acceptable to the Debtors (each, a "**Confidentiality Agreement**");

b) a statement and other factual support demonstrating to the Debtors' satisfaction, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, that the Interested Party has a *bona fide* interest in purchasing some or all of the Assets;

c) preliminary proof by the Interested Party of its financial capacity to close the Interested Party's proposed Sale Transaction, which may include financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors in consultation with their advisors and the Consultation Parties; and

d) a statement detailing whether the Interested Party is partnering with or otherwise working with any other party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid.

Only those Interested Parties who have submitted Preliminary Bid Documents acceptable to the Debtors in consultation with the Consultation Parties (each, a "**Potential Bidder**") may submit Bids. For the avoidance of doubt, the Stalking Horse Bidder is deemed to be a Qualified Bidder (as defined below), the Stalking Horse Bid is deemed to be a Qualified Bid (as defined below), and the Stalking Horse Bidder is not required to provide any of the Preliminary Bid Documents. The Debtors reserve the right to work with any Interested Party to cure any deficiency in its Preliminary Bid Documents, and shall promptly notify the Consultation Parties if an Interested Party is determined not to be a Potential Bidder (and the reasons therefor).

Notwithstanding anything contained herein to the contrary, the Prepetition Agent and Existing Lenders (as defined in the Stalking Horse Agreement) have agreed not to submit a

credit bid at the Auction, so long as the Stalking Horse Bidder is not in breach of the Stalking Horse Agreement, the Stalking Horse Agreement is still in full force and effect, and neither the Stalking Horse Agreement nor any other agreement contemplated thereby or hereby has been amended or otherwise modified in a manner that reduces the cash purchase price or is otherwise adverse to the Debtors, Prepetition Agent or Existing Lenders in any material respect; provided that the Prepetition Agent may credit bid, shall be deemed a Qualified Bidder and shall be deemed to have submitted a Qualified Bid solely for the purposes of assigning such credit bid to the Stalking Horse Bidder if the Stalking Horse Bidder is the Successful Bidder, without representation, warranty or recourse, in exchange for cash payment of the Purchase Price to effectuate the Transaction.

## II. Obtaining Due Diligence

Only Potential Bidders will be eligible to receive due diligence information concerning the Debtors and the Assets. The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information will be commensurate with the due diligence information given to the Stalking Horse Bidder; *provided* that if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors may, after consultation with the Consultation Parties, withhold, redact, code, or delay providing any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Potential Bidder at such time. Subject to the immediately preceding sentence, the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room for the benefit of all Potential Bidders. The due diligence period will end on the Bid Deadline and, thereafter, the Debtors will have no obligation to furnish any diligence information, except as may be required under the terms of any Successful Bid.

Neither the Debtors nor their representatives shall be obligated to furnish any information relating to the Assets (a) to any person or entity that is not a Potential Bidder or a Consultation Party or (b) to the extent doing so would (i) violate any law to which the Debtors are subject, including any privacy law (including with respect to customer, loyalty program, gift card or employee data), (ii) result in the disclosure of trade secrets of third parties in breach of any contract, (iii) violate any legally binding confidentiality, non-disclosure or privacy obligation of any Debtor, or (iv) jeopardize any protection afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine; *provided* that, in each case, the Debtors shall use commercially reasonable efforts to provide such access or information as can be provided without such violation. The Debtors may also limit or terminate access to diligence for any Potential Bidder that violates its Confidentiality Agreement or uses diligence information in connection with any litigation against the Debtors or their current or former directors and officers. All due diligence requests shall be directed to Brookwood, Anish Gandhi (ag@brookwoodassociates.com).

Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction. If the Debtors, after consultation with the Consultation Parties, determine at any time in their reasonable discretion that a Potential Bidder is not reasonably likely to be a Qualified Bidder, then the Debtors' obligation to provide due diligence information

to such Potential Bidder will terminate, and all information provided by the Debtors prior to such time shall be returned to the Debtors or destroyed in accordance with the terms of the applicable Confidentiality Agreement.

## **Auction Process**

### I. Bid Deadline

A Potential Bidder that desires to make a proposal, solicitation, or offer for the Assets (each, a "**Bid**") shall transmit such Bid via email (in .pdf format, together with any marked agreements in Microsoft Word format) so as to be **actually received** on or before **the Bid Deadline** by each of the following parties (collectively, the "**Bid Notice Parties**"):

a) the Debtors: Cerca Trova Restaurant Group Holdings, Inc., 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108 (Attn: David Goronkin (dgoronkin@outwestrg.com) and Matthew Vitorino (mvitorino@outwestrg.com));

b) counsel to the Debtors: KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067 (Attn: Nir Maoz (nmaoz@ktbslaw.com)); and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Bradford Sandler (bsandler@pszjlaw.com));

c) investment banker to the Debtors: Brookwood Associates, L.L.C., 3575 Piedmont Road, 15 Piedmont Center, Suite 820, Atlanta, Georgia 30305 (Attn: Anish Gandhi);

d) counsel to the Prepetition Agent: Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603 (Attn: Danielle Juhle (Danielle.juhle@goldbergkohn.com) and Drake Saffell (drake.saffell@goldbergkohn.com)); and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: John H. Knight (Knight@RLF.com)); and

e) counsel to the Committee, if any.

Any party that does not submit a Bid by the Bid Deadline will not be permitted to (a) submit a Bid after the Bid Deadline or (b) participate in the Auction.

### II. Bid Requirements

Each Bid by a Potential Bidder (a "**Bidder**") must be submitted in writing (which may be by email) to the Bid Notice Parties and satisfy the following requirements (collectively, the "**Bid Requirements**"):

(a) Purpose. The Bid must clearly identify the following: (i) the particular Assets, or the portion thereof, identified with reasonable specificity, to be acquired (the "**Acquired Assets**"), including each Restaurant (by store number and location) to

be acquired; (ii) each executory contract and unexpired lease (including each Restaurant real property lease) to be assumed by the Debtors and assigned to the Bidder (the "**Designated Contracts**"); and (iii) the liabilities and obligations to be assumed by the Bidder, including any Cure Costs, obligations in respect of the Customer Programs, Unpaid Property Tax, Percentage Rent, Named Vendor Liabilities and employee-related obligations (in each case as defined in the Stalking Horse Agreement). Each Bid must also (A) allocate the purchase price among the Acquired Assets, including by Restaurant (provided that such allocation shall not prejudice the right of any party in interest to contest such allocation), and (B) state whether the Bid is conditioned on the acquisition of all of the Acquired Assets identified therein or may be considered as one or more separate Bids for individual Restaurants or other subsets of the Assets.

(b) Deposit. Each Bid must be accompanied by a cash deposit in an amount equal to ten percent (10%) of the cash portion of the purchase price proposed to be paid under the Bid (the "**Deposit**"), to be held in a segregated account or escrow by the Debtors in accordance with these Bidding Procedures and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the Stalking Horse Agreement and these Bidding Procedures or an order of the Court, as applicable; *provided* that the deposit of the Stalking Horse Bidder shall be in the amount, and shall be delivered, held and disbursed in the manner, set forth in the Stalking Horse Agreement. To the extent the purchase price of a Bid (other than the Stalking Horse Bid) is increased prior to or during the Auction, the amount of the Deposit shall automatically increase to ten percent (10%) of the increased cash purchase price, and the applicable Bidder shall deposit the amount of such increase within one (1) business day thereafter; provided that the Debtors may condition a Bidder's participation in the Auction on its payment of the then-full amount of the Deposit.

