**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749 (CTG)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 14** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING FROM OUTBACK STEAKHOUSE OF FLORIDA, LLC, (B) USE CASH COLLATERAL, (C) PROVIDE ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS; AND (II) GRANTING RELATED RELIEF**

This matter is before the Court upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") for entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**" and together with the Interim Order, the "**DIP Orders**") under sections 105, 361, 362, 363, 364, 503, 506(c), 507, and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure (the "**Local Rules**") of the United States Bankruptcy Court for the District of Delaware (the "**Court**"), *inter alia*:

i. authorizing the Debtors to obtain, on an interim basis upon entry of this Interim Order and on a final basis upon entry of the Final Order, post-petition financing

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

on the terms described in the Motion including, without limitation, a revolving credit facility (the "**DIP Facility**") and advances thereunder (the "**DIP Advances**") for up to $5,500,000 on a final basis (collectively, the "**DIP Obligations**"), including up to $2,500,000 that may be drawn by the Debtors after entry of the Interim Order (the "**Interim DIP Advances**"), to be provided by Outback Steakhouse of Florida, LLC (in its capacity as post-petition lender, the "**DIP Lender**") pursuant to the DIP Orders which shall be the sole loan documents governing the DIP Facility (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms and the terms of the DIP Orders, collectively, the "**DIP Facility Loan Documents**");

ii. granting the DIP Lender automatically perfected superpriority DIP Liens upon all of the DIP Collateral, which DIP Liens shall be on the terms and subject to the relative priorities set forth on Exhibit 3 hereto, subject to the Carve-Out;

iii. authorizing the Debtors to use Cash Collateral that is subject to prepetition liens in favor of Goldman Sachs Specialty Lending Group, L.P., in its capacity as Prepetition Agent under the Prepetition Credit Agreement, and the lenders party thereto from time to time ("**Lenders**" and, together with Prepetition Agent, individually and collectively, the "**Prepetition Secured Creditors**"), subject to the Budget and provisions of this Interim Order;

iv. granting adequate protection to the Prepetition Secured Creditors with respect to the Debtors' use of the Cash Collateral;

v. modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Lender, and/or the Prepetition Secured Creditors to implement and effectuate the terms and provisions of the DIP Facility Loan Documents and this Interim Order;

vi. subject to entry of the Final Order, waiving (x) the Debtors' ability to surcharge against the Prepetition Collateral (as defined below), the DIP Collateral, and/or the Adequate Protection Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law, (y) the applicability of the "equities of the case" exception under section 552(b) of the Bankruptcy Code and (z) the application of the equitable doctrine of "marshalling" or any other similar doctrine;

vii. scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Order within twenty-one (21) days of the Petition Date;

viii. waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order and, as later applicable, the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

ix. granting related relief.

This Court, having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been provided as set forth in the Motion, which notice is consistent with the Bankruptcy Rules and the Local Rules; and the Court having conducted a hearing (the "**Interim Hearing**") for interim relief on the Motion; and the Court having reviewed the Motion,

the *Declaration of Anish Gandhi in Support of the Debtors' DIP Financing and Cash Collateral Motion*, the *Declaration of Douglas J. Brickley in Support of the Debtors' DIP Financing and Cash Collateral Motion*, and the *Declaration of David Goronkin, Chief Executive Officer of Cerca Trova Restaurant Group Holdings, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (collectively, the "**First Day Declarations**") filed contemporaneously with the Motion, the other evidence adduced by the parties, the representations of counsel, and the entire record made at the Interim Hearing; and the Court having determined that the relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[3]

A. *Disposition.* The relief requested in the Motion is hereby granted on an interim basis on the terms set forth below. Any objections to the Motion and the entry of this Interim Order to the extent not withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied, and overruled on the merits in their entirety. This Interim Order shall become effective immediately upon its entry.

B. *Notice.* In accordance with the Bankruptcy Rules and the Local Rules, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by electronic mail, facsimile, overnight courier, or hand delivery to certain parties-in-interest, including: (i) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (ii) the Debtors' thirty (30) largest unsecured creditors on a

[3] This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon its entry.

consolidated basis; (iii) counsel to the DIP Lender; (iv) counsel to the Prepetition Agent; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing complies with the applicable Bankruptcy Rules and Local Rules.

C. *Debtors' Stipulations.* Subject to paragraph 15 of this Interim Order and the rights of the parties-in-interest set forth therein, the Debtors admit, stipulate, and agree that (collectively, the admissions, stipulations, agreements, and releases set forth in this Paragraph C, the "**Debtors' Stipulations**"):

1. Prepetition Obligations.

a. The Debtors are indebted to the Prepetition Secured Creditors pursuant to that certain Credit and Guaranty Agreement, dated April 25, 2017 (as amended, supplemented, amended and restated, or otherwise modified from time to time, the "**Prepetition Credit Agreement**"), by and among Cerca Trova Restaurant Group Holdings, Inc. (*f/k/a T-Bird Restaurant Group Holdings, Inc.*), Out West Restaurant Group, Inc. (*f/k/a T-Bird Restaurant Group, Inc.*), Cerca Trova Southwest Restaurant Group, LLC (*f/k/a T-Bird Southwest Restaurant Group, LLC*), the other parties signatory thereto as "Borrower", Cerca Trova Restaurant Group, Inc. (*f/k/a T-Bird Restaurant Group, Inc.*), as "Guarantor", the other parties signatory thereto from time to time as "Credit Parties", Goldman Sachs Specialty Lending Group, L.P., as administrative agent, collateral agent, lead arranger, and syndication agent (in such capacities, together with any successors or assigns, "**Prepetition Agent**") and the Lenders party thereto from time to time. The Prepetition Credit Agreement was most recently amended pursuant to that certain Forbearance Agreement and Fourth Amendment to Credit and Guaranty Agreement, effective as of December 31, 2023.

b. The "Obligations" (as defined in the Prepetition Credit Agreement) arising under the Prepetition Credit Agreement and the other documents executed in connection therewith, including, without limitation, the "Collateral Documents" (as defined in the Prepetition Credit Agreement) (collectively, the "**Prepetition Loan Documents**"), are referred to herein as the "**Prepetition Obligations**." The liens and security interests granted by the Debtors in favor of the Prepetition Secured Creditors under the Prepetition Loan Documents securing such obligations are referred to herein as the "**Prepetition Liens**," and all of the "Collateral" (as defined in the Prepetition Credit Agreement) existing as of the Petition Date, including, for the avoidance of doubt, all proceeds, products, accessions, rents, and profits thereof, is referred to herein as the "**Prepetition Collateral**."

c. As of the Petition Date, the aggregate outstanding Prepetition Obligations under the Prepetition Credit Agreement totaled not less than $319,897,490.05, consisting of approximately $122,500,000 of term loan obligations, $6,500,000 of revolving loan obligations, and approximately $190,897,490.05 of accrued amounts capitalized pursuant to the Prepetition Loan Documents, plus all other Prepetition Obligations, including, without limitation, all accrued, accruing, and unpaid interest (including default rate interest), fees, costs, expenses, and disbursements (including, without limitation, all attorneys' fees, accountants' fees, auditor fees, appraisers' fees, financial advisors' fees, and related fees, costs, expenses, and disbursements), in each case payable pursuant to the Prepetition Loan Documents and to the extent allowable under sections 502 and 506(b) of the Bankruptcy Code.

2. The Prepetition Obligations constitute the legal, valid, and binding obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Loan Documents, all of which are deemed to be reaffirmed by the parties thereto.

3. No offsets, reductions, defenses, claims, or counterclaims to the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination, or any other claim, cause of action, or challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise.

