**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749 (CTG)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 11** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS, (C) CONTINUE INTERCOMPANY TRANSACTIONS, AND (D) CONTINUE THE CORPORATE CARD PROGRAM, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, (III) EXTENDING THE TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Cerca Trova Restaurant Group Holdings, Inc. and its affiliated debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**") for entry of an interim order, pursuant to sections 105(a), 345, 363(b), 363(c), and 503(b)(1) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 2015-1, (i) authorizing the Debtors to (a) continue to operate the Cash Management System, (b) maintain the Bank Accounts and Business Forms, (c) continue Intercompany Transactions, and (d) continue the Corporate Card Program, (ii) granting administrative expense status to postpetition Intercompany Claims, (iii) extending the time to

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

comply with section 345(b) of the Bankruptcy Code, and (iv) granting related relief; and upon consideration of the First Day Declaration; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these Cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates and their creditors; and after due deliberation, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on an interim basis, as set forth herein.

2. A final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") on the Motion is scheduled for November 23, 2026 at 2:00 p.m. (prevailing Eastern Time) before the Court. Any objections or responses to entry of the Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on November 16, 2026 and shall be served upon (i) proposed counsel to the Debtors, (a) KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin (mtuchin@ktbslaw.com) and Nir Maoz (nmaoz@ktbslaw.com), and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier: 19801), Attn: Bradford J. Sandler (bsandler@pszjlaw.com) and Peter J. Keane (pkeane@pszjlaw.com); (ii) counsel to the Prepetition Agent, (a) Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300,

Chicago, Illinois 60603, Attn: Danielle Juhle (danielle.juhle@goldbergkohn.com) and Drake Saffell (drake.saffell@goldbergkohn.com), and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: John H. Knight (knight@rlf.com); (iii) counsel to the Franchisor and DIP Lender, BakerHostetler LLP, 127 Public Square, Suite 2000, Cleveland, Ohio 44114, Attn: Michael A. VanNiel (mvanniel@bakerlaw.com) and Alexis Beachdell (abeachdell@bakerlaw.com); (iv) counsel to any statutory committee appointed in these Cases; and (v) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov) (collectively, the "**Notice Parties**"). If no objections to entry of the Final Order are timely received, the Court may enter the Final Order without further notice or hearing.

3. The Debtors are authorized, but not directed, to (a) continue operating the Cash Management System; (b) honor and pay their prepetition and postpetition obligations related thereto, including Bank Fees; (c) continue to perform Intercompany Transactions; and (d) maintain their existing Business Forms, in each case subject to the limitations set forth in this Order.

4. The Debtors are further authorized to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those listed on Exhibit C to the Motion; (b) use, in their present form, all correspondence and Business Forms (including letterhead and invoices), as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; *provided*, *however*, that once the Debtors' existing check stock has been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession"

and the lead case number of these Cases on all checks; *provided*, *further*, that with respect to checks that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend and the lead case number on such items as soon as practicable; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; and (e) pay Bank Fees incurred in connection with the Bank Accounts, whether arising before or after the Petition Date, and otherwise perform their obligations under the documents governing the Bank Accounts.

5. The Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided that the Debtors shall only instruct or request a Bank to pay or honor any check, draft, or other payment item issued on a Bank Account before the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

6. Each of the Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for: (i) all checks drawn on the Debtors' accounts that were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof before the Petition Date; (ii) all checks or other items deposited in one of the Debtors' accounts with such Bank before the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same

extent the Debtors were responsible for such items before the Petition Date; and (iii) all undisputed prepetition amounts owed to such Bank as service charges for the maintenance of the Cash Management System; provided that any checks, drafts, wires, or ACH transfers drawn or issued by the Debtors before the Petition Date shall be timely honored by the Banks to the extent necessary to comply with any order of this Court authorizing payment of certain prepetition claims, subject to the availability of funds, unless the Debtors instruct the Banks to stop payment on or otherwise dishonor such item.

7. All existing deposit agreements and arrangements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including the termination and fee provisions, shall remain in full force and effect, subject to the terms of this Order and any order authorizing the Debtors' use of cash collateral or postpetition financing. The Banks are authorized, without further order of the Court, to implement such changes to the Cash Management System and procedures in the ordinary course of business as the Debtors may direct and as are consistent with the existing deposit and disbursement agreements and arrangements.

8. The Banks shall not honor or pay any bank payments drawn on the Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing the Bank Accounts.

9. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Cases with respect to prepetition amounts authorized to be paid by this Order.

