**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749 (CTG)<br><br>(Jointly Administered) |

**Objection Deadline: November 23, 2026 at 4:00 p.m. (ET)**
**Hearing Date: November 30, 2026 at 1:00 p.m. (ET)**

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO RETAIN AND COMPENSATE PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF**

Cerca Trova Restaurant Group Holdings, Inc. and its affiliated debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**") respectfully state as follows in support of this motion (the "**Motion**").

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"): (a) authorizing, but not directing, the Debtors to retain and compensate the OCPs (as defined herein) on a postpetition basis pursuant to the procedures set forth herein (the "**OCP Procedures**"), without the need for each OCP to file a formal application for retention and compensation; and (b) granting related relief.

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

**Jurisdiction and Venue**

2. The Court has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to Rule 9013-1(f) of the Local Rules of of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the Court's entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. The statutory bases for the relief requested herein are sections 105(a), 327, 328, 330, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 2002-1 and 9013-1.

**Background**

5. On November 2, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") in these Cases. On November 4, 2026, the Court entered an order authorizing the joint administration of the Cases for procedural purposes only [Docket No. 50].

6. The Debtors operate sixty-one (61) Outback Steakhouse® restaurants in California, Arizona, Colorado, Nevada, and New Mexico as franchisees of Outback Steakhouse of Florida, LLC (the "**Franchisor**" and, in its capacity as the Debtors' postpetition lender, the "**DIP Lender**"), an affiliate of Bloomin' Brands, Inc. Goldman Sachs Specialty Lending Group, L.P. is the administrative and collateral agent (the "**Prepetition Agent**") under the Debtors' prepetition secured credit facility. The Debtors commenced these Cases to pursue a sale of substantially all of their assets under section 363 of the Bankruptcy Code.

1. Additional information about the Debtors' business, capital structure, and the circumstances leading to these Cases is set forth in the *Declaration of David Goronkin in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 4] (the "**First Day Declaration**"), incorporated herein by reference.[2]

**The Ordinary Course Professionals**

7. The Debtors employ various attorneys, accountants, consultants, and other professionals to represent them in matters arising in the ordinary course of their business, and largely unrelated to these Cases (the "**OCPS**"). The OCPs include, among others, (i) litigation and employment counsel, including counsel defending the Debtors in pending wage-and-hour litigation, (ii) real estate, leasing, and corporate counsel, (iii) liquor license counsel, and (iv) tax advisors. A list of the OCPs the Debtors expect to utilize during the pendency of these Cases, together with the proposed OCP Cap (as defined below) for each, is attached as Exhibit 1 to the Proposed Order. The Debtors anticipate utilizing the OCPs to perform ongoing services related to the Debtors' operations during the pendency of these Cases, including, in the case of liquor license counsel, maintaining the Debtors' liquor licenses and preparing any filings with state liquor

[2] Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

regulators that may be required in connection with a sale of the Debtors' assets. The OCPs will not be integrally involved in the administration of these Cases and will not perform services in connection with the administration of these Cases absent separate retention under section 327 or 328 of the Bankruptcy Code.[3]

8. The continued employment and compensation of the OCPs is in the best interests of the Debtors' estates, their creditors, and other parties in interest. The OCPs have significant knowledge, expertise, and familiarity with the Debtors and their operations. Although the Debtors anticipate that the OCPs will continue to represent the Debtors during these Cases, many will not do so if the Debtors cannot pay them on a regular basis. The Debtors undoubtedly would incur additional and unnecessary expenses in educating and retaining replacement professionals without the knowledge, expertise, and familiarity the OCPs provide. Accordingly, the Debtors' estates and their creditors are best served by avoiding any disruption in the professional services that are required to preserve and enhance the operational value of the Debtors' estates. Moreover, in light of the costs associated with the preparation of retention applications for the OCPs, it would be impractical, inefficient, and costly for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP.

9. The Debtors are not requesting authority to pay prepetition amounts owed to OCPs. Although some of the OCPs may hold unsecured claims against the Debtors relating to services rendered to the Debtors prepetition, the Debtors do not believe that any of the OCPs have an interest materially adverse to the Debtors, their creditors, or other parties in interest.

---

[3] The Debtors reserve the right to retain additional OCPs from time to time during these chapter 11 cases, as the need arises, by filing a list or lists of such additional professionals and complying with the notice requirements set forth in the OCP Procedures.

