**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749 (CTG)<br><br>(Jointly Administered)<br><br>**Objection Deadline: November 23, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: November 30, 2026 at 1:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

Cerca Trova Restaurant Group Holdings, Inc. and its affiliated debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**"), hereby apply (the "**Application**") to the United States Bankruptcy Court for the District of Delaware (the "**Court**"), for entry of an order, substantially in the form attached hereto as Exhibit C (the "**Proposed Order**"), pursuant to sections 327, 328, 329, and 1107 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), Rules 2014(a), 2016(b), and 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), authorizing the Debtors to retain and employ Stout Risius Ross, LLC ("**Stout**") as their financial advisor, effective as of the Petition Date (as defined below), on the terms of the engagement letter between Stout and the Debtors,

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

dated October 2, 2026 (the "**Engagement Letter**"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference. In support of the Application, the Debtors submit the *Declaration of Douglas J. Brickley in Support of Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Stout Risius Ross, LLC as Financial Advisor to the Debtors Effective as of the Petition Date and Statement Pursuant to Bankruptcy Rule 2016(b)* (the "**Brickley Declaration**"), attached hereto as Exhibit B and incorporated herein by reference. In further support of the Application, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. The Court has jurisdiction over the Cases and the Application pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Cases and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the Court's entry of a final judgment or order with respect to the Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and other bases for the relief requested herein are sections 327, 328, 329, and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016(b), and 9013, and Local Rules 2014-1 and 2016-1.

## II. BACKGROUND

4. On November 2, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") in the Cases.

5. The Debtors operate sixty-one (61) Outback Steakhouse® restaurants in California, Arizona, Colorado, Nevada, and New Mexico as franchisees of Outback Steakhouse of Florida, LLC (the "**Franchisor**"), an affiliate of Bloomin' Brands, Inc. The Franchisor is also the Debtors' postpetition lender (in such capacity, the "**DIP Lender**") and the stalking horse bidder (in such capacity, the "**Stalking Horse Bidder**") under an asset purchase agreement dated as of November 1, 2026 (the "**Stalking Horse Agreement**"), which permits the Stalking Horse Bidder to credit amounts advanced under the Debtors' postpetition financing facility against the purchase price. Goldman Sachs Specialty Lending Group, L.P. is the administrative and collateral agent (the "**Prepetition Agent**") under the Debtors' prepetition secured credit facility. The Debtors commenced the Cases to pursue a sale of substantially all of their assets under section 363 of the Bankruptcy Code.

6. Additional information about the Debtors' business, capital structure, and the circumstances leading to the Cases is set forth in the *Declaration of David Goronkin in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**") [Docket No. 4].

## III. SCOPE OF ENGAGEMENT AND COMPENSATION

7. The Debtors have agreed to engage Stout pursuant to the terms of the Engagement Letter, and request that the Court approve such terms and conditions of employment as reasonable pursuant to section 328(a) of the Bankruptcy Code; provided that Stout's compensation and reimbursement of expenses shall be subject to review and allowance under sections 330 and 331 of the Bankruptcy Code.

8. Subject to the terms of the Engagement Letter, Stout will support the Debtors in the Cases by providing various restructuring and financial advisory services for the Debtors, including, but not limited to:

a) negotiating the terms of any debtor-in-possession financing or agreement regarding the use of cash collateral on behalf of the Debtors;

b) investigating and preparing the Debtors' go-forward business and restructuring strategies;

c) conferring with all retained estate professionals, including Debtors' legal counsel, investment banker, and financial advisors;

d) communicating with creditors of Debtors and meeting with representatives of such constituencies;

e) assisting in the preparation of statements of financial affairs, schedules, first day motions and other regular motions and reports required by the Court or which Debtors are otherwise obligated to prepare and provide;

f) reviewing payments or transfers by or for the benefit of Debtors to ensure compliance with the Bankruptcy Code and applicable orders of the Court;

g) negotiating bidding procedures and advising the Debtors on the terms of any proposed sale of the Debtors' assets;

h) assisting in the formulation and prosecution of any plan of reorganization or liquidation for the Debtors;

i) assisting in the review of reports or filings as required by the Court or the U.S. Trustee, including, but not limited to, schedules of assets and liabilities, statements of financial affairs, and monthly operating reports;

j) reviewing the Debtors' financial information, including, but not limited to, analyses of cash receipts and disbursements, financial statement items and proposed transactions for which Court approval is sought;

k) reviewing and analyzing of the reporting regarding cash collateral and any debtor-in-possession financing arrangements and budgets;

l) assisting with reviewing any potential cost containment opportunities proposed by the Debtors;

m) assisting with reviewing any potential asset redeployment opportunities proposed by the Debtors;