(c) Total Consideration. Each Bid must identify the form and amount of the total consideration to be provided, including the cash and non-cash components thereof and all liabilities to be paid or assumed (the "**Bid Value**"), together with a reasonably detailed explanation of the Bidder's valuation of any non-cash consideration. Unless otherwise consented to by the Prepetition Agent, to the extent that any component of the total consideration is non-cash, such non-cash component may only comprise freely tradeable public securities. Without limiting the foregoing, each Bid must state (i) the extent to which the Bidder will pay or assume the categories of liabilities assumed under the Stalking Horse Bid, including the Specified Liabilities, obligations in respect of the Customer Programs and Cure Costs; (ii) whether the Bid earmarks, out of the cash consideration payable to the Debtors, an amount for the payment by the Debtors of accrued employee compensation obligations comparable to the Earmarked Employee Amounts; and (iii) the proposed treatment of the Acquired Avoidance Actions (each, as defined in the Stalking Horse Agreement), including whether such causes of action will be acquired, released or retained by the Debtors' estates.

(d) Minimum Bid. The Bid Value proposed by each Bid (or the aggregate Bid Value of Bids for non-overlapping portions of the Assets) must exceed the Purchase Price (as defined in the Stalking Horse Agreement) by an amount not less than the sum of (i) the Break-Up Fee (as defined below), plus (ii) $250,000 (such requirement, the "**Minimum Bid Requirement**"). For purposes of determining compliance with the Minimum Bid Requirements, the Purchase Price (as defined in the Stalking Horse Agreement) shall be no less than the sum of (1) $26,300,000 plus (2) the Debtors good faith estimate of the portion of the Purchase Price (as defined in the Stalking Horse Agreement) attributable and calculated in accordance with Section 3.1(a)(ii) of the Stalking Horse Agreement (which estimate shall have been provided to Potential Bidders and the Consultation Parties in writing in advance of the Bid Deadline) (such sum, the "**Estimated Cash Purchase Price**").

(e) Each Bid must include a cash component that exceeds the Estimated Cash Purchase Price by an amount not less than the sum of (i) the Break-Up Fee (as defined below), plus (ii) $250,000. In determining whether a Bid satisfies the Minimum Bid Requirement, the Debtors, in consultation with the Consultation Parties, may take into account the factors set forth in Auction Process Section IV (The Auction) below, including the value to the Debtors' estates of any waiver or release of claims against the Debtors provided in connection with the Stalking Horse Bid.

(f) Marked Agreement. Each Bid must include (i) an asset purchase agreement executed by the Bidder, together with all exhibits and schedules thereto, (ii) a redline of such agreement marked against the Stalking Horse Agreement, and (iii) a redline of the proposed sale order marked against the proposed form of Sale Order filed by the Debtors (collectively, the "**Transaction Documents**"). A copy of the Stalking Horse Agreement in Microsoft Word format will be provided to any Potential Bidder upon request. Each Bid must include closing conditions that are no less favorable to the Debtors than those contained in the Stalking Horse Agreement. Any non-consideration related modification to the Stalking Horse Agreement proposed by a Bidder shall be presumed to have zero value unless the Bidder demonstrates to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that such modification provides a material economic benefit to the Debtors' estates.

(g) Contingencies. A Bid shall not be subject to any contingencies other than approval of the Sale Transaction by the Court and such other customary conditions to closing as are set forth in the Transaction Documents. Without limiting the foregoing, a Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions. Each Bid must identify with specificity each condition to closing, including any franchise, landlord and regulatory approvals, and the anticipated timing, likelihood and risks of obtaining each such approval, and must include a

covenant that the Bidder's counsel will coordinate in good faith with the Debtors' counsel regarding the Bidder's strategy and timeline for obtaining such approvals. To the extent a Bid contemplates the operation of one or more Restaurants as Outback Steakhouse restaurants following the closing, the Franchisor shall have approved such Bidder as a franchisee (provided that such determination shall be made in accordance with the terms of the Stalking Horse Agreement, under which the Franchisor will provide the standards it applies generally in approving new franchisees within fourteen (14) days after the date of the Stalking Horse Agreement, which standards will be made available to Potential Bidders in the Debtors' data room), and evidence of such approval shall be included with the Bid. A Bid that requires such approval but does not include evidence thereof shall not constitute a Qualified Bid. The Franchisor shall communicate its approval or denial of franchisee status in writing to the Debtors and the applicable Bidder.

(h) Tax Structure; Structure. The Bid must specify with particularity its tax structure, including whether the Debtors, under the Bid, will incur any incremental tax liabilities. The Bid must also identify the structure proposed for undertaking the Sale Transaction, including the specific Acquired Assets and liabilities being assumed, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's proposed structure relies.

(i) Timeline to Close. The Bid must include a commitment to close the Sale Transaction within fifteen (15) days after the entry of an order approving such Sale Transaction, and in any event no later than January 4, 2027 (or such later date as the Prepetition Agent may agree to in writing) and the Outside Date.

(j) Irrevocability. The Bid must include a signed writing stating that the Bidder's offer is irrevocable until two (2) business days after entry of the Sale Order; *provided* that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder (each, as defined below), its offer shall remain irrevocable until the earlier of (i) the closing of the Sale Transaction with the Successful Bidder or the Back-Up Bidder, as applicable, and (ii) the Outside Date (as defined in the Stalking Horse Agreement, giving effect to any extension thereof in accordance therewith) (the "**Outside Date**"); *provided further* that the period during which the Stalking Horse Bid shall remain irrevocable, including as a Back-Up Bid, shall be as set forth in the Stalking Horse Agreement.

(k) Back-Up Bidder Commitment. Each Bid (other than the Stalking Horse Bid) must include a written commitment by the Bidder to serve as the Back-Up Bidder if its Bid is selected as the next highest or otherwise best Bid after the Successful Bid.

(l) Sources of Financing; Adequate Assurance. To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the proposed Sale Transaction with cash on hand, each Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the Sale Transaction at the purchase price set forth in the Bid, with appropriate contact

information for such financing sources. Any such financing commitment must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, after consultation with the Consultation Parties. Each Bid must also include sufficient financial and other information (including audited or other financial statements, a description of the Bidder's restaurant operating experience, and the identity of the proposed assignee and any guarantor) to establish adequate assurance of future performance under section 365(f)(2)(B) and, as applicable, section 365(b)(3) of the Bankruptcy Code with respect to each Designated Contract (the "**Adequate Assurance Information**"), in a form that may be provided to the applicable counterparties on a confidential basis. Adequate Assurance Information may include, among other things, (i) the specific name of the proposed assignee and the name under which it intends to operate each Restaurant; (ii) the proposed assignee's intended use of each premises, if different from its current use; (iii) audited and unaudited financial statements, tax returns and bank account statements; (iv) cash flow projections for the proposed assignee and for each lease proposed to be assumed and assigned; (v) evidence of the proposed assignee's experience operating restaurants; (vi) if the proposed assignee is a newly formed entity, the date of formation, how it will be capitalized and financed, and any guaranty or other credit enhancement to be provided; and (vii) a contact person whom counterparties may contact directly regarding adequate assurance. The Adequate Assurance Information shall be submitted as a separate, compiled PDF document, and the Debtors are authorized to provide such information to the applicable counterparties within one (1) business day after receipt.

(m) Employees. A Bid shall contain a detailed description of how the Bidder intends to treat the Debtors' current employees, including restaurant-level employees, managing partners and area operations directors, and of any obligations to such employees that the Bidder proposes to pay or assume.