4. The Debtors do not have, and hereby absolutely, unconditionally, and irrevocably release, remise, waive, and discharge and are forever barred from bringing or asserting any claims, counterclaims, causes of action, defenses, or setoff rights relating to the Prepetition Loan Documents, the Prepetition Liens, or the Prepetition Obligations against the Prepetition Secured Creditors and their respective successors and assigns, and their present and former shareholders, members, managers, partners, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, advisors, principals, employees, consultants, agents, legal representatives, and other representatives. For the avoidance of doubt, the Debtors forever waive and release any and all "claims" (as defined in the Bankruptcy Code), controversies, disputes, liabilities, obligations, demands, expenses (including, without limitation, attorneys' fees), debts, liens, actions, counterclaims, causes of action, defenses, or setoff and/or recoupment rights against the Prepetition Secured Creditors, whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other provisions of applicable state or federal law, in each case relating to the Prepetition Loan Documents, the Prepetition Liens, or the Prepetition Obligations.

D. *Findings Regarding Post-Petition Borrowings and Use of Cash Collateral.*

1. Good and sufficient cause has been shown for entry of this Interim Order.

2. The Debtors have an immediate need to use the Cash Collateral and to borrow from the DIP Facility as provided herein, in order to permit, among other things, the orderly continuation of the operation of the Debtors' businesses, to maintain business relationships with employees, vendors, and suppliers, to make payroll, to make ordinary capital expenditures, and to provide for other working capital and operational needs, to preserve Debtors' assets for the benefit of their creditors and their estates, to avoid immediate and irreparable harm to the Debtors' bankruptcy estates, and to minimize disruption to and avoid the termination of their business operations. Entry of this Interim Order will also enhance the possibility of maximizing value through the contemplated section 363 sale transaction.

3. The Prepetition Secured Creditors have consented to the Debtors' use of Cash Collateral and the DIP Facility made by DIP Lender, subject to the terms of this Interim Order. The Prepetition Secured Creditors' consent to entry of this Interim Order shall not constitute (nor shall such consent be implied from any other action, inaction, or acquiescence by the Prepetition Secured Creditors) to the charging of any costs or expenses of administration of these Chapter 11 Cases (or any future proceeding that may result therefrom), against, or the recovery from, the Prepetition Collateral, including the Cash Collateral, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Prepetition Secured Creditors.

4. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code sections 364(b) and 503(b)(1) sufficient to finance the operation of their businesses. The Debtors are unable to obtain credit allowable under Bankruptcy Code sections 364(c)(1), (c)(2), or (c)(3) on terms more favorable than those offered by the DIP Lender. An immediate need exists for the Debtors to obtain proceeds of the DIP Facility in order to continue

operations, order critical supplies and equipment, and to administer and preserve the value of their bankruptcy estates as set forth in the Budget (defined herein). The Debtors require the availability of working capital borrowed from the DIP Facility and from the use of the Cash Collateral of the Prepetition Secured Creditors, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors, and all other stakeholders.

5. The terms of the DIP Facility have been negotiated at arms' length, the DIP Facility is being extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code and the DIP Lender is entitled to the benefits of the provisions of such section.

6. The terms and conditions of the DIP Facility Loan Documents are fair and reasonable, the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

7. Nothing in this Interim Order adjudicates or determines the ultimate disposition, ownership, transferability, treatment, or release of any cause of action arising under chapter 5 of the Bankruptcy Code in connection with any future sale transaction. Any such matters shall be addressed in connection with entry of a Final Order, a subsequently proposed sale transaction and any related sale order.

8. Subject to Paragraph 15 of this Interim Order, the Prepetition Secured Creditors are entitled to adequate protection as set forth herein pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code solely to the extent of any diminution in the value of their interests in the Prepetition Collateral from and after the Petition Date.

9. Under the circumstances of these Chapter 11 Cases, this Interim Order is a fair and reasonable response to the Debtors' request to use the Cash Collateral and to obtain new credit provided by the DIP Facility.

**IT IS HEREBY ORDERED THAT:**

1. *Motion Granted.* The Motion is GRANTED on an interim basis, the Interim DIP Advances are authorized, and the use of Cash Collateral on an interim basis is authorized, solely to the extent of the terms and conditions set forth in this Interim Order.

2. *Authorization to Enter into the DIP Facility and Incur Indebtedness Thereunder.* The DIP Facility is hereby approved as set forth herein. No credit agreement, promissory note, or other loan document shall be required to evidence the DIP Facility, the terms of which are set forth in full in the DIP Orders. The Debtors are expressly and immediately authorized and empowered to incur and to perform the obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Facility Loan Documents. To the extent there exists any conflict among the terms of the Motion, the DIP Facility Loan Documents, and this Interim Order, this Interim Order shall govern and control.

3. *Authorization to Borrow.* Upon entry of this Interim Order and subject to the terms, conditions, and limitations on availability set forth in the DIP Facility Loan Documents and this Interim Order, the Debtors are hereby authorized to request, and the DIP Lender is hereby authorized (and obligated) to make, and subject only to satisfaction of the applicable conditions set forth in Paragraph 10 hereof shall make, a new money loan in an amount not to exceed $2,500,000 in Interim DIP Advances, the proceeds of which shall be used in accordance with the DIP Facility Loan Documents and the Budget (defined below). Interim DIP Advances shall be made only to the extent of a Liquidity Shortfall and otherwise in accordance with the

Budget. As used herein, "**Liquidity Shortfall**" means the greatest amount, if any, by which the Debtors' unrestricted cash on hand (excluding funds held in the Carve-Out Reserve Account (as defined below) and before giving effect to the requested DIP Advance) is projected under the Budget or the most recent Cash Flow Forecast (as defined below) to be less than $2,000,000 (the "**Minimum Liquidity Amount**") as of the end of any week covered thereby. DIP Lender shall have no obligation to provide any DIP Advances other than the Interim DIP Advances before entry of the Bidding Procedures Order. The DIP Lender shall fund each DIP Advance within two (2) business days after receipt of a written borrowing request from the Debtors certifying that the applicable conditions set forth in Paragraph 10 hereof have been satisfied.

4. *DIP Obligations.* The DIP Facility Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtors, their estates, and any successors thereto, including any trustee or examiner with expanded powers appointed in the Chapter 11 Cases, or in cases under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"). Upon entry of this Interim Order, the DIP Obligations will include all loans, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Lender under, or secured by, the DIP Facility Loan Documents or the Interim Order, including all principal, costs, fees, expenses, and other amounts under the DIP Facility Loan Documents. The DIP Advances shall not bear interest. The Debtors shall pay to the DIP Lender a commitment fee in the amount of $50,000 (the "**DIP Commitment Fee**"), which shall be fully earned and payable upon entry of this Interim Order, and shall reimburse the DIP Lender for its reasonable and documented out-of-pocket fees and expenses incurred in

connection with the DIP Facility, including the reasonable and documented fees and expenses of its counsel (which reimbursement is in addition to, and not limited by, the DIP Commitment Fee); provided that the DIP Lender shall deliver summary invoices (which may be redacted for privilege) for such expenses to the Debtors, the U.S. Trustee, and counsel to the Committee (if any), each of whom shall have ten (10) days to object to the reasonableness thereof, and any amount subject to an objection that is not consensually resolved shall be paid only upon further order of the Court. The DIP Commitment Fee and such expenses shall constitute DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease upon the occurrence of the Termination Date (as defined herein), subject to Paragraphs 24 and 25 hereof. Subject to entry of this Interim Order, no obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Facility Loan Documents (including any DIP Obligations or DIP Liens) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity; provided that any obligation, payment, transfer, or grant of collateral security relating to the Prepetition Obligations or the Prepetition Liens shall remain subject to Paragraph 15 hereof.