10. Nothing in this Order shall be construed to accelerate any payment that is not otherwise due and payable.

11. In the course of providing cash management services to the Debtors, the Banks are authorized, without further order of the Court, to deduct the customary fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising before or after the Petition Date, from the appropriate accounts of the Debtors, and to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred before or after the Petition Date.

12. The Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors before the Petition Date should be honored pursuant to this or any other order of the Court, and the Banks shall not have any liability to any party for relying on such representations. If a Bank honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item-handling procedures, such Bank shall not be deemed to be in violation of this Order or liable to the Debtors or their estates on account thereof.

13. Subject to section 345 of the Bankruptcy Code and the terms of this Order governing the opening and closing of bank accounts, the Banks are authorized to (a) honor the Debtors' directions with respect to the opening and closing of any Bank Account, and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided

that the Banks shall not have any liability to any party for relying on such directions in good faith.

14. The Debtors are authorized to open new bank accounts or close existing Bank Accounts; provided that (a) the Debtors shall give the Prepetition Agent and DIP Lender at least five (5) business days' prior written notice (which may be by electronic mail) before opening or closing any account; (b) the Debtors shall disclose any opening or closing on their monthly operating reports and give notice of it to the U.S. Trustee and counsel to any statutory committee within five (5) days; (c) the Debtors shall open new accounts only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee or that are willing to execute one immediately; and (d) any new account shall be subject to this Order and to any order authorizing the Debtors' use of cash collateral or postpetition financing, and any such account shall be deemed a "Bank Account," and the institution at which it is opened a "Bank," for all purposes of this Order. Clause (a) of this paragraph shall not apply to any account that any order authorizing the Debtors to obtain postpetition financing or use cash collateral requires the Debtors to maintain.

15. For any Bank that is not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use good-faith efforts to cause such Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of entry of this Order; the U.S. Trustee's rights to seek further relief are reserved.

16. Nothing in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date, or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest, lien, or setoff right that existed as of the Petition Date.

17. As soon as practicable after entry of this Order, the Debtors shall (a) contact the Banks, (b) provide the Banks with the Debtors' employer identification numbers, (c) identify the Bank Accounts at the Banks as being held by a debtor in possession in a bankruptcy case, and (d) serve a copy of this Order on the Banks.

18. The Debtors are authorized, but not directed, to continue the Corporate Card Program in the ordinary course and to pay prepetition amounts owed under the Corporate Card Program in an aggregate amount not to exceed $50,000 pending entry of the Final Order.

19. The Debtors are authorized, but not directed, to continue Intercompany Transactions in the ordinary course of business. The Debtors shall maintain records sufficient to identify, no less frequently than monthly, the postpetition Intercompany Claims among the Debtors, which records may be based on a reasonable allocation methodology, and shall distinguish postpetition Intercompany Claims from prepetition Intercompany Claims. The Debtors shall make such records available to the U.S. Trustee and counsel to any statutory committee upon reasonable request. All postpetition Intercompany Claims shall be accorded administrative expense priority under section 503(b)(1) of the Bankruptcy Code; provided that such administrative expense priority shall be subordinate and junior in all respects to the claims and liens granted under any order authorizing the Debtors' use of cash collateral or postpetition financing. The Debtors shall not make any payment to, or on behalf of, any non-Debtor affiliate or insider absent further order of the Court.

20. Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate and pay quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

21. The Debtors' time to comply with section 345(b) of the Bankruptcy Code is extended for thirty (30) days from entry of this Order, to the extent such requirements are not already satisfied, without prejudice to the Debtors' right to seek a further extension or a final waiver.

22. Nothing in this Order or the Motion is intended or shall be deemed to constitute (i) an assumption of any agreement pursuant to section 365 of the Bankruptcy Code; (ii) an admission as to the validity, priority, or amount of any claim against the Debtors; (iii) a waiver of the Debtors' or any other party in interest's rights to dispute any claim; or (iv) a promise or requirement to pay any claim.

23. The requirements of Bankruptcy Rule 6003 have been satisfied.

24. Notwithstanding anything to the contrary herein, any payment made or action taken by the Debtors pursuant to this Order shall be subject to and in compliance with any interim or final order authorizing the Debtors' use of cash collateral or postpetition financing (a "**Cash Collateral Order**") and any approved budget thereunder. To the extent of any conflict between this Order and a Cash Collateral Order, the Cash Collateral Order shall control.

25. Notice of the Motion as provided therein is good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

26. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (i) this Order shall be effective immediately and enforceable upon its entry; and (ii) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order.

27. The Debtors are authorized to take any and all actions necessary or appropriate to implement this Order.

28. The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Order.

**Dated: November 4th, 2026**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**