## The OCP Procedures

10. The Debtors request that the Court approve the following OCP Procedures for retention and payment of the OCPs:

a. Within 30 days after the later of (i) the date of entry of the Order or (ii) the date on which an OCP commences work for the Debtors, such OCP shall file, or cause to be filed, a declaration of disinterestedness, substantially in the form attached as Schedule 2 to the Order (each, a "Declaration of Disinterestedness"), with the Court and served upon: (i) proposed counsel to the Debtors, (a) KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin (mtuchin@ktbslaw.com) and Nir Maoz (nmaoz@ktbslaw.com), and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier: 19801), Attn: Bradford J. Sandler (bsandler@pszjlaw.com) and Peter J. Keane (pkeane@pszjlaw.com); (ii) counsel to the Prepetition Agent, (a) Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603, Attn: Danielle Juhle (danielle.juhle@goldbergkohn.com) and Drake Saffell (drake.saffell@goldbergkohn.com), and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: John H. Knight (knight@rlf.com); (iii) counsel to the Franchisor and DIP Lender, BakerHostetler LLP, 127 Public Square, Suite 2000, Cleveland, Ohio 44114, Attn: Michael A. VanNiel (mvanniel@bakerlaw.com) and Alexis Beachdell (abeachdell@bakerlaw.com); (iv) counsel to any statutory committee appointed in these Cases (the "**Committee**"); (v) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov) and (vi) parties entitled to notice in the Cases pursuant to Local Rule 2002-1(b) (collectively, the "**Notice Parties**").

b. The Notice Parties shall have 14 days after the date of filing of each OCP's Declaration of Disinterestedness (the "**Objection Deadline**") to object to the retention of such OCP. The objecting party shall file any such objection and serve such objection upon the Notice Parties and the respective OCP on or before the Objection Deadline. If any such objection cannot be resolved within 14 days of its receipt, the matter shall be scheduled for hearing before the Court at the next regularly scheduled omnibus hearing date that is no less than 14 days from that date or on a date otherwise agreeable to the parties. The Debtors shall not be authorized to retain and compensate such OCP until all outstanding objections have been withdrawn, resolved, or overruled by order of the Court.

c. If no objection is received from any of the Notice Parties by the Objection Deadline with respect to any particular OCP, the Debtors shall be authorized, but not directed, to (i) retain such OCP as of the date such OCP commenced

providing services to the Debtors, and (ii) compensate such OCP as set forth below.

d. The Debtors shall be authorized, but not directed, to pay, without formal application to the Court by any OCP, 100% of fees and disbursements to each of the OCPs retained by the Debtors pursuant to the OCP Procedures upon submission to the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date; *provided* that fees paid to each OCP set forth on Schedule 1 attached to the Order, excluding costs and disbursements, may not exceed the monthly amount set forth in Schedule 1 (the "**OCP Cap**"). The OCP Cap may be increased by mutual written agreement between the Debtors, the U.S. Trustee, the DIP Lender, the Committee, and any other statutory committee appointed in these Cases, as applicable; *provided* that the Debtors shall file a notice with the Court and submit notice to the Notice Parties of any such agreed increase.

e. To the extent that fees payable to any OCP exceed the OCP Cap, the OCP shall file a fee application (a "**Fee Application**") with the Court for the amount in excess of the OCP Cap pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the fee guidelines promulgated by the U.S. Trustee, and any applicable orders of the Court, unless the U.S. Trustee, Required DIP Lenders and Committee agree otherwise.

f. Beginning on the quarter ending January 31, 2027, and for each quarter thereafter during which these Cases are pending, the Debtors shall, within 30 days thereof, file with the Court and serve on the Notice Parties a statement with respect to each OCP paid during the immediately preceding quarterly period (the "**Quarterly Statement**"). Each Quarterly Statement shall include: (i) the name of the OCP; (ii) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by that OCP during the reported quarter; and (iii) a general description of the services rendered by that OCP.

g. The Debtors reserve the right to retain additional OCPs from time to time during these Cases by including such OCPs on an amended version of the OCP List that is filed with the Court and served on the Notice Parties and having such OCPs comply with the OCP Procedures.