n) reviewing and analyzing assumption and rejection issues regarding executory contracts and leases;

o) reviewing and analyzing the Debtors' proposed business plans and the business and financial condition of the Debtors generally;

p) assisting in evaluating reorganization strategy and alternatives available, including any asset sale transactions;

q) reviewing and analyzing the Debtors' financial projections and assumptions;

r) assisting in preparing documents necessary for confirmation of any plan, proposed asset sales, and proposed use of cash and/or financing;

s) advising and assisting the Debtors in negotiations and meetings with creditors and other parties-in-interest;

t) assisting with the claims resolution procedures including, but not limited to, analyses of creditors' claims by type and entity;

u) providing forensic accounting and litigation consulting services and expert witness testimony regarding confirmation and/or transactional issues, avoidance actions or other matters; and

v) other such functions as requested by the Debtors to assist in the Cases and taking any and all other actions that are necessary or appropriate to advise and assist the Debtors pursuant to the Engagement Letter, the Bankruptcy Code, and applicable orders of the Court.

9. As set forth in the Engagement Letter, in consideration for providing the services set forth herein and in the Engagement Letter, the Debtors have agreed to pay Stout as follows:

| Professional | Standard Hourly Rates |
|---|---|
| Managing Director | $800 - $975 |
| Director | $600 - $750 |
| Manager/Senior Manager | $425 - $575 |
| Analyst/Associate | $300 - $450 |
| Administrative Personnel | $125 - $275 |

10. Additionally, Stout shall be entitled to reimbursement of actual, necessary, reasonable, and documented out-of-pocket expenses incurred by Stout in connection with the services, as more specifically described in the Engagement Letter and the Brickley Declaration, subject to approval of the Court.

11. Stout's hourly rates are reconsidered annually, with changes effective October 1 of each year beginning in October 2027, except that the hourly rate of Douglas J. Brickley, $975, will remain the same for the duration of the engagement. Stout will provide ten (10) business days' notice to the Debtors, the U.S. Trustee, and any statutory committee appointed in the Cases before any increase in its hourly rates takes effect, and will file such notice with the Court. Consistent with the Engagement Letter and Local Rule 2016-1(d)(ix), non-working travel time will be billed at no more than 50% of Stout's hourly rates. Stout's fees do not include taxes or other governmental charges, which the Engagement Letter provides will be separately identified on Stout's invoices.

12. In connection with timekeeping and submitting interim and final fee applications, Stout will maintain and submit detailed records of all work performed by date and project categories, identifying the hours worked and tasks performed by each individual timekeeper by date, and will keep time records in one-tenth (0.1) hour increments in compliance with Local Rule 2016-1(d)(ix).

13. Stout will apply for interim and final allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with the Cases, subject to approval of the Court and compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders of the Court establishing procedures for interim compensation and reimbursement of expenses of professionals. The Debtors and Stout understand and agree that Stout's compensation and reimbursement of expenses are subject to sections 330 and 331 of the Bankruptcy Code.

14. The Engagement Letter attaches Stout's professional terms (the "**Professional Terms**"). The Professional Terms provide that the Debtors will, to the fullest extent allowable by law, defend, indemnify, and hold harmless Stout, its affiliates, and their respective owners, employees, contractors, and agents from and against all losses arising out of Stout's services or the engagement, except to the extent finally determined by a court of competent jurisdiction to have resulted primarily from the actual fraud, bad faith, gross negligence, or willful misconduct of an indemnified party (Professional Terms § 8(a)). The Professional Terms also (i) limit Stout's total liability relating to the engagement to the fees received for the portion of the engagement giving rise to liability and exclude special, consequential, incidental, and exemplary damages (Professional Terms § 8(b)); (ii) provide for New York governing law and exclusive jurisdiction in New York courts, except that claims may also be heard and determined by the Court during the Cases, and contain a mutual waiver of jury trial (Professional Terms § 17(i)); (iii) permit either party to terminate the engagement on ten (10) days' written notice (Professional Terms § 11(a)); and (iv) provide that Stout will invoice the Debtors at its hourly rates, plus expenses and reasonable attorney fees, for responding to subpoenas relating to the engagement, and that, during the Cases, any fees and expenses of Stout's counsel will be

included in Stout's fee applications and will be subject to approval under sections 330 and 331 of the Bankruptcy Code (Professional Terms § 9). The Debtors and Stout have agreed that the indemnification, contribution, reimbursement, and limitation-of-liability provisions of the Engagement Letter are subject to the modifications set forth in the Proposed Order.

## IV. RELIEF REQUESTED

15. By the Application, the Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code authorizing the employment and retention of Stout as financial advisor for the Debtors, effective as of the Petition Date, in accordance with the terms and conditions of the Engagement Letter.