(n) Liquor Licenses and Permits. A Bid shall describe the Bidder's plan and anticipated timeline for obtaining all licenses, permits and approvals necessary to operate the Restaurants following the closing, including obtaining required licenses with applicable alcoholic beverage authorities, and any interim arrangements the Bidder proposes to request of the Debtors pending such approvals.

(o) Transition Services. Each Bid must state or estimate the types of transition services, if any, that the Bidder would require of or provide to the Debtors following the closing (including with respect to interim alcoholic beverage arrangements and corporate functions), together with the anticipated duration thereof. The Bidder shall be responsible for all of the Debtors' actual costs of providing any such transition services.

(p) Authorization. Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing

body applicable to such Bidder and acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Sale Transaction contemplated by such Bid.

(q) Disclaimer of Fees. Each Bid (other than the Stalking Horse Bid) must disclaim any right to receive a fee analogous to any break-up fee, termination fee, expense reimbursement, substantial contribution claim, or similar type of payment. Each Bid must further acknowledge that the Debtors shall have no obligation to pay any commission, fee or expense of any agent, advisor or broker of the Bidder, and that no such commission, fee or expense shall be deducted from the proceeds of any Sale Transaction.

(r) Identity. Each Bid must fully disclose the identity of each entity and individual that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder, including if such Bidder is an entity formed for the purpose of consummating the proposed Sale Transaction contemplated by such Bid), the complete terms of any such participation, and any past or present connection or agreement between the Bidder (or any of the foregoing) and the Debtors, any insider of the Debtors, the Franchisor, the Stalking Horse Bidder, or the Prepetition Agent or any lender under the Debtors' prepetition credit facility. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors or their advisors should contact regarding such Bid. Nothing herein shall preclude multiple Bidders from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.

(s) Consent to Jurisdiction. The Bidder must submit in writing to the exclusive jurisdiction of the Court (and to the Court entering a final judgment) and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, the Transaction Documents and the closing, as applicable. The Bidder must further consent to any such final order or judgment, including all appeals, being conclusive and enforceable in other jurisdictions.

(t) No Collusion. The Bidder must acknowledge in writing (i) that it has not engaged in any collusion with respect to any Bids or the Sale Transaction, specifying that it did not agree with any other party, including any other Potential Bidders or interested third parties, to control price or exert undue influence over the process; and (ii) that it will not engage in any such collusion or undue influence with respect to any Bids, the Auction, the Sale Transaction, or the sale process. Bidders and their representatives may not communicate or coordinate with any other Bidder or Potential Bidder (or its representatives) for purposes of submitting a Bid or participating in the Auction without the prior written consent of the Debtors.

(u) Good Faith Offer. The Bid must constitute a good faith, *bona fide* offer to effectuate the Sale Transaction.

(v) As-Is, Where-Is. Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Transaction Documents.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures, to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid, the Bidding Procedures, and the sale process for the Assets, and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Acquired Assets as reflected in such Bid.**

## III. Designation of Qualified Bidders

A qualified bidder (a "**Qualified Bidder**") is a Bidder that, in the Debtors' reasonable determination after consultation with the Consultation Parties, (i) has timely submitted a Bid that satisfies each of the Bid Requirements and (ii) is able to consummate the proposed Sale Transaction within the required timeframe if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "**Qualified Bid**"). The Debtors may accept as a single Qualified Bid multiple Bids for non-overlapping portions of the Assets such that, when taken together in the aggregate, such Bids would otherwise meet the standards for a single Qualified Bid. Prior to the Qualified Bid determination, the Debtors may work with any Bidder to cure any deficiency in its Bid.

No later than the Qualified Bid Determination Deadline, the Debtors will determine, after consultation with the Consultation Parties, whether each Bidder is a Qualified Bidder, and will notify each Bidder and the Stalking Horse Bidder of such determination. Promptly following the Qualified Bid Determination Deadline, the Debtors shall provide each Qualified Bidder with copies of all Qualified Bids received by the Debtors, including all exhibits and schedules thereto, subject to appropriate redactions of confidential or competitively sensitive information.

If a Bid is determined not to be a Qualified Bid, the Debtors shall return the applicable Bidder's Deposit within five (5) business days after such determination. Between the date the Debtors notify a Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Bid; *provided* that, without the prior written consent of the Debtors, after consultation with the Consultation Parties, a Qualified Bidder may not modify, amend or withdraw its Qualified Bid, except to increase the purchase price or

otherwise improve the terms of such Qualified Bid. The Debtors, after consultation with the Consultation Parties, may also work with Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline, or two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction.

For the avoidance of doubt, (i) the Stalking Horse Bidder is a Qualified Bidder, (ii) the Stalking Horse Bid is a Qualified Bid, and (iii) the Stalking Horse Bidder is authorized to submit Overbids (as defined below) at the Auction and shall be permitted to participate in the Auction under all circumstances, in each instance without further qualification.

If no Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, then (i) the Stalking Horse Bid will be the Successful Bid and the Stalking Horse Bidder will be the Successful Bidder, (ii) no Auction will be held, (iii) the Debtors will file a notice of cancellation of the Auction and designation of the Stalking Horse Bidder as the Successful Bidder within one (1) business day after the Bid Deadline, and (iv) the Debtors will seek approval of the Sale Transaction with the Stalking Horse Bidder at the Sale Hearing.

## IV. The Auction

If the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid, the Debtors will conduct the Auction to determine the highest or otherwise best bid with respect to the Assets. The Auction will commence at the date and time set forth in the Key Dates section above at the offices of KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, or virtually by video conference, or on such other date and/or at such other location as determined by the Debtors after consultation with the Consultation Parties and notice to all Qualified Bidders.

Before commencement of the Auction, the Debtors will (i) notify all Qualified Bidders (including the Stalking Horse Bidder), the Consultation Parties and the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") in writing of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment after consultation with the Consultation Parties (the "**Baseline Bid**"), and (ii) provide copies (to the extent not previously provided) of the documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid, and which Qualified Bid constitutes the highest or otherwise best bid such that it is the Successful Bid, shall take into account, among other things: (a) the amount and nature of the total consideration, including the amount of cash consideration; (b) the Restaurants and other Acquired Assets to be purchased and the Designated Contracts to be assumed; (c) the liabilities to be assumed, including lease, Customer Program, vendor and employee-related liabilities, and the resulting reduction of claims against the Debtors' estates; (d) the Break-Up Fee payable to the Stalking Horse Bidder in the event of a Sale Transaction with a Bidder other than the Stalking Horse Bidder; (e) the likelihood of the Bidder's ability to close the Sale Transaction and the timing thereof, including with respect to any required franchise, regulatory and alcoholic beverage approvals; (f) the proposed treatment of the Debtors' employees; (g) the value of any waiver or release of claims against the Debtors' estates provided in connection with such Bid; and (h) the net economic effect of any changes to the value to be received by the Debtors' estates from the Sale Transaction contemplated by the Qualified Bid. The Debtors may also consider the number, type and nature

of any changes to the Stalking Horse Agreement requested by a Bidder, the extent to which such changes are likely to delay closing and the cost to the Debtors' estates of any such changes or delay, and any other factors the Debtors reasonably deem relevant in their business judgment. In evaluating the relative economic value of Qualified Bids, the Debtors may update their estimates of Specified Liabilities, Cure Costs, and other assumed liabilities based upon the best information then available. Any such updated estimates shall be applied consistently to the Stalking Horse Bid and all competing Qualified Bids, to the extent a competing Qualified Bid provides for payment of such amounts. The Debtors shall consult with the Stalking Horse Bidder prior to implementing any such updated estimates for purposes of valuing competing Qualified Bids.