5. *Repayment Through Sale Transaction*. If the contemplated sale transaction with the DIP Lender or its affiliate purchaser pursuant to the Stalking Horse Agreement is

consummated, any DIP Obligations then outstanding shall be satisfied and deemed to be indefeasibly paid in full through a dollar-for-dollar reduction of the cash purchase price otherwise payable by the DIP Lender or its affiliate purchaser at closing in accordance with Section 3.3 and Section 3.11 of the Stalking Horse Agreement. If any sale or other disposition of all or substantially all assets of the Debtors is consummated with a purchaser other than the DIP Lender or its affiliate, all DIP Obligations shall be indefeasibly paid in full in cash at or prior to the closing of such transaction. Nothing in this Interim Order approves the Stalking Horse Agreement, the Bidding Procedures, or any sale, or limits the priority or treatment of any bid protections approved in the Bidding Procedures Order, all of which remain subject to further order of the Court. The Deposit and any deposit made by any bidder under the Bidding Procedures Order shall not constitute DIP Collateral, Prepetition Collateral, Adequate Protection Collateral, or Cash Collateral, unless and until retained by the Debtors in accordance with the Stalking Horse Agreement or Bidding Procedures Order, provided that in the event that the Debtors are entitled to retain the Deposit pursuant to the Stalking Horse Agreement, the DIP Lender shall have no lien or other interest in the Deposit and the Deposit shall not be used to repay any DIP Obligations. Upon the consummation of a sale transaction with a successful bidder other than the DIP Lender or an affiliate of the DIP Lender, the outstanding DIP Obligations shall be paid at the closing of such transaction *first*, with the proceeds of the Debtors' unencumbered assets, if any, as of the Petition Date that are included in such sale, and *second*, only to the extent any DIP Obligations remain outstanding after application of the proceeds of such unencumbered assets, with the proceeds of the DIP Collateral; provided that, for the avoidance of doubt, nothing herein requires or effects any allocation of sale proceeds among assets.

6. *DIP Liens.* In order to secure the DIP Obligations, with the consent of the Prepetition Secured Creditors, effective immediately upon entry of this Interim Order, and subject to the priorities set forth in Paragraph 7 herein, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected post-petition security interests in and liens on (collectively, the "**DIP Liens**") all real and personal property and other assets, whether now existing or hereafter arising and wherever located, tangible and intangible, of the Debtors and their bankruptcy estates (collectively, the "**DIP Collateral**"); provided that, pending entry of the Final Order, the DIP Collateral shall not include any Avoidance Actions or the proceeds thereof or leasehold interests of non-residential real property that prohibit or restrict the granting of such liens in the applicable lease except as permitted pursuant to applicable non-bankruptcy law (but shall include the proceeds of the sale or disposition of such leases).

7. *DIP Lien Priority.* The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security interest, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, subject to the relative priorities set forth on Exhibit 3 hereto, and subject only to (a) the Carve-Out and (b) valid, perfected, enforceable, and unavoidable liens existing as of the Petition Date that are senior to the Prepetition Liens under applicable non-bankruptcy law or valid and unavoidable liens perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code (the "**Permitted Prior Liens**"). The Prepetition Secured Creditors shall receive the Adequate Protection Liens, Adequate Protection Superpriority Claims, and other protections

described herein as adequate protection for the priming of their prepetition liens and interests, subject to Paragraph 15 hereof.

8. *No Additional Senior or Pari Passu Liens or Claims.* Except for the Carve-Out and the Permitted Prior Liens, the Debtors shall not create, incur, obtain, or permit any lien, security interest, administrative expense claim, or other claim that is senior to or pari passu with the DIP Liens, Prepetition Liens, the DIP Superpriority Claims (defined below), or the Adequate Protection Superpriority Claims (as defined below) without the prior written consent of the DIP Lender and Prepetition Agent.

9. *DIP Superpriority Claims.* In addition to the DIP Liens granted herein, effective immediately upon entry of the Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over all administrative expense claims, adequate protection and other diminution claims, unsecured claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113, and 1114 of the Bankruptcy Code or otherwise, but solely to the extent of the priority set forth in section 364(c)(1) of the Bankruptcy Code, and all other claims against the Debtors or their estate in any Successor Cases, at any time existing or arising, of any kind or nature whatsoever (the "**DIP Superpriority Claims**"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against the Debtors, and shall be payable from

and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof (excluding, pending entry of the Final Order, Avoidance Actions and the proceeds thereof) after satisfaction of any liens thereon. Other than as provided in this Interim Order with respect to the Carve-Out, and subject to entry of the Final Order with respect to section 506(c) of the Bankruptcy Code, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Chapter 11 Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with or *pari passu* with, the DIP Superpriority Claims, the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

10. *Conditions to Extension of Credit.* Notwithstanding anything herein to the contrary, the DIP Lender shall have no obligation to make any DIP Advance unless: (a) the Interim Order (with respect to the Interim DIP Advances) or the Final Order (with respect to any DIP Advance in excess of the Interim DIP Advances) has been entered and remains in full force and effect; (b) the Debtors have executed the Stalking Horse Agreement designating the DIP Lender or its affiliate as the stalking horse bidder and have filed the Sale Motion; provided that, as a condition solely to DIP Advances in excess of the Interim DIP Advances, the Court shall have entered the Bidding Procedures Order in form and substance reasonably satisfactory to the DIP Lender; (c) no Termination Event or Event of Default has occurred and is continuing or would result from the requested DIP Advance; (d) the requested DIP Advance does not exceed the Liquidity Shortfall, as certified by the Debtors in the applicable borrowing request; and (e) the requested DIP Advance will be used in accordance with the Budget and, after giving effect thereto, no Prohibited Variance exists. Notwithstanding anything in this Interim Order to the contrary, the DIP Lender shall have no obligation to make any DIP Advance if (1) the DIP

Lender is not the active stalking horse bidder, successful bidder, or back-up bidder in connection with the proposed sale when the DIP Advance request is made, (2) the Debtors consummate an Alternative Transaction (as defined in the Stalking Horse Agreement), or (3) the Stalking Horse Agreement is terminated, other than as a result of a breach thereof by the DIP Lender or its affiliate purchaser including a termination by the Debtors pursuant to Section 10.2(h) thereof.

11. *Use of Proceeds of DIP Facility.* From and after the Petition Date, the Debtors shall use DIP Advances under the DIP Facility, in accordance with the Budget (subject to such variances as are permitted under the DIP Orders), only for the purposes specifically set forth in the DIP Orders and the DIP Facility Loan Documents, and in compliance with the terms and conditions in the DIP Orders and the DIP Facility Loan Documents.

12. *Authorization to Use Cash Collateral.* From entry of this Interim Order through and including the earlier to occur of (i) January 4, 2027 (or such other date consented to in writing by the Prepetition Agent), or (ii) the Termination Date, the Debtors are authorized to use Cash Collateral as set forth in this Interim Order, subject to the terms and conditions of this Interim Order and solely in accordance with the Budget (defined herein), and further subject to variances other than a Prohibited Variance (as defined herein). The Debtors shall be enjoined and prohibited from at any time using the Cash Collateral for any purpose not expressly set forth in this Interim Order absent further order of this Court.

13. *Franchise Fees*. The Debtors are authorized, but not directed, to pay, solely to the extent set forth in the Budget, all royalty fees, advertising and marketing fees, and other fees and amounts due and payable to the DIP Lender or its affiliates, in their capacities as franchisor, under the Franchise Agreements (as defined in the Stalking Horse Agreement) (collectively, the "**Franchise Fees**"), whether attributable to the period before or after the Petition Date, such that

the Debtors remain current on all Franchise Fees through the closing of a sale; provided that (a) pending entry of the Final Order, the aggregate amount of Franchise Fees attributable to the period prior to the Petition Date paid pursuant to this Interim Order shall not exceed $1.5 million, and (b) the foregoing shall not authorize the payment of any amount deferred, capitalized, or evidenced by a promissory note under the Amended and Restated Holistic Resolution Agreement, the Amended and Restated Deferred Payment Agreement, or any other prepetition agreement with the DIP Lender or its affiliates that is not due and payable. Payment of any Franchise Fees shall not constitute or be deemed an assumption of any Franchise Agreement under section 365 of the Bankruptcy Code or a waiver of any of the Debtors' rights, claims, or defenses with respect thereto, including any right of setoff or recoupment.