## Basis for Relief

11. Section 327 of the Bankruptcy Code requires Court approval for the employment of "professional persons" retained to represent or perform services for the estate. In determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code and must be retained by express Court approval, courts generally consider whether such entity is

involved in the actual reorganization effort, rather than a debtor's ongoing business operations. *See, e.g.*, *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) ("[T]he phrase 'professional persons,' as used in § 327(a), is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate."). In making this determination, courts often consider the following factors in determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code:

a. whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;

b. whether the entity is involved in negotiating the terms of a plan of reorganization;

c. whether the entity's employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

d. whether the entity is given discretion or autonomy to exercise its own professional judgment in some part of the administration of the debtor's estate;

e. the extent of the entity's involvement in the administration of the debtor's estate; and

f. whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

*See, e.g.*, *In re First Merchs. Acceptance Corp.*, No. 97-1500, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997) (listing factors); *see also In re Am. Tissue, Inc.*, 331 B.R. 169, 174 (Bankr. D. Del. 2005) (applying the *First Merchants* factors and holding that a litigation consulting firm was not a "professional" for purposes of section 327 of the Bankruptcy Code, as the litigation consulting firm "did not play a central or significant role in the overall administration of the [d]ebtors' estate"); *In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (finding that the fees

of a management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the] bankruptcy case" did not require approval under section 327 of the Bankruptcy Code); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (noting that only those professionals involved in the "administration of the debtor's estate," rather than the debtor's ongoing business, require approval under section 327 of the Bankruptcy Code). The foregoing factors must be considered as a whole when determining if an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code. None of the factors alone are dispositive. *See First Merchs.*, 1997 WL 873551, at *3 ("In applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in total.").

12. Upon consideration of all the factors, and because the OCPs will not be involved in the administration of these Cases, the Debtors do not believe that the OCPs are "professionals" requiring formal retention proceedings under section 327 of the Bankruptcy Code. Instead, the OCPs will provide services in connection with the ongoing operation of the Debtors' business, which services are ordinarily provided by nonbankruptcy professionals. Nevertheless, to provide clarity and an opportunity for oversight, the Debtors seek the relief requested herein to establish clear mechanisms for retention and compensation of the OCPs pursuant to the OCP Procedures and thereby avoid any subsequent controversy with respect thereto.

13. Retaining the OCPs as provided herein is reasonably necessary for ensuring that the Debtors can continue operating in the ordinary course of business, and the Debtors will closely monitor expenses for the OCPs. In addition, the OCPs will not perform substantial bankruptcy-related services without filing an application with the Court for separate retention as a non-ordinary course professional.

14. Moreover, in light of the number of OCPs and the costs associated with the preparation of retention applications for professionals, it would be impractical, inefficient, and extremely costly for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP. Therefore, it is in the best interests of all creditors and parties in interest to retain the OCPs in accordance with the OCP Procedures and avoid any disruption in the professional services that are required for the day-to-day operation of the Debtors' business.

15. Although some of the OCPs may hold unsecured claims against the Debtors relating to services rendered to the Debtors prepetition, the Debtors do not believe that any of the OCPs have an interest materially adverse to the Debtors, their creditors, or other parties in interest. In any event, the OCP Procedures include a requirement that each OCP file a Declaration of Disinterestedness before an OCP can be compensated.

16. The relief requested herein is commonly granted by courts in this district. *See, e.g.*, *In re Avenger Flight Group, LLC*, No. 26-10183 (MFW) (Bankr. D. Del. Mar. 20, 2026) (approving comparable OCP procedures); *In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Jan. 5, 2026) (same); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. Aug. 6, 2025) (same); *In re JOANN Inc.,* No. 25-10068 (CTG) (Bankr. D. Del. Mar. 4, 2025) (same); *In re Liberated Brands*, No. 25-10168 (CTG) (Bankr. D. Del. Feb. 27, 2025) (same); *In re Am. Tire Distribs.*, No. 24-12391 (CTG) (Bankr D. Del Nov. 18, 2024) (same); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2024) (same).

17. For the reasons set forth herein, the relief requested herein is in the best interests of the Debtors, their estates, their creditors, and other parties in interest and should be granted.

**Waiver of Bankruptcy Rule 6004(h)**

18. To implement the foregoing successfully, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

19. The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) counsel to the Committee if appointed; (c) counsel to the DIP Lender; and (d) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

20. No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

Dated: November 9, 2026
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Bradford J. Sandler*

Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bsandler@pszjlaw.com
pkeane@pszjlaw.com

-and-

KTBS LAW LLP
Michael L. Tuchin (admitted *pro hac vice*)
Nir Maoz (admitted *pro hac vice*)
1801 Century Park East, Twenty-Sixth Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: mtuchin@ktbslaw.com
nmaoz@ktbslaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*