## V. BASIS FOR RELIEF REQUESTED

16. Under section 327(a) of the Bankruptcy Code, the trustee or debtor in possession is authorized, with the Court's approval, to employ one or more professional persons that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, to represent or assist the debtor in possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. §§ 101(14) and 327(a). Section 1107(b) of the Bankruptcy Code modifies section 327(a) in cases under chapter 11 of the Bankruptcy Code, providing that a person is not disqualified for employment by a debtor in possession under section 327 of the Bankruptcy Code solely because of such person's employment by, or representation of, the debtor before the commencement of the case. 11 U.S.C. § 1107(b).

17. The Debtors respectfully submit that it will be necessary to employ and retain Stout pursuant to section 327(a) of the Bankruptcy Code to assist the Debtors in the Cases.

18. The Debtors believe that Stout possesses extensive knowledge and expertise in the areas relevant to the Cases and is therefore qualified to provide the requested specialized

services. Stout has a history of success in past bankruptcy engagements, and the Debtors believe that Stout's professionals will provide tangible, identifiable, and material benefits to the Debtors' estates in the Cases. Since its engagement on October 2, 2026, Stout has become familiar with the Debtors' businesses, finances, and operations, and Mr. Brickley submitted the *Declaration of Douglas J. Brickley in Support of the Debtors' DIP Financing and Cash Collateral Motion*. [Docket No. 16.] Accordingly, the Debtors believe that retention of Stout on these terms is necessary and appropriate, and in the best interests of the Debtors' estates and their creditors.

19. Stout will use reasonable efforts to coordinate with the Debtors' other retained professionals, including Brookwood Associates, L.L.C., the Debtors' proposed investment banker, KTBS Law LLP and Pachulski Stang Ziehl & Jones LLP, the Debtors' proposed co-counsel, and Stretto, Inc., the Debtors' claims and noticing agent, to avoid unnecessary duplication of services. Under the Engagement Letter, Stout will not provide investment banking services, serve as an officer or director of any Debtor, or act as an investor in or acquirer of any Debtor or its assets in connection with this matter.

20. To the best of the Debtors' knowledge, Stout (including its partners and employees) is not a creditor, equity security holder, or insider of the Debtors, nor do Stout's professionals have any direct or indirect relationship to, connection with, or interest in the Debtors that would make their interests materially adverse to the interests of the estates or of any class of creditors or equity security holders. The details of all other connections between Stout and the Debtors or their creditors are set forth in the Brickley Declaration.

21. Further, except as noted in the Brickley Declaration, Stout does not have any connection with the Debtors' accountants, creditors, any other party in interest, the U.S. Trustee, or any person employed by the office of the United States Trustee for the District of Delaware.

Based upon the Brickley Declaration, the Debtors believe that Stout is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and is therefore qualified to be employed by the Debtors pursuant to section 327(a) of the Bankruptcy Code.

22. As set forth in the Brickley Declaration, the Engagement Letter provides for a $200,000 retainer, which is to be replenished to its initial amount if drawn against to satisfy an invoice. Stout received retainer payments (collectively, the "Retainer") from the Debtors in the total amount of $400,000 paid in installments of: (i) $200,000 on October 5, 2026 and (ii) $200,000 on October 27, 2026. Immediately prior to filing the Cases, Stout applied $253,985.45 of the Retainer to all fees and expenses then incurred by Debtors. In total, Stout was paid $253,985.45 for fees and expenses prior to the Petition Date. Accordingly, Stout was not owed any fees or expenses as of the Petition Date and has waived any claim for prepetition fees and expenses not satisfied from the Retainer, and Stout is holding a total of $146,014.55 remaining Retainer in the client trust account.

23. Stout has not shared, or agreed to share, any compensation as may be awarded by the Court, except as among partners of Stout and its employees, as set forth herein and in the Brickley Declaration.

## VI. NOTICE

24. The Debtors will provide notice of the Application to: (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) the Prepetition Agent and its counsel; (iv) the Franchisor and DIP Lender and its counsel; (v) counsel to any statutory committee appointed in the Cases; and (vi) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be given.

## VII. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Brickley Declaration, the Debtors respectfully request that the Court enter the Proposed Order, (i) authorizing the Debtors to employ and retain Stout as financial advisor for the Debtors, effective as of the Petition Date, and (ii) granting the Debtors such other and further relief as the Court may deem just and proper.

Dated: November 9, 2026

Respectfully submitted,

Cerca Trova Restaurant Group Holdings, Inc., *et al.*,
Debtors and Debtors in Possession

*/s/ David Goronkin*
David Goronkin
Chief Executive Officer