If there is an Auction, it will be conducted in accordance with the following procedures:

a) Only a Qualified Bidder that has submitted a Qualified Bid (including the Stalking Horse Bidder) will be eligible to participate in the Auction. Only the authorized representatives and advisors of each of the Qualified Bidders, the Debtors, the Consultation Parties and the U.S. Trustee, will be permitted to attend the Auction; *provided*, *however*, that any Qualified Bidder (other than the Stalking Horse Bidder) that, at any point during the Auction, declines to submit an Overbid and thereby withdraws from continued participation in the Auction shall not be permitted to attend the remainder of the Auction.

b) At least one (1) business day prior to the Auction, each Qualified Bidder must inform the Debtors whether it intends to participate in the Auction, and each Qualified Bidder wishing to participate must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction; *provided* that in the event a Qualified Bidder elects not to participate in the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder in accordance with these Bidding Procedures.

c) Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Sale Transaction if selected as the Successful Bidder.

d) The Debtors and their professionals will direct and preside over the Auction. At the start of the Auction, the Debtors will describe the terms of the Baseline Bid. All Bids made thereafter must be Overbids and will be made and received on an open basis, and all material terms of each Bid will be fully disclosed to all other participating Qualified Bidders. The Debtors will cause the Auction to be transcribed or recorded, including the Baseline Bid, all Overbids, the Successful Bid, and the Back-Up Bid.

e) During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $250,000 in cash value,

which shall constitute the usual and customary bidding increments for purposes of these Bidding Procedures (each, an "**Overbid**"). The Debtors will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bidding Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid. To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents, the Debtors will provide notice to each participant of the value ascribed by the Debtors, after consultation with the Consultation Parties, to any such added, deleted, or modified provision or provisions.

f) An Overbid may contain alterations, modifications, additions or deletions of any terms of the Bid that are no less favorable in the aggregate to the Debtors' estates than any prior Qualified Bid or Overbid, as determined by the Debtors after consultation with the Consultation Parties. The Debtors may announce a deadline by which Overbids must be submitted in each round of bidding (which deadline may be extended) and, following each such deadline, shall announce the then-prevailing highest or otherwise best Overbid and the value ascribed thereto by the Debtors.

g) Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a Bid submitted by another Qualified Bidder during the Auction as an Overbid and (ii) such prior Overbid is not selected as the Back-Up Bid. To the extent not previously provided, a Qualified Bidder submitting an Overbid must submit at the Debtors' request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the Sale Transaction at the purchase price contemplated by such Overbid.

The Debtors, in consultation with the Consultation Parties, reserve the right to, at any time prior to or during the Auction, amend the Auction procedures and structure the Auction in any manner (for example, open outcry, sealed bids, a combination thereof, request best and final Bids) the Debtors and Consultation Parties reasonably believe will result in the highest or otherwise best Successful Bid. The Debtors (after consultation with the Consultation Parties) reserve the right to make one or more adjournments in the Auction to, among other things, (i) facilitate private discussions with individual Qualified Bidders and negotiate the terms of their Overbids, (ii) allow individual Qualified Bidders to consider how they wish to proceed, and (iii) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors may require in their reasonable discretion to determine that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

## V. Selection of Successful Bid

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in the exercise of their reasonable business judgment after consultation with the

Consultation Parties, to be the highest or otherwise best bid submitted by a Qualified Bidder during the Auction for the Assets (the "**Successful Bid**"), and the next highest or otherwise best bid after the Successful Bid (the "**Back-Up Bid**"), at which point the Auction will be closed; *provided* that the Auction shall not close unless and until all participating Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then-prevailing highest or otherwise best Bid. The Debtors' acceptance of the Successful Bid is conditioned upon approval by the Court of the Successful Bid. The Qualified Bidder that submits the Successful Bid will be deemed the "**Successful Bidder**." The Qualified Bidder that submits the Back-Up Bid, if any, will be deemed the "**Back-Up Bidder**"; *provided* that if the Stalking Horse Bidder is selected as the Back-Up Bidder, the Stalking Horse Bidder shall serve as the Back-Up Bidder solely on the terms and for the period set forth in the Stalking Horse Agreement (as amended, as applicable, during the Auction). For the avoidance of doubt, the Debtors may designate more than one Successful Bid (and a corresponding Successful Bidder and Back-Up Bidder) with respect to separate, non-overlapping portions of the Assets, in which case each reference herein to the Successful Bid, the Successful Bidder, the Back-Up Bid and the Back-Up Bidder shall apply to each such Bid and Bidder with respect to the applicable portion of the Assets.

The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until the earlier of (i) the consummation of the Sale Transaction with the Successful Bidder and (ii) the Outside Date (or such other period as set forth in the Stalking Horse Agreement, if the Stalking Horse Bidder is the Back-Up Bidder). If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, after consultation with the Consultation Parties, to designate the Back-Up Bidder as the new Successful Bidder and to consummate the Sale Transaction with the Back-Up Bidder without further order of the Court.

Within one (1) business day after the conclusion of the Auction, the Debtors shall file a notice with the Court identifying the Successful Bidder and the Back-Up Bidder, if any, and shall serve such notice on all counterparties to the Designated Contracts of the Successful Bidder and the Back-Up Bidder, together with the applicable Adequate Assurance Information (to the extent not previously provided).

## VI. Sale Hearing

The hearing to consider approval of the Sale Transaction pursuant to the Successful Bid (the "**Sale Hearing**") shall be held at the date and time set forth in the Key Dates section above before the Honorable [__________], United States Bankruptcy Judge, at the Court, located at 824 North Market Street, [___] Floor, Courtroom No. [___], Wilmington, Delaware 19801, and otherwise in accordance with any scheduling order entered by the Court. Objections to the Sale Transaction must be filed and served so as to be actually received no later than the Sale Objection Deadline, and any objection relating solely to the conduct of the Auction, the identity of the Successful Bidder (if other than the Stalking Horse Bidder) or the adequate assurance of future performance of such Successful Bidder must be filed and served no later than the Supplemental Objection Deadline. Any party that fails to timely file and serve a Sale Objection in accordance with these Bidding Procedures shall be deemed to consent to the Sale and the relief requested in the Sale Motion for purposes of section 363(f) of the Bankruptcy Code and

shall be forever barred from asserting any objection to the Sale, the designation of the Successful Bidder, the transfer of the Acquired Assets to the Successful Bidder free and clear of all liens, claims, interests and encumbrances or the entry of the Sale Order, and shall be deemed to consent to the Sale Transaction for purposes of section 363(f) of the Bankruptcy Code. The Sale Order shall hold that the purchaser is not a successor to the Debtors or their estates by reason of any theory of law or equity with respect to any claims or liens against Sellers or the Assets and, to the maximum extent permitted by applicable law, permanently enjoin each and every holder of any claim or lien for such liabilities from pursuing or enforcing any remedy, claim, cause of action, or lien against the buyer or the Assets.

The Successful Bidder shall timely complete and execute all documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

The Sale Hearing may be adjourned or rescheduled by the Debtors, after consultation with the Consultation Parties, to a time and date consistent with the Court's calendar, as set forth in a notice filed on the docket of these chapter 11 cases, a notice of agenda, or stated orally at the Sale Hearing. No further notice of any such adjournment shall be required to be provided to any Bidder or other party.