14. *Adequate Protection for the Prepetition Secured Creditors.* Pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, the Prepetition Secured Creditors are entitled to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition Secured Creditors' interests in the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code (such diminution in value, the "**Adequate Protection Amount**"). As adequate protection for the Adequate Protection Amount, and solely to the extent of same, the Prepetition Secured Creditors are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

a. <u>Adequate Protection Liens</u>. Subject only to the terms of this Interim Order, pursuant to sections 361 and 363(e) of the Bankruptcy Code and in consideration of the stipulations and consents set forth herein, the Debtors hereby grant to each Prepetition Secured Creditor (for the benefit of itself and the other Prepetition Secured Creditors, as applicable),

solely to the extent of any diminution in value of the Prepetition Collateral, valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date: (x) valid, binding, continuing, enforceable, and fully perfected replacement and additional post-petition liens on and security interests in the post-petition property of the Debtors of the same priority, extent, and amount as the Prepetition Secured Creditors' prepetition interests in the Prepetition Collateral, together with any proceeds, products, accessions, rents, or profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, junior to the Carve-Out, the Permitted Prior Liens, and the DIP Liens (the "**Replacement Liens**"), and (y) valid, binding, continuing, enforceable, and fully perfected second priority liens on the DIP Collateral, subject only to the Carve-Out and the Permitted Prior Liens and junior only to the DIP Liens (the "**Subordinated Adequate Protection Liens**" and together with the Replacement Liens, the "**Adequate Protection Liens**" and the property subject thereto, the "**Adequate Protection Collateral**"); provided that, pending entry of the Final Order, the Adequate Protection Collateral shall not include Avoidance Actions or the proceeds thereof or leasehold interests of non-residential real property that prohibit or restrict the granting of such liens in the applicable lease except as permitted pursuant to applicable non-bankruptcy law (but shall include the proceeds of the sale or disposition of such leases. Except with respect to the Subordinated Adequate Protection Liens which are expressly subordinated to the DIP Liens, the Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, or (b) any other lien or security interest under sections 361, 363, or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim Order, including with respect to the DIP Liens.

b. Adequate Protection Superpriority Claims. Each Prepetition Secured Creditor is hereby granted (for the benefit of itself and the other Prepetition Secured Creditors, as applicable), subject only to the Carve-Out and junior only to the DIP Superpriority Claims, allowed superpriority administrative expense claims (the "**Adequate Protection Superpriority Claims**") as provided for in section 507(b) of the Bankruptcy Code, payable from and having recourse to all prepetition and post-petition property of the Debtors (excluding, pending entry of the Final Order, Avoidance Actions and the proceeds thereof) after satisfaction of any liens therein. Subject only to the Carve-Out and the DIP Superpriority Claims, and except as provided below, the Adequate Protection Superpriority Claims shall have priority over any and all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507, 546(c), 552(b), 726, and 1114 of the Bankruptcy Code or otherwise, solely to the extent provided by section 507(b) of the Bankruptcy Code) and all other claims against the Debtors or their estates in any Successor Cases, at any time existing or arising, of any kind or nature whatsoever. Other than the Carve-Out and the DIP Superpriority Claims, no cost or expense of administration of the Chapter 11 Cases shall be senior to, or *pari passu* with, the Adequate Protection Superpriority Claims.

c. Adequate Protection Payments. Each Prepetition Secured Creditor shall, as set forth below, receive (for the benefit of itself and the other Prepetition Secured Creditors, as applicable) from the Debtors (collectively, "**Adequate Protection Payments**") payment of the reasonable and documented pre- and post-petition fees and out-of-pocket expenses of (A) Goldberg Kohn Ltd. and (B) Richards, Layton & Finger, P.A. (together, the "**Adequate Protection Professionals**", and such fees and expenses, collectively, the "**Adequate Protection**

**Professional Fees and Expenses**") in each case solely to the extent set forth in the Budget. The Adequate Protection Professionals shall deliver summary invoices (which may be redacted for privilege) to the Debtors, the U.S. Trustee, and counsel to the Committee (if any), each of whom shall have ten (10) days to object to the reasonableness thereof; any amount subject to an objection that is not consensually resolved shall be paid only upon further order of the Court. All Adequate Protection Payments are subject to recharacterization as payments of principal of the Prepetition Obligations, or disgorgement, in connection with a successful Challenge or as otherwise ordered by the Court, and all parties' rights with respect thereto are reserved. Notwithstanding the foregoing, no Adequate Protection Payment shall diminish, impair, or otherwise affect the priority of the DIP Liens or DIP Superpriority Claims.

d. Reporting. As further adequate protection of the interests of the Prepetition Secured Creditors, the Debtors shall (i) cooperate with the Prepetition Secured Creditors and authorize and direct the Debtors' professionals and advisors to provide such information to the Prepetition Agent as may be reasonably requested by the Prepetition Agent from time to time, (ii) comply with all reporting requirements set forth in the DIP Facility Loan Documents and this Interim Order, and deliver to the Prepetition Agent the financial statements, reports, and notices required under Sections 5.1(a), 5.1(b), 5.1(f)(ii), 5.1(n), and 5.1(p) of the Prepetition Credit Agreement at the times required thereunder (provided that such financial statements need not include comparisons to the Financial Plan or be accompanied by a Narrative Report or a Compliance Certificate (each as defined in the Prepetition Credit Agreement); and provided further that no such financial statements, reports, or notices shall be required to be delivered after the closing of a sale of all or substantially all of the Debtors' assets pursuant to a Sale Order), (iii) provide the Prepetition Secured Creditors with all financial statements, cash

flow forecasts, and variance reporting, as and when provided to the DIP Lender, and (iv) provide such additional reporting as the DIP Lender and Prepetition Secured Creditors shall reasonably require.

e. In addition to, and without limiting, whatever rights to access the DIP Lender has under the DIP Facility Loan Documents and the Prepetition Secured Creditors have under the Prepetition Loan Documents, the Debtors shall permit representatives, agents, and employees of the DIP Lender and Prepetition Secured Creditors to have reasonable access to: (a) inspect the Debtors' assets and properties during normal business hours; (b) examine the Debtors' books and records; and (c) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors, attorneys, and consultants, provided, however, that the Debtors shall not be required to disclose to the DIP Lender or the Prepetition Secured Creditors information protected by the work product doctrine, the attorney-client privilege, or any similar privileges.

15. *Effect of Stipulations on Third Parties.*

a. Generally. The Debtors' Stipulations are set forth in Paragraph C above, which stipulations and admissions are and shall be binding upon the Debtors and any successors thereto in all circumstances. The stipulations and admissions contained in this Interim Order, including without limitation, the Debtors' Stipulations, shall also be binding upon the Debtors' estates and all other parties in interest, including any official committee of unsecured creditors appointed in the Chapter 11 cases (if any) (the "**Committee**"), any examiner with expanded powers, and any Chapter 7 or Chapter 11 trustee appointed or elected for the Debtors (a "**Trustee**"), for all purposes unless (i) the Committee or any other party in interest, no later than the date that is seventy-five (75) days from entry of this Interim Order, as such date may be

extended (x) by written agreement of the Prepetition Agent (or, solely with respect to any Challenge against the DIP Lender, the DIP Lender), which agreement may be by email from counsel, or (y) by order of the Court for cause shown upon a motion filed before the expiration of such date (the "**Challenge Deadline**" and the time period prior to the Challenge Deadline, the "**Challenge Period**"),[4] has sought and obtained standing and the requisite authority to commence a Challenge (as defined below) and has properly filed an adversary proceeding as required under the Bankruptcy Rules (y) challenging the amount, validity, enforceability, priority, or extent of the Prepetition Obligations or the Prepetition Liens on the Prepetition Collateral securing the Prepetition Obligations, or the DIP Obligations or the DIP Liens on the DIP Collateral, or (z) otherwise asserting any other claims, counterclaims, causes of action, objections, contests, or defenses against the Prepetition Secured Creditors on behalf of the Debtors' estates ((y) and (z), collectively, referred to herein as "**Challenges**"), and (ii) the Court enters judgment in favor of the plaintiff sustaining any such timely commenced Challenge in any such duly filed adversary proceeding or contested matter and any such judgment has become a final judgment that is not subject to any further review or appeal; provided, that, as to the Debtors, all such Challenge(s) are hereby irrevocably waived and relinquished effective as of the Petition Date. Notwithstanding the foregoing, if a Trustee is appointed or elected prior to the expiration of the Challenge Period, the Trustee shall have until the later of (i) the Challenge Deadline and (ii) ten (10) days after such appointment or election to commence a Challenge.