## VII. Bid Protections

In recognition of the Stalking Horse Bidder's expenditure of time, energy and resources and the benefits provided to the Debtors' estates by the Stalking Horse Bid, the Debtors are authorized to pay the Stalking Horse Bidder a break-up fee in the amount of $790,000 (the "**Break-Up Fee**" and, together with the provisions of the Stalking Horse Agreement relating thereto, the "**Bid Protections**"), in accordance with and subject to the terms of the Stalking Horse Agreement and the Bidding Procedures Order. The Break-Up Fee shall be payable upon the consummation of an Alternative Transaction (as defined in the Stalking Horse Agreement) with the Successful Bidder or a back-up bidder selected at the Auction, or consummated within one (1) year after termination of the Stalking Horse Agreement pursuant to section 10.2(c) or 10.2(d) thereof, solely from the cash proceeds thereof, concurrently with the closing of such transaction. The Break-Up Fee shall constitute an allowed administrative expense of the Debtors' estate under sections 503(b) and 507(a)(2) of the Bankruptcy Code, with priority over any and all other administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code or otherwise, subject only to the DIP Order (as defined in the Bidding Procedures Order), including any carve-out for professional fees therein. The Debtors shall be authorized (and, concurrently with the closing of an Alternative Transaction, directed) to pay any amounts that may become due to the Stalking Horse Bidder on account of the Break-Up Fee on the terms set forth in the Stalking Horse Agreement. For the avoidance of doubt, no other Qualified Bidder for the Assets shall be entitled to any form of expense reimbursement.

## VIII. Return of Deposit

The Deposit of the Successful Bidder shall be applied to the purchase price of such Sale Transaction at closing. The Deposits of each Qualified Bidder (other than the Successful Bidder and the Back-Up Bidder) shall be returned on the date that is five (5) business days after the

Auction, or as soon as is reasonably practicable thereafter. The Debtors shall return the Deposit of the Back-Up Bidder (other than the Stalking Horse Bidder) within five (5) business days after the earlier of (i) the expiration of the period during which the Back-Up Bid is required to remain open and (ii) the consummation of the Successful Bid, unless by such date the Debtors have designated the Back-Up Bidder as the new Successful Bidder. The deposit of the Stalking Horse Bidder shall be held, applied, retained or returned solely in accordance with the Stalking Horse Agreement.

Notwithstanding the foregoing, if a Successful Bidder (other than the Stalking Horse Bidder, whose deposit shall be governed by the Stalking Horse Agreement) fails to consummate a proposed Sale Transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit of such Successful Bidder, which may be retained by the Debtors as damages, in addition to any and all other rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed Sale Transaction with the applicable Back-Up Bidder without the need for an additional hearing or order of the Court.

## IX. As Is, Where Is; Free and Clear

Consummation of any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors or their estates, except as expressly set forth in the definitive documentation for such Sale Transaction approved by the Court. Except as otherwise provided in such definitive documentation, all of the Debtors' right, title and interest in and to the Acquired Assets shall be transferred to the Successful Bidder (or Back-Up Bidder, as applicable) free and clear of all liens, claims, interests and encumbrances to the maximum extent permitted by law and in accordance with section 363(f) of the Bankruptcy Code, with such liens, claims, interests and encumbrances to attach to the proceeds of such Sale Transaction with the same validity and priority as they had against the applicable Acquired Assets immediately prior to such Sale Transaction.

## X. Reservation of Rights

The Debtors reserve the right, in the exercise of their fiduciary obligations and after consultation with the Consultation Parties, to (i) determine which Bid is the highest or otherwise best Bid; (ii) reject any Bid that is inadequate or insufficient, not in conformity with the requirements of these Bidding Procedures, the Bankruptcy Code or the Bidding Procedures Order, or contrary to the best interests of the Debtors and their estates; (iii) waive terms and conditions set forth herein with respect to any Bidder; (iv) extend the deadlines set forth herein; (v) adjourn or cancel the Auction and/or the Sale Hearing; and (vi) otherwise modify these Bidding Procedures; *provided* that the Debtors shall not, without the consent of the Stalking Horse Bidder, modify these Bidding Procedures in any manner that is inconsistent with the Stalking Horse Agreement or the Bidding Procedures Order or adverse in any material respect to the Stalking Horse Bidder, including with respect to the Bid Protections, the Minimum Bid Requirement, the initial Overbid increment, the Stalking Horse Bidder's right to participate in the Auction. Nothing in these Bidding Procedures shall limit, modify, or otherwise affect any consent or approval right of any party under the DIP Order (as defined in the Bidding Procedures Order). Nothing in these Bidding Procedures shall require the Debtors or their boards of directors

(or comparable governing bodies) to take any action, or to refrain from taking any action, that the Debtors determine would be inconsistent with their fiduciary obligations under applicable law. Without limiting the foregoing, until entry of the Sale Order, the Debtors and their directors, officers, employees and advisors shall have the right to (a) consider, respond to and facilitate alternative proposals for sales or other transactions involving any or all of the Assets, (b) provide access to non-public information to any person or entity and enter into confidentiality agreements, and (c) maintain or continue discussions or negotiations with respect to any such alternative proposals. These Bidding Procedures and the Bidding Procedures Order do not limit the Debtors' ability to solicit higher or otherwise better bids for the Assets. These Bidding Procedures shall be binding upon and inure to the benefit of the Debtors, the Stalking Horse Bidder, all Qualified Bidders and their respective successors and assigns, including any trustee, examiner, plan administrator, liquidating trustee, chapter 7 trustee, post-confirmation fiduciary or similar representative appointed in these chapter 11 cases. The Debtors shall file a notice on the docket of these chapter 11 cases of any material modification of these Bidding Procedures or any extension of the deadlines set forth herein. In the event of any conflict between these Bidding Procedures (as approved by the Bidding Procedures Order) and the Stalking Horse Agreement, these Bidding Procedures shall control solely with respect to the conduct of the bidding and auction process, and the Stalking Horse Agreement shall control with respect to the rights and obligations of the Debtors and the Stalking Horse Bidder thereunder.

* * * *

# Exhibit 2

# Form of Sale Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749<br><br>(Jointly Administered)<br><br>Ref. Docket No. [___] |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On the Petition Date, Cerca Trova Restaurant Group Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a motion [Docket No. [___]] (the "**Motion**") seeking entry of (a) an order (the "**Bidding Procedures Order**") (i) approving bidding procedures (the "**Bidding Procedures**")[2] to be used in connection with the sale of substantially all of the Debtors' assets relating to the Restaurants, other than the Excluded Assets (the "**Assets**"), under section 363 of the Bankruptcy Code (the "**Sale Transaction**"); (ii) authorizing the Debtors' entry into the Stalking Horse Agreement (substantially in the form attached to the Motion as Exhibit B) with the Stalking Horse Bidder and approving the Bid Protections; (iii) scheduling (A) an auction of the Assets (the "**Auction**") on December 11, 2026 at 10:00 a.m. (prevailing Pacific Time) and (B) a final hearing to consider approval of the Sale Transaction (the "**Sale Hearing**") on December 15, 2026 at [___]:00 [a/p].m. (prevailing Eastern Time); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures (the "**Assumption and Assignment Procedures**") for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**") and the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale Transaction; and (vi) granting related relief; and (b) an order (the "**Sale Order**") (i) authorizing the Sale Transaction

---

1 The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

2 Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

free and clear of all liens, claims, interests and encumbrances, other than Assumed Liabilities and Permitted Encumbrances (each as defined in the applicable purchase agreement), with liens to attach to the proceeds of the Sale Transaction; (ii) authorizing the assumption and assignment of certain Contracts in connection with the Sale Transaction; and (iii) granting related relief.

On November [__], 2026, the Court entered the Bidding Procedures Order [Docket No. [___]].