b. Binding Effect. If no such Challenge is timely filed prior to the expiration of the Challenge Period, without further order of the Court: (i) the Debtors' Stipulations,

---

[4] The Debtors will be seeking to shorten the Challenge Period, subject to entry of the Final Order granting such relief, by setting the Challenge Deadline to occur concurrently with the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization.

admissions, and releases contained in this Interim Order (including the stipulations contained herein and the releases set forth herein) shall be binding on all parties in interest, including the Debtors' estates, the Committee (if any), and any subsequently appointed Trustee, case fiduciary, or successors and assigns; (ii) the DIP Obligations and the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense, or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases; (iii) the DIP Liens and the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, and with the priority specified in the Debtors' Stipulations, and not subject to defense, counterclaim, recharacterization, subordination, or avoidance; and (iv) the DIP Lender and the Prepetition Secured Creditors (and their respective successors, assigns, agents, affiliates, subsidiaries, directors, officers, managers, members, shareholders, representatives, attorneys, or advisors) shall not be subject to any other or further challenge by any Committee or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period). If any Challenge is timely and properly filed prior to the expiration of the Challenge Period, the releases, stipulations, and admissions contained in this Interim Order, including without limitation, in the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person, including any Trustee appointed in any Successor Cases, except as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint

under FRCP 15 or otherwise (other than any amended or additional claims that have been asserted through an amended complaint prior to the Challenge Deadline).

c. No Standing. Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their bankruptcy estates, including, without limitation, any Challenge(s) with respect to the DIP Facility Loan Documents, the DIP Obligations, the Prepetition Loan Documents, or the Prepetition Obligations.

16. *Debtors' Waivers and Releases.*

a. Section 506(c) Claims and 552(b) Equities. Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Cases at any time shall be charged against the DIP Lender, the Prepetition Secured Creditors, their respective claims, the DIP Collateral, the Prepetition Collateral, or the Adequate Protection Collateral, including Cash Collateral, pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Lender and/or the Prepetition Agent, respectively. Subject to entry of the Final Order, the DIP Lender and the Prepetition Secured Creditors shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the DIP Lender and/or the Prepetition Secured Creditors with respect to proceeds, products, offspring, or profits of any of the DIP Collateral, the Prepetition Collateral, and/or the Adequate Protection Collateral.

b. Release of Prepetition Secured Creditors. In consideration of and as a condition to the Prepetition Secured Creditors' consent to the use of Cash Collateral and providing other financial accommodations to the Debtors pursuant to the provisions of this

Interim Order and the Final Order, the Debtors, on behalf of themselves, and their respective past, present, and future predecessors, successors, heirs, subsidiaries, and assigns and the Debtors' estates (collectively, the "**Releasors**"), subject only to Paragraph 15 above, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit (i) the Prepetition Secured Creditors, (ii) the respective participants, directors, officers, attorneys, advisors, employees, managers, agents, financial advisors, consultants, professionals, and other representatives of the Prepetition Secured Creditors, (iii) the present and former shareholders, members, partners, affiliates, subsidiaries, divisions of the Prepetition Secured Creditors, and (iv) the respective heirs, predecessors, successors, and assigns of each of the parties identified in the foregoing clauses (i) through (iii) (the parties identified in clauses (i) through (iv) being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, disputes, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, obligations, expenses (including, without limitation, attorneys' fees), losses, injuries, debts, liens, judgments, and any and all other claims, counterclaims, cross claims, defenses, rights of set-off, demands, and liabilities whatsoever (individually, a "**Released Claim**" and collectively, the "**Released Claims**") of every kind, name, nature, and description, known or unknown, foreseen or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, asserted or unasserted, both at law and in equity, which include, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) claims and causes of action arising under the Bankruptcy Code with respect to the Prepetition Obligations, the Prepetition Loan Documents, or the Prepetition Liens, and (z) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of

any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Obligations, the Prepetition Loan Documents, or the Prepetition Liens, that any Releasor may now or hereafter own, hold, have, or claim to have against the Releasees for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Interim Order, in respect of the Debtor, the Prepetition Obligations, and the Prepetition Loan Documents.

c. Release of DIP Lender. In consideration of and as a condition to the DIP Lender providing the DIP Facility and the DIP Lender's providing other financial accommodations to the Debtors pursuant to the provisions of this Interim Order, the Final Order, and the DIP Facility Loan Documents, each of the Releasors hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit (i) the DIP Lender, (ii) the respective participants, directors, officers, attorneys, advisors, employees, managers, agents, financial advisors, consultants, professionals, and other representatives of the DIP Lender, (iii) the present and former shareholders, members, partners, affiliates, subsidiaries, and divisions of the DIP Lender, and (iv) the respective heirs, predecessors, successors, and assigns of each of the parties identified in the foregoing clauses (i) through (iii) (the parties identified in clauses (i) through (iv) being hereinafter referred to collectively as "**DIP Lender Releasees**") of and from any and all Released Claims of every kind, name, nature, and description, known or unknown, foreseen

or unforeseen, matured or contingent, liquidated or unliquidated, primary or secondary, suspected or unsuspected, asserted or unasserted, both at law and in equity, which include, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) claims and causes of action arising under the Bankruptcy Code with respect to the DIP Obligations, the DIP Facility Loan Documents, or the DIP Liens, and (z) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, the DIP Facility Loan Documents, or the DIP Liens, that any Releasor may now or hereafter own, hold, have, or claim to have against the DIP Lender Releasees for, upon, or by reason of any nature, cause, or thing whatsoever which arose or may have arisen at any time on or prior to the date of this Interim Order, in connection with the negotiation, documentation, implementation, or performance of the DIP Obligations, the DIP Facility, and the DIP Facility Loan Documents; *provided*, that such release shall be effective with respect to the Debtors upon entry of this Interim Order, and shall not be effective with respect to the Debtors' estates until the expiration of the Challenge Period; provided further, that nothing in this Paragraph 16(c) shall release or impair any right or claim of the Debtors or their estates under the Stalking Horse Agreement, any franchise agreement, or any other agreement with the DIP Lender or its affiliates.