**BIDDING PROCEDURES AND ASSETS FOR SALE**

Pursuant to the Bidding Procedures, the Debtors intend to sell all or substantially all of the Assets relating to the Restaurants, including the Debtors' Outback Steakhouse® restaurants in Arizona, California, Colorado, Nevada and New Mexico, other than the Excluded Assets. The ability to undertake and consummate the Sale Transaction is subject to competitive bidding, as set forth herein, and approval by the Court. In addition to the Stalking Horse Bid, the Debtors will consider bids for the Assets from other parties. Any party interested in submitting a bid for any of the Assets should contact the Debtors' investment banker, Brookwood Associates, L.L.C. ("**Brookwood**"), via email (ag@brookwoodassociates.com) as soon as possible.

**STALKING HORSE BID**

On November 1, 2026, the Debtors and Outback Steakhouse of Florida, LLC (together with any permitted assignee under section 12.4 of the Stalking Horse Agreement, the "**Stalking Horse Bidder**") entered into the Stalking Horse Agreement, which provides for, among other things, the sale of the Assets as set forth in the Stalking Horse Agreement. The Stalking Horse Agreement is subject to higher or otherwise better offers submitted in accordance with the terms and provisions of the Bidding Procedures. A copy of the Stalking Horse Agreement is available on the website maintained by Stretto, Inc. ("**Stretto**"), the Debtors' claims and noticing agent in these Chapter 11 Cases, located at https://cases.stretto.com/OutWest (the "**Stretto Website**") and on the Court's docket at Docket No. [___], Exhibit B.

**IMPORTANT DATES AND DEADLINES**

**A. <u>Bid Deadline.</u>** Any party interested in submitting a bid for any of the Assets must deliver written and electronic copies of its Bid to the Bid Notice Parties (as defined in the Bidding Procedures) in accordance with the Bidding Procedures by no later than **December 8, 2026 at 5:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"). The Qualified Bid requirements are set forth in the Bidding Procedures.

**B. <u>Auction.</u>** If the Debtors receive one or more timely Qualified Bids in addition to the Stalking Horse Bid, the Debtors will conduct the Auction. If no Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, the Debtors will not conduct the Auction and will seek approval of the Sale Transaction with the Stalking Horse Bidder at the Sale Hearing. The Auction, if required, will be conducted on **December 11, 2026 at 10:00 a.m. (prevailing Pacific Time)**, either (i) at the offices of KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, or (ii) virtually by video conference or at such other date, time or location as designated by the Debtors, after consultation with the Consultation Parties. If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to

attend the Auction to the participants and other attendees via electronic mail. The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders, the Consultation Parties and the U.S. Trustee, and will cause publication of such change on the Stretto Website.

Within one (1) business day after the conclusion of the Auction, the Debtors will file with the Court, serve on the counterparties to the Designated Contracts of the Successful Bidder and the Back-Up Bidder and cause to be published on the Stretto Website a notice of the results of the Auction (the "**Notice of Successful Bidder**"), which will, among other things, identify the Successful Bidder and the Back-Up Bidder, if any, and include the applicable Adequate Assurance Information (to the extent not previously provided). If you would like to be served with the Notice of Successful Bidder via email, please provide notice of such request by emailing Stretto at [___].

**C. Sale Objection Deadline.** Objections to the Sale Transaction, including the sale of the Assets free and clear of all liens, claims, interests and encumbrances and entry of the Sale Order (other than Cure Objections and Assignment Objections, which are governed by the Assumption and Assignment Procedures, and Supplemental Objections), must (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) state, with specificity, the legal and factual bases thereof and (d) be filed with the Court and served on the Objection Notice Parties[3] so as to be actually received by no later than **December 1, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"). The "Objection Notice Parties" are: (i) counsel to the Debtors, (a) KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, Attn: Nir Maoz (nmaoz@ktbslaw.com), and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn: Bradford J. Sandler and Peter J. Keane (bsandler@pszjlaw.com; pkeane@pszjlaw.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (Linda.Casey@usdoj.gov); (iii) counsel to the Prepetition Agent, (a) Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603, Attn: Danielle Juhle and Drake Saffell (danielle.juhle@goldbergkohn.com; drake.saffell@goldbergkohn.com), and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: John H. Knight (knight@rlf.com); (iv) counsel to the Stalking Horse Bidder and DIP Lender, BakerHostetler, 127 Public Square, Suite 2000, Cleveland, Ohio 44114-1214, Attn: Michael A. VanNiel, Alexis C. Beachdell, and Janet Spreen (mvanniel@bakerlaw.com; abeachdell@bakerlaw.com;

---

[3] "**Objection Notice Parties**" means: (i) counsel to the Debtors, KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, CA 90067 (Attn: Nir Maoz (nmaoz@ktbslaw.com)), and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn: Bradford J. Sandler and Peter J. Keane (bsandler@pszjlaw.com; pkeane@pszjlaw.com)); (ii) the U.S. Trustee, Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda J. Casey (linda.casey@usdoj.gov)); (iii) counsel to the Prepetition Agent, Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, IL 60603 (Attn: Danielle Juhle and Drake Saffell (danielle.juhle@goldbergkohn.com; drake.saffell@goldbergkohn.com)), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: John H. Knight (Knight@RLF.com)); (iv) counsel to the Stalking Horse Bidder and DIP Lender, BakerHostetler, 127 Public Square, Suite 2000, Cleveland, OH 44114-1214 (Attn: Michael A. VanNiel, Alexis C. Beachdell and Janet Spreen (mvanniel@bakerlaw.com; abeachdell@bakerlaw.com; jspreen@bakerlaw.com)); and (v) counsel to the Committee (if any), [___].

jspreen@bakerlaw.com); and (v) counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases.

**D. Supplemental Objection Deadline.** Following service of the Notice of Successful Bidder, any objection relating solely to (i) the conduct of the Auction, (ii) the identity of the Successful Bidder (if other than the Stalking Horse Bidder) or (iii) the adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder (each, a "**Supplemental Objection**") must be filed with the Court and served on the Objection Notice Parties so as to be actually received by no later than the commencement of the Sale Hearing (the "**Supplemental Objection Deadline**").

**E. Sale Hearing.** The Sale Hearing will take place on **December 15, 2026, at [___]:00 [a/p].m. (prevailing Eastern Time)** before the Honorable [___], United States Bankruptcy Judge, at the Court, located at 824 North Market Street, [___] Floor, Courtroom No. [___], Wilmington, Delaware 19801. The Sale Hearing may be adjourned or rescheduled by the Debtors, after consultation with the Consultation Parties, by an announcement of the adjourned date at a hearing before the Court, in a notice of agenda or by filing a notice on the Court's docket. At the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid and any Back-Up Bid. The Debtors will file the proposed Sale Order and serve it on the Objection Notice Parties and each Potential Bidder no later than November 24, 2026.