17. *Budget, Reporting, and Covenants.*

a. Budget. Attached hereto as Exhibit 1 is a nine (9)-week cash flow budget (the "**Budget**") which reflects on a line-item basis the Debtors' (i) weekly projected cash receipts, and (ii) weekly projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses under these Chapter 11 Cases, capital expenditures, asset sales, including the fees relating thereto, Adequate Protection Payments, budgeted fees and expenses of the DIP Lender, and any other fees and expenses relating to the DIP Facility). Unless and until the DIP Lender and Prepetition Agent have approved an updated budget in writing (which approval (1) shall not be unreasonably withheld, conditioned, or delayed; provided that a determination by Prepetition Agent in its discretion, that such updated budget is adverse to the interests of the Prepetition Secured Creditors in any material respect shall not be deemed to be an unreasonable withholding, conditioning, or delaying of approval, and (2) shall be deemed given if no written objection (which may be by email from counsel) is delivered within four (4) business days after delivery of the proposed updated budget), on no less than two (2) business days' notice of a request for such amendment, the Debtors shall remain subject to and be governed by the terms of the Budget, and the DIP Lender shall not, as applicable, have any obligation to fund to any updated and otherwise unapproved budget, nor will the Debtors be authorized to use the Cash Collateral for amounts contained in such budget to the extent they are in addition to or exceed amounts set forth in the existing Budget. To the extent the DIP Lender and Prepetition Agent approve any amendment to the Budget, such amended budget shall be filed with the Court together with a notice indicating that such amended budget shall be substituted for the Budget attached hereto.

b. Cash Flow Projections; Variance Reporting. Commencing on November 6, 2026 and continuing on Friday of each week thereafter (each such date, a "**Variance Report**

**Date**"), the Debtors shall provide to the DIP Lender, Prepetition Secured Creditors, and to any Committee (should one be appointed): (x) a nine (9)-week cash flow projection for the Debtors (in substantially the same form and detail as the Budget) for the nine (9)-week period beginning on the Monday of such week, representing the Debtors' good faith estimates of projected cash flows, together with reasonable detail of the components thereof (the "**Cash Flow Forecast**"), (y) a variance report/reconciliation report (each, a "**Variance Report**") certified by the Chief Financial Officer (or some other appropriate officer) of the Debtors, in form acceptable to the DIP Lender and Prepetition Secured Creditors, setting forth (A) the actual cash receipts, expenditures, disbursements, outstanding available cash balance, and the outstanding DIP Facility balance (if any) of the Debtors for such immediately preceding fiscal week and each fiscal week since the Petition Date (including any "stub week" that includes the Petition Date) cumulatively and on a line-item basis, and (B) the variance in dollar amounts of the actual cash receipts, expenditures, disbursements, Net Cash Flow from Operations (as calculated per the Budget), and outstanding DIP Facility balance for each week, in each case cumulatively from the Petition Date through the week most recently ended as compared to the budgeted amounts for such cumulative period on a line item basis, and (z) a certificate signed by the Chief Financial Officer (or some other appropriate officer) of the Debtors, in form acceptable to the DIP Lender and the Prepetition Agent, certifying whether the Debtors are in full compliance with the Budget and providing an explanation for any Prohibited Variance (which shall be tested every two (2) weeks, commencing with the Variance Report delivered November 20, 2026 for the two (2) weeks ended November 13, 2026). As used herein, "**Prohibited Variance**" means that the Debtors' Net Cash Flow from Operations (as such term is used in and as calculated in accordance with the Budget) for any Testing Period is less than eighty-five percent (85%) of the

forecast Net Cash Flow from Operations set forth in the Budget for such Testing Period. "**Testing Period**" means the cumulative period beginning on the Petition Date and ending on the last day of the week immediately prior to the applicable Variance Report Date. Any budgeted expenditures not paid in a particular budget period may be carried forward into a subsequent budget period, and any budgeted Insurance premiums (as such term is used in and as calculated in accordance with the Budget) expenditures paid in a budget period earlier than the budget period for which they were budgeted shall be deemed paid in the budget period for which they were budgeted.

18. *Carve-Out.* The Prepetition Liens, the Prepetition Obligations, the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject only to the right of payment of the following expenses (collectively, the "**Carve-Out**"):

a. upon entry of this Interim Order, statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), and all reasonable fees and expenses, in an aggregate amount not to exceed $25,000, incurred by a trustee under section 726(b) of the Bankruptcy Code;

b. the allowed fees and costs of the Debtors' claims and noticing agent, subject in all respects to the terms of the Interim Order, the Budget, and allowance of fees by the Bankruptcy Court;

c. all allowed unpaid fees and expenses incurred (the "**Allowed Professional Fees**") by persons or firms retained by the Debtors or any Committee on or after the Petition Date pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code (each a "**Professional**" and collectively, the "**Professionals**") in an amount, to the extent incurred by the applicable Professional, for the period prior to the occurrence of the delivery of a Carve-Out Trigger Notice

(as defined below), not to exceed the lesser of (A) the aggregate weekly amounts budgeted for each such Professional, on a line item basis (with the aggregate amounts for the Debtors' Professionals being considered one (1) line item), for such week in accordance with the Budget (to the extent a Carve-Out Trigger Notice is delivered mid-week, pro-rated for such week) and (B) the actual amount of such Allowed Professional Fees for each Professional incurred on or after the Petition Date up through and including the date a Carve-Out Trigger Notice is delivered, subject in all respects to the terms of the Interim Order and the Budget; provided that, notwithstanding the foregoing, the Allowed Professional Fees under this clause (c) shall include, without regard to the Budget, any transaction or success fee payable to Brookwood Associates, L.L.C. in accordance with its engagement letter as approved by the Court; and

d. Allowed Professional Fees of Professionals in an aggregate amount not to exceed $200,000 incurred after delivery by the DIP Lender or the Prepetition Agent of written notice (which for the avoidance of doubt may be by electronic mail) of the occurrence of a Termination Event or an Event of Default to the Debtors, the Debtors' counsel, the U.S. Trustee, and counsel for any Committee (the "**Carve-Out Trigger Notice**"), to the extent allowed by this Court (the amounts set forth in this clause (d) being the "**Post Carve-Out Trigger Notice Cap**," and the amounts set forth in clauses (c) and (d) being the "**Carve-Out Cap**"). For the avoidance of doubt, prior to the Termination Date, to the extent the budgeted amounts for a Professional for any Budget period exceed the actual fees and expenses incurred by such Professional for that period, the excess may be carried forward to later Budget periods or backward to prior Budget periods to be applied to any fees or expenses that exceeded the budgeted amounts for such prior or later periods. The Carve-Out amounts and Carve-Out Reserve Account (as defined below) shall be paid (or funded) first with any cash proceeds available as of such payment or funding

date of any unencumbered assets of the Debtors as of the Petition Date before payments of such fees or expenses are funded from proceeds of the DIP Advances or from Cash Collateral; provided, for the avoidance of doubt, that in no event will unencumbered assets be required to be sold in connection with any such funding or payment.

19. *Excluded Professional Fees.* Notwithstanding anything contained herein to the contrary, no Cash Collateral, DIP Collateral, Adequate Protection Collateral, or proceeds of the DIP Facility shall be used by any entity, including the Debtors or any Committee, to (a) prosecute any claim, cause of action, objection, or other challenge against the DIP Lender or the Prepetition Secured Creditors, (b) object to or contest in any manner, or raise any defenses to, the validity, priority, extent, perfection, or enforceability of the DIP Obligations, DIP Liens, Prepetition Obligations, or Prepetition Liens, including, in each case without limitation, for lender liability or pursuant to Sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, (c) use or seek to use Cash Collateral or incur indebtedness in violation of the terms hereof, or sell any Prepetition Collateral without the consent of the Prepetition Agent, or (d) prevent, hinder, or delay the Prepetition Agent's or DIP Lender's exercise of its rights and remedies under the Prepetition Loan Documents or the DIP Facility Loan Documents (as applicable) and this Interim Order, in each case subject to the terms therein; provided, however, that nothing herein shall impair or restrict any challenge rights expressly preserved under this Interim Order for parties in interest other than the Debtors; provided, further, that the costs and expenses incurred by any Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 15 of this Interim Order shall not exceed $50,000.