**ANY PARTY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ENTRY OF THE SALE ORDER AND/OR THE CONSUMMATION OF THE SALE TRANSACTION WITH THE SUCCESSFUL BIDDER PURSUANT TO THE APPLICABLE PURCHASE AGREEMENT, INCLUDING THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES IN ACCORDANCE WITH SECTION 363(f) OF THE BANKRUPTCY CODE, AND SHALL BE DEEMED TO HAVE CONSENTED TO THE ENTRY OF THE SALE ORDER AND CONSUMMATION OF THE SALE TRANSACTION AND ALL TRANSACTIONS RELATED THERETO, INCLUDING THE ASSUMPTION AND ASSIGNMENT OF THE DESIGNATED CONTRACTS.**

## RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and after consultation with the Consultation Parties, to modify the Bidding Procedures; waive terms and conditions set forth therein; extend the deadlines set forth therein or in the Bidding Procedures Order; adjourn or reschedule the Auction and/or the Sale Hearing; and announce at the Auction modified or additional procedures for conducting the Auction, in each case to the extent not inconsistent with the Bidding Procedures and the Bidding Procedures Order, provided that the Debtors shall not, without the consent of the Stalking Horse Bidder, modify the Bidding Procedures in any manner inconsistent with the Bidding Procedures Order or the Stalking Horse Agreement or adverse to the Stalking Horse Bidder (other than extending deadlines or adjourning the Auction or the Sale Hearing), and in each case without prejudice to, and subject to, the rights of the Stalking Horse Bidder under the Stalking

Horse Agreement. Except as provided in the Stalking Horse Agreement, nothing obligates the Debtors to consummate or pursue any transaction with respect to any Asset with any bidder.

**ADDITIONAL INFORMATION**

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Stretto Website.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF THE SALE TRANSACTION, INCLUDING THE SALE OF THE ASSETS TO THE SUCCESSFUL BIDDER FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF THE STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS, AND SHALL BE DEEMED TO CONSTITUTE SUCH PARTY'S CONSENT TO ENTRY OF THE SALE ORDER AND CONSUMMATION OF THE SALE TRANSACTION AND ALL TRANSACTIONS RELATED THERETO, INCLUDING THE ASSUMPTION AND ASSIGNMENT OF THE DESIGNATED CONTRACTS.**

# Exhibit 3

## Form of Cure Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749<br><br>(Jointly Administered)<br><br>Ref. Docket Nos. [___] & [___] |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On the Petition Date, Cerca Trova Restaurant Group Holdings, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a motion [Docket No. [___]] (the "**Motion**") seeking entry of (a) an order (the "**Bidding Procedures Order**") (i) approving bidding procedures (the "**Bidding Procedures**")[2] to be used in connection with the sale of substantially all of the Debtors' assets relating to the Restaurants, other than the Excluded Assets (the "**Assets**"), under section 363 of the Bankruptcy Code (the "**Sale Transaction**"); (ii) authorizing the Debtors' entry into the Stalking Horse Agreement (substantially in the form attached to the Motion as Exhibit B) with Outback Steakhouse of Florida, LLC (together with any permitted assignee under section 12.4 of the Stalking Horse Agreement, the "**Stalking Horse Bidder**") and approving the Bid Protections; (iii) scheduling (A) an auction of the Assets (the "**Auction**") on December 11, 2026 at 10:00 a.m. (prevailing Pacific Time) and (B) a final hearing to consider approval of the Sale Transaction (the "**Sale Hearing**") on December 15, 2026 at [__]:00 [a/p].m. (prevailing Eastern Time); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures (the "**Assumption and Assignment Procedures**") for the assumption and assignment of executory contracts and unexpired leases (collectively, the "**Contracts**") and the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale Transaction; and (vi) granting related relief; and

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable. Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any inconsistency between any summary in this Cure Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

(b) an order (the "**Sale Order**") (i) authorizing the Sale Transaction free and clear of all liens, claims, interests and encumbrances, other than Assumed Liabilities and Permitted Encumbrances (each as defined in the applicable purchase agreement), with liens to attach to the proceeds of the Sale Transaction; (ii) authorizing the assumption and assignment of certain Contracts in connection with the Sale Transaction; and (iii) granting related relief.

On November [__], 2026, the Court entered the Bidding Procedures Order [Docket No. [___]].

**You are receiving this Notice because you may be a counterparty to a Contract of the Debtors that may be assumed and assigned to a Successful Bidder in connection with the Sale Transaction. Your Contract may be listed as a Contract that may be assumed and assigned to the Stalking Horse Bidder or another Successful Bidder.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtors may, in connection with the Sale Transaction with the Successful Bidder, seek to assume and assign to the Successful Bidder certain of their Contracts (each, a "**Potential Assigned Contract**"). Each of the Potential Assigned Contracts that potentially could be assumed and assigned in connection with the Sale Transaction, together with the Debtors' good faith calculation of the amount necessary to cure all monetary defaults under each such Contract (the "**Cure Costs**"), is set forth on Schedule 1 hereto. The inclusion of any Contract on Schedule 1 does not constitute an admission by the Debtors, the Stalking Horse Bidder, any Successful Bidder or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, that any stated Cure Cost constitutes a claim against the Debtors or a right against the Stalking Horse Bidder or any other Successful Bidder, or require or guarantee that such Contract ultimately will be assumed or assigned. All rights of the Debtors with respect thereto are reserved. Cure Costs will be paid by the Debtors or the Successful Bidder, as provided in the applicable purchase agreement and the Sale Order.

In addition, to the extent that any of the Cure Costs set forth on Schedule 1 do not reflect (i) postpetition payments that have been made by the Debtors with respect to applicable Cure Costs or (ii) any payments that are made by the Debtors with respect to such Cure Costs after the filing of this Notice, the respective amounts required to be paid to cure any existing defaults under the applicable Contracts shall be reduced by any such corresponding postpetition payments, and the Debtors reserve their rights to update the Cure Costs set forth on Schedule 1 accordingly, either by filing a supplemental notice with the Court or by written notice to the applicable counterparty.

## CURE OBJECTIONS

### A. Cure Objection Deadline

Any counterparty to a Potential Assigned Contract that wishes to object to (i) the Debtors' proposed Cure Costs (each such objection, a "**Cure Objection**") or (ii) the proposed assumption and assignment of its Potential Assigned Contract to the Stalking Horse Bidder, including the adequate assurance of future performance by the Stalking Horse Bidder (each such objection, an "**Assignment Objection**"), must file with the Court and serve on the Objection Notice Parties[3] so as to be actually

[3] "Objection Notice Parties" means: (i) counsel to the Debtors, KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, CA 90067 (Attn: Nir Maoz (nmaoz@ktbslaw.com)), and Pachulski Stang Ziehl & Jones LLP, 919

received no later than **December 7, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Cure Objection Deadline**"). Each Cure Objection and Assignment Objection must be in writing and state, with specificity, the legal and factual bases thereof, and, in the case of a Cure Objection, the amount the counterparty believes to be the correct Cure Costs, and include any appropriate documentation in support thereof. The "**Objection Notice Parties**" are: (i) counsel to the Debtors, (a) KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, Attn: Nir Maoz (nmaoz@ktbslaw.com), and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn: Bradford J. Sandler and Peter J. Keane (bsandler@pszjlaw.com; pkeane@pszjlaw.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (Linda.Casey@usdoj.gov); (iii) counsel to the Prepetition Agent, (a) Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603, Attn: Danielle Juhle and Drake Saffell (danielle.juhle@goldbergkohn.com; drake.saffell@goldbergkohn.com), and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: John H. Knight (knight@rlf.com); (iv) counsel to the Stalking Horse Bidder and DIP Lender, BakerHostetler, 127 Public Square, Suite 2000, Cleveland, Ohio 44114-1214, Attn: Michael A. VanNiel, Alexis C. Beachdell, and Janet Spreen (mvanniel@bakerlaw.com; abeachdell@bakerlaw.com; jspreen@bakerlaw.com); and (v) counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases.