20. *Payment of Carve-Out.*

a. The Debtors shall maintain a segregated account for the payment of Allowed Professional Fees (the "**Carve-Out Reserve Account**"), which account shall be funded by the Debtors from Cash Collateral or DIP Advances on a weekly basis, in advance, in the amount set forth in the Budget for Allowed Professional Fees (without any permitted variance) for such week, until the occurrence of a Carve-Out Trigger Notice. After the Carve-Out Trigger Notice, the Carve-Out Reserve Account shall continue to be funded notwithstanding the occurrence of the Termination Date, up to, in the aggregate, the Carve-Out Cap. From funds in the Carve-Out Reserve Account, the Debtors shall pay Allowed Professional Fees in compliance with any interim compensation procedures and in the manner set forth in this Interim Order. The Carve-Out Reserve Account and all funds therein shall be held in trust exclusively for the benefit of the Professionals and other beneficiaries of the Carve-Out, shall not be subject to the DIP Liens, the Adequate Protection Liens, or any other lien or claim granted under this Interim Order, and shall not constitute DIP Collateral, Prepetition Collateral, or Cash Collateral; provided that the Debtors' reversionary interest in any funds remaining after payment in full of all amounts covered by the Carve-Out shall be subject to such liens and claims.

b. The Carve-Out Cap shall be reduced on a dollar-for-dollar basis by the amounts actually funded into the Carve-Out Reserve Account and/or the amounts actually paid on account of the Carve-Out. To the extent that, as of the Carve-Out Trigger Notice, the Carve-Out Reserve Account has not been funded as required by Paragraph 20(a), the Debtors shall, within two (2) business days thereafter, fund the difference to the Carve-Out Reserve Account from Cash Collateral, notwithstanding the occurrence of the Termination Date, and such funding shall not reduce the Post Carve-Out Trigger Notice Cap. Payment of any amounts on account of the Carve-Out shall not be deemed to reduce the DIP Obligations or the Prepetition Obligations,

and shall not be deemed to subordinate the DIP Lender's or the Prepetition Secured Creditors' respective liens and security interests in the DIP Collateral, the DIP Superpriority Claims, the Prepetition Collateral, the Adequate Protection Collateral, or the Adequate Protection Superpriority Claims to any junior pre-or post-petition lien, interest, or claim in favor of any other party. The DIP Lender and the Prepetition Secured Creditors shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with these Chapter 11 Cases or Successor Cases under any chapter of the Bankruptcy Code, and nothing in this Paragraph 20 shall be construed to obligate the DIP Lender or the Prepetition Secured Creditors, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

c. Each Professional shall submit to the Debtors and Prepetition Agent (and the DIP Lender, if requested by DIP Lender), copies of their respective invoices for professional fees and expenses on a monthly basis, in arrears, not later than the 15th day of each month. Nothing herein shall be construed as consent by the DIP Lender, Prepetition Agent, or any other Prepetition Secured Creditor to the allowance of any fees or expenses of the Professionals or shall affect the right of the DIP Lender, Prepetition Agent, or any other Prepetition Secured Creditor to object to the allowance and payment of such fees, costs, or expenses, or the right of the DIP Lender, Prepetition Agent, or any other Prepetition Secured Creditor to the return of any portion of the Carve-Out that is funded with respect to fees and expenses for a Professional that are approved on an interim basis that are later denied on a final basis.

21. *Lien Perfection.* This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without

the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or the Adequate Protection Liens or to entitle the DIP Liens or the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender and/or the Prepetition Secured Creditors may, in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens, and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of these Chapter 11 Cases. The DIP Lender and/or Prepetition Secured Creditors may, in their sole discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

22. *Termination.* The Debtors' authority to use Cash Collateral and the DIP Lender's obligation to advance funds under the DIP Facility pursuant to this Interim Order shall automatically terminate without any further order of this Court or further action by the DIP Lender or the Prepetition Secured Creditors five (5) business days following the delivery of a written notice (a "**Default Notice**") by either the DIP Lender or the Prepetition Agent to counsel for the Prepetition Agent or the DIP Lender (as applicable), counsel for the Debtors, counsel for the Committee (if any), and the U.S. Trustee (such five (5) business-day period, the "**Default Notice Period**") of the occurrence of any of the events set forth in clauses (a) through, and

including, (g) below (each, a "**Termination Event**" and the date upon which such Default Notice Period expires without such Termination Event having been waived or cured or the Court having ordered otherwise, the "**Termination Date**"):

a. either (i) any of the Chapter 11 Cases are dismissed, or (ii) the Court enters an order converting any of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code;

b. either (i) the Court enters an order appointing a trustee or an examiner with enlarged powers (beyond those set forth in sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtors; or (ii) any of the Debtors file a motion, application, or other pleading consenting to or acquiescing in any such appointment;

c. the Court suspends any of the Chapter 11 Cases under section 305 of the Bankruptcy Code;

d. the filing, commencement, or assertion by any of the Debtors of a Challenge; provided that none of the following shall constitute a Termination Event under this clause (d): (x) any action to enforce the terms of this Interim Order, the Final Order, or the Stalking Horse Agreement (including any terms in the Stalking Horse Agreement with respect to the Franchise Agreements (as defined in the Stalking Horse Agreement)), or (y) the Debtors' compliance with any discovery request, subpoena, or order of the Court, or the provision of information to the Committee;

e. the consummation of any transaction resulting in the sale or disposition of all or substantially all of the assets of the Debtors and their estates;

f. any of the Debtors filing a motion seeking any financing under section 364(d) of the Bankruptcy Code (including additional financing pursuant to an amendment to the

DIP Facility Loan Documents) secured by the Prepetition Collateral, the DIP Collateral, and/or the Adequate Protection Collateral that does not require the payment in full of all Prepetition Obligations and DIP Obligations;

g. the occurrence of any Event of Default (defined below) under the terms of this Interim Order after the Debtors' receipt of written notice from the DIP Lender or Prepetition Secured Creditors through the parties' respective professionals of record.

23. *Default.* The occurrence of any one (1) or more of the following events shall constitute an "**Event of Default**" under this Interim Order (unless waived, amended, or extended, as applicable, in writing (including by email from counsel) by the DIP Lender and the Prepetition Agent); provided that any Milestones (as defined below) requiring action by the Court shall be automatically extended, to the extent the Court's calendar does not permit such action within the applicable period, to the date that is three (3) business days after the first date on which the Court is available to take such action:

a. the Debtors fail to perform any of their material obligations in accordance with the terms hereof, including (i) the use of Cash Collateral other than as permitted herein and in the Budget (subject to variances other than a Prohibited Variance); and (ii) the failure to provide any report, document, or information to the DIP Lender or the Prepetition Secured Creditors as required herein;

b. any representation or warranty made in any certificate, report, expense statement, other financial statement, or other document delivered to the DIP Lender or the Prepetition Secured Creditors after the Petition Date proves to have been false in any material respect as of the time when made or given;

c. any other person or entity obtains entry of an order permitting the use of Cash Collateral without the written consent of the DIP Lender and the Prepetition Agent, other than an order entered pursuant to Paragraph 25 hereof;

d. a Variance Report provided to DIP Lender or the Prepetition Secured Creditors shows a Prohibited Variance;

e. the Debtors' failure to satisfy any of the milestones set forth on Exhibit 2 hereto (collectively, the "**Milestones**");

f. the Stalking Horse Agreement is terminated for any reason;

g. the Stalking Horse Agreement is amended or modified in a manner that reduces the consideration payable thereunder or is otherwise adverse to the Debtors or the Prepetition Secured Creditors in any material respect without the prior written consent of the Prepetition Agent;

h. the DIP Facility Loan Documents (if any) are amended or modified without the prior written consent of the Prepetition Agent or the terms of the DIP Facility set forth herein are amended or modified, in each case in a manner adverse to the Debtors or the Prepetition Secured Creditors in any material respect, without the prior written consent of the Prepetition Agent;

i. this Interim Order ceases to be in full force and effect for any reason other than as a result of entry of a Final Order, in form and substance reasonably satisfactory to the Prepetition Agent and DIP Lender, superseding this Interim Order;

j. the Court enters a final order reversing, amending, supplementing, staying, vacating, or otherwise modifying this Interim Order without the consent of the DIP Lender and the Prepetition Agent;

k. the Court enters an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code with respect to any assets of the Debtors having an aggregate value in excess of $250,000 (other than relief to permit a party to recover solely from available insurance proceeds or with respect to any lease or property that the Debtors have rejected or abandoned) without the written consent of the DIP Lender and the Prepetition Agent;

l. [reserved];

m. the Debtors (i) create any post-petition lien or security interests or (ii) incur or suffer to exist any material post-petition liens or security interests, in each case other than in the ordinary course of business or in accordance with the terms of this Interim Order;

n. this Interim Order or any other pleading filed in the Chapter 11 Cases by any of the Debtors provide for the nonconsensual priming of the Prepetition Liens, the DIP Liens, or the Adequate Protection Liens without the written consent of the DIP Lender and the Prepetition Agent;

o. the Debtors shall create, incur, or suffer to exist any other claim which is *pari passu* with or senior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims, other than the Carve-Out;

p. [reserved]; and

q. the cessation of all or any material part of the Debtors' business operations, other than (i) the closure of any Suspended Store (as defined in the Stalking Horse Agreement) or any Store (as defined in the Stalking Horse Agreement) closed in accordance with the Stalking Horse Agreement, and (ii) the cessation of operations upon, or as a result of, the consummation of a sale pursuant to the Sale Order.