**B. <u>Resolution of Cure Objections and Assignment Objections</u>**

Pursuant to the Bidding Procedures Order, the Debtors and the objecting counterparty, in consultation with the Successful Bidder, may resolve any timely Cure Objection or Assignment Objection without further order of the Court. Any such objection that is not resolved prior to the Sale Hearing shall be heard at the Sale Hearing or at such later date as the Debtors (in consultation with the Successful Bidder) and the counterparty may agree or the Court may order. The Successful Bidder may elect to remove any Potential Assigned Contract from its list of Designated Contracts in accordance with its purchase agreement.

**C. <u>Assignment in the Event of a Cure Dispute</u>**

Pending resolution of a Cure Objection, the applicable Potential Assigned Contract may be assumed and assigned to the Successful Bidder, provided that the disputed portion of the asserted cure amount is reserved pending consensual resolution or order of the Court.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, ASSIGNMENT OBJECTION OR SUPPLEMENTAL OBJECTION (AS DEFINED BELOW), AS APPLICABLE, (A) THE COUNTERPARTY SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF ITS POTENTIAL ASSIGNED**

---

North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn: Bradford J. Sandler and Peter J. Keane (bsandler@pszjlaw.com; pkeane@pszjlaw.com)); (ii) the U.S. Trustee, Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda J. Casey (Linda.Casey@usdoj.gov)); (iii) counsel to the Prepetition Agent, Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, IL 60603 (Attn: Danielle Juhle and Drake Saffell (danielle.juhle@goldbergkohn.com; drake.saffell@goldbergkohn.com)), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: John H. Knight (Knight@RLF.com)); (iv) counsel to the Stalking Horse Bidder and DIP Lender, BakerHostetler, 127 Public Square, Suite 2000, Cleveland, OH 44114-1214 (Attn: Michael A. VanNiel, Alexis C. Beachdell and Janet Spreen (mvanniel@bakerlaw.com; abeachdell@bakerlaw.com; jspreen@bakerlaw.com)); and (v) counsel to the Committee (if any), [●].

**CONTRACT TO THE SUCCESSFUL BIDDER, IF DESIGNATED AS A DESIGNATED CONTRACT, NOTWITHSTANDING ANY ANTI-ASSIGNMENT OR SIMILAR PROVISION THEREIN, AND SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD THERETO; AND (B) THE CURE COSTS SET FORTH ON SCHEDULE 1 HERETO SHALL BE CONTROLLING AND BINDING, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN SUCH POTENTIAL ASSIGNED CONTRACT OR ANY OTHER DOCUMENT, AND SUCH COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING AGAINST THE DEBTORS, THEIR ESTATES OR THE SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM, ANY ADDITIONAL CURE AMOUNT OR ANY OTHER DEFAULT OR CLAIM ARISING UNDER SUCH POTENTIAL ASSIGNED CONTRACT PRIOR TO THE ASSIGNMENT THEREOF.**

## NOTICE OF AUCTION RESULTS

The Auction, if required, will be conducted on December 11, 2026 at 10:00 a.m. (prevailing Pacific Time), either (i) at the offices of KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, or (ii) virtually by video conference or at such other date, time or location as designated by the Debtors, after consultation with the Consultation Parties. If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and will cause publication of such change on the website maintained by Stretto, Inc. ("**Stretto**"), the Debtors' claims and noticing agent in these Chapter 11 Cases, located at https://cases.stretto.com/OutWest (the "**Stretto Website**").

Within one (1) business day after the conclusion of the Auction, the Debtors will file with the Court, serve on the counterparties to the Designated Contracts of the Successful Bidder and the Back-Up Bidder and cause to be published on the Stretto Website the Notice of Successful Bidder, which will, among other things, identify the Successful Bidder and the Back-Up Bidder, if any, and include the applicable Adequate Assurance Information (to the extent not previously provided). If you would like to be served with the Notice of Successful Bidder via email, please provide notice of such request by emailing Stretto at [___].

## ADEQUATE ASSURANCE OBJECTIONS

### A. <u>Adequate Assurance Objection Deadline</u>

Any counterparty to a Potential Assigned Contract that wishes to object to the proposed assumption and assignment of a Potential Assigned Contract on the basis of the Stalking Horse Bidder's proposed form of adequate assurance of future performance must file such objection as an Assignment Objection by the Cure Objection Deadline. Any objection to the adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder (each, a "**Supplemental Objection**") must be filed with the Court and served on the Objection Notice Parties so as to be actually received no later than the commencement of the Sale Hearing (the "**Supplemental Objection Deadline**").

Following service of this Notice, and upon the written request of a counterparty to the Debtors' counsel, the Debtors shall provide such counterparty with the Stalking Horse Bidder's adequate assurance information on a confidential basis. Requests should be directed to Nir Maoz at

nmaoz@ktbslaw.com. The Debtors are authorized to provide the Adequate Assurance Information submitted by any Qualified Bidder whose Bid includes a counterparty's Potential Assigned Contract to such counterparty, on a confidential basis, within one (1) business day after the Debtors' receipt thereof.

## SUPPLEMENTAL CURE NOTICES AND DESIGNATION NOTICE

If, at any time after service of this Notice, the Debtors (i) identify additional Potential Assigned Contracts, (ii) remove any Potential Assigned Contract or (iii) modify the Cure Costs for any Potential Assigned Contract, the Debtors shall promptly file and serve a supplemental Cure Notice (a "**Supplemental Cure Notice**") on each affected counterparty and its counsel of record, if known. Each counterparty to a Potential Assigned Contract identified for the first time in, or whose Cure Costs are reduced by, a Supplemental Cure Notice shall have not less than seven (7) days after service of such Supplemental Cure Notice to file and serve a Cure Objection or Assignment Objection, limited to the matters first set forth in the Supplemental Cure Notice.

No later than three (3) business days prior to the closing of the Sale Transaction, the Debtors shall file and serve on each counterparty to a Potential Assigned Contract a notice (the "**Designation Notice**") identifying the Potential Assigned Contracts designated as Designated Contracts by the Successful Bidder as of such date and the identity of the assignee of each. If the Successful Bidder intends to designate any person other than itself as the assignee of any Designated Contract, the Successful Bidder shall identify such designee, and the Debtors shall make such designee's Adequate Assurance Information available to the applicable counterparty, no later than December 8, 2026. Any counterparty whose Potential Assigned Contract is proposed to be assigned to a designee identified after such date may file and serve, within seven (7) days after service of notice identifying such designee, a Supplemental Objection limited to the adequate assurance of future performance by such designee.

The inclusion of a Contract on this Notice or any Supplemental Cure Notice shall not (a) obligate the Debtors to assume or assign such Contract, (b) obligate the Stalking Horse Bidder or any other Successful Bidder to designate such Contract as a Designated Contract or (c) constitute an admission or agreement of the Debtors that such Contract is executory or unexpired, as applicable. No Potential Assigned Contract shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) entry of an order of the Court authorizing such assumption and assignment and (ii) the closing of the Sale Transaction. Only those Potential Assigned Contracts that are designated as Designated Contracts under the definitive purchase agreement of the Successful Bidder, as approved by the Sale Order, will be assumed and assigned.

## SALE HEARING

The Sale Hearing shall take place on December 15, 2026, at [___]:00 [a/p].m. (prevailing Eastern Time) before the Honorable [___], United States Bankruptcy Judge, at the Court, located at 824 North Market Street, [___] Floor, Courtroom No. [___], Wilmington, Delaware 19801.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Stretto Website.

# Schedule 1

## Potential Assigned Contracts and Cure Costs

| Debtor | Counterparty | Description of Contract or Lease | Restaurant / Store No. | Cure Cost |
|---|---|---|---|---|
| [___] | [___] | [___] | [___] | $[___] |