24. *Remedies Upon a Termination Event.*

a. Prior to exercising the remedies set forth in this paragraph below, the DIP Lender or the Prepetition Agent (as applicable) shall be required to file a motion with the Court seeking emergency relief (the "**Stay Relief Motion**") on no less than five (5) business days' written notice to (i) the Court, (ii) counsel for the Debtors, (iii) counsel for the Committee (if any), (iv) the U.S. Trustee, and (v) counsel for the DIP Lender or the Prepetition Agent, as applicable, for a further order of the Court modifying the automatic stay, dismissing, or converting any of the Chapter 11 Cases.

b. Subject to entry of a Final Order, in any hearing on the Stay Relief Motion, the only issue that may be raised by the Debtors in opposition thereto shall be whether, in fact, a Termination Event shall have occurred (and has not been cured or waived) and whether there has been any diminution in value, and the Debtors hereby waive any right to seek relief (other than the relief described in Paragraph 25 hereof), including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender or the Prepetition Secured Creditors set forth in this Interim Order, the DIP Facility Loan Documents, or the Prepetition Loan Documents. The delay or failure of the DIP Lender and the Prepetition Secured Creditors, as applicable, to exercise rights and remedies under the DIP Facility Loan Documents or the Prepetition Loan Documents or this Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise. Notwithstanding the occurrence of the Termination Event or anything herein, (i) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations, Adequate Protection Obligations, and Prepetition Obligations shall have been indefeasibly paid in full in

cash; (ii) all of the rights, remedies, benefits, and protections provided to the DIP Lender and the Prepetition Secured Creditors under this Interim Order shall survive the applicable Termination Event; and (iii) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph and otherwise in this Interim Order.

25. *Post-Termination Rights.* Upon the occurrence of a Termination Event, the DIP Lender shall have no obligation to provide any further DIP Advances and the Debtors' authority to use Cash Collateral hereunder shall terminate; provided, however, that the Debtors or a trustee appointed for the Debtors' estates may use Cash Collateral or request DIP Advances to pay payroll and payroll-related expenses such as taxes accrued through and including the Termination Date, and critical expenses certified by the Chief Financial Officer (or some other appropriate officer) of the Debtors as being necessary to avoid immediate and irreparable harm to the Debtors' estates, up to the amounts set forth in the Budget (solely to the extent such expenses are accrued through the Termination Date), and to fund the Carve-Out Reserve Account in accordance with Paragraph 20 hereof. During the Default Notice Period, the Debtors may seek, and the Prepetition Secured Creditors may oppose, the use of Cash Collateral on any terms that the Debtors wish to propose, and any such request shall be heard on shortened notice, provided, however, that the Debtors and the Prepetition Secured Creditors may stipulate, without the need for a further order of this Court, for this Interim Order to remain in effect temporarily through the date of a hearing on such relief. Notwithstanding anything to the contrary set forth in this Interim Order, any DIP Advances made after the Termination Date (other than DIP Advances made to fund the amounts described in the first sentence of this Paragraph 25) shall not be subject to DIP Liens that prime the Prepetition Liens and shall not constitute DIP

Obligations that have priority over any Prepetition Obligations, unless expressly agreed by the Prepetition Agent.

26. *No Marshalling.* Subject to entry of the Final Order, the DIP Lender and the Prepetition Secured Creditors shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the DIP Collateral, the Prepetition Collateral, and/or the Adequate Protection Collateral.

27. *Binding Effect.* Subject to Paragraph 15 hereof, the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Lender, the Prepetition Secured Creditors, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the Debtors' estates, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the Debtors) and shall inure to the benefit of the DIP Lender, the Prepetition Secured Creditors, and the Debtors and their respective successors or assigns.

28. *Modification of Automatic Stay.* The Debtors are authorized and directed to perform all acts and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors, the DIP Lender, and each of the Prepetition Secured Creditors to accomplish the transactions contemplated by this Interim Order.

29. *Headings.* The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

30. *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Interim Order. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

31. *No Third-Party Rights.* Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, third party, or incidental beneficiary.

32. *Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.* The DIP Lender has acted in good faith in connection with this Interim Order and is entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code to the maximum extent set forth therein. Any such modification, amendment, or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances previously made or made hereunder, or lien, claim, or priority granted, perfected, authorized, or created hereby, unless modification, amendment, or vacatur pertains to an authorization to obtain credit or incur debt, or to the granting of a priority lien, that is stayed pending appeal. Any liens or claims granted to the DIP Lender hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Interim Order shall

be governed in all respects by the original provisions of this Interim Order, including to all rights, remedies, privileges, and benefits granted herein.

33. *Indemnification.* [Reserved].

34. *Proofs of Claim.* Neither the DIP Lender nor any of the Prepetition Secured Creditors will be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases for any claim allowed herein. Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Case shall not apply to any claim of the DIP Lender or the Prepetition Secured Creditors arising under, or in connection with, the DIP Facility Loan Documents, the Prepetition Loan Documents, the DIP Obligations, or the Prepetition Obligations, with the stipulations contained in Paragraph C herein being deemed to be a filed proof of claim on behalf of such parties.

35. *Survival of Interim Order.* The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan or plans of reorganization or liquidation in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in the Court.

36. *Controlling Effect of Interim Order.* To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

37. *Order Immediately Effective.* Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are effective immediately and enforceable upon its entry.

38. *Authorization to Effectuate Relief.* The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

39. *Jurisdiction.* This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

40. *Final Hearing.* The final hearing on the Motion shall be held on November 23, 2026, at 2:00 p.m. (prevailing Eastern Time) before the Honorable Judge Goldblatt, United States Bankruptcy Judge, at the Court, located at 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time), on November 16, 2026. Responses or objections to the Motion and entry of a final order with respect to the Motion must: (a) be made in writing, (b) state with particularity the grounds for the response or objection; (c) conform to the Bankruptcy Rules and Local Rules; and (d) be served upon (i) proposed counsel for the Debtors, (a) KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin and Nir Maoz (mtuchin@ktbslaw.com and nmaoz@ktbslaw.com), and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier: 19801), Attn: Bradford J. Sandler and Peter J. Keane (bsandler@pszjlaw.com and pkeane@pszjlaw.com), (ii) counsel to the DIP Lender, Baker & Hostetler LLP, Key Tower, 127 Public Square, Suite 2000, Cleveland, Ohio 44114, Attn: Michael A. VanNiel (mvanniel@bakerlaw.com), Alexis C. Beachdell (abeachdell@bakerlaw.com), and Scott E. Prince (sprince@bakerlaw.com), (iii) counsel to the

Prepetition Agent, (a) Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603, Attn: Danielle Juhle (Danielle.juhle@goldbergkohn.com) and Drake Saffell (drake.saffell@goldbergkohn.com), and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: John H. Knight (Knight@RLF.com); (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov); and (v) any statutory committee appointed in these cases.

**Dated: November 4th, 2026**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**