# EXHIBIT A

## Engagement Letter

STOUT

**CONFIDENTIAL**

**October 2, 2026**
Out West Restaurant Group, Inc.
c/o David Goronkin
8885 Rio San Diego Drive, Suite 360
San Diego, CA 92108

with a copy to:
KTBS Law LLP
1801 Century Park East, Twenty Sixth Floor
Los Angeles, CA 90067
Attention: Michael L. Tuchin

***RE: Out West Restaurant Group Engagement Agreement (the "Agreement")[1]***

Dear Mr. Goronkin:

On behalf of Stout Risius Ross, LLC ("Stout"), I am pleased to confirm the arrangement under which we will provide certain services to Out West Restaurant Group, Inc., a California corporation; Cerca Trova Restaurant Group Holdings, Inc., a Delaware corporation; Cerca Trova Southwest Restaurant Group, LLC, a Florida limited liability company; Cerca Trova Steakhouse, Inc., a California corporation; and Cerca Trova Steakhouse, L.P., a California limited partnership (each, a "Company Party," and collectively, "Client" or the "Company").

## Services and Scope

The Company is evaluating restructuring alternatives, which may be implemented through cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware or such other bankruptcy court as the Company may determine (the "Bankruptcy Court"). Client hereby retains Stout to provide financial advisory and consulting services to the Client in connection with the foregoing (collectively, the "Services"). Stout further understands that Client is interested in obtaining objective and independent analyses in connection with this matter. Stout will report to Client verbally from time to time, and at the direction of the Company and the Company's Counsel, KTBS Law LLP ("Counsel"), on the progress of the work and preliminary findings, and will provide written deliverables as reasonably requested.

Stout will not provide investment banking services, serve as an officer or director of any Company Party, or act as an investor in or acquirer of any Company Party or its assets in connection with this matter. Stout will use reasonable efforts to avoid duplicating services provided by the Company's other retained professionals.

Any Services Counsel requests in anticipation of litigation or to assist Counsel in rendering legal advice, will be performed at Counsel's direction. The parties intend that such work, and communications among Stout, the Company and Counsel concerning such work, be protected by the attorney-client privilege and the work-product doctrine to the fullest extent permitted by law. Stout will maintain such work product separately and will not disclose it without Counsel's consent, except as required by law or order of a court,

[1] The term "Agreement" as used herein shall include any and all exhibits and schedules attached hereto.

or as needed for Stout's retention application, fee applications and related disclosures under the Bankruptcy Code and Bankruptcy Rules (which Stout will prepare in consultation with Counsel).

The Services to be provided are intended for use only in connection with this matter and no other purpose. It is expressly understood that any reports or other documents produced by Stout will not be provided to nor may they be relied upon by any third parties except as expressly stated in this Agreement, without first obtaining Stout's prior written consent. Notwithstanding the foregoing, the Company and Counsel may provide Stout's reports, budgets, and other work product (i) to the Company's prepetition secured lenders, any postpetition lender, any purchaser or potential purchaser, the U.S. Trustee, any official committee, and their respective advisors, and (ii) to the Bankruptcy Court, including as exhibits to or in support of pleadings and declarations; provided that no such recipient shall be a third-party beneficiary of this Agreement or be entitled to rely on such work product as against Stout.

## Staffing

This engagement will be under the overall supervision of Mr. Douglas J. Brickley; however, other members of the firm will assist in the engagement. In the event it becomes necessary to reassign this engagement to another Stout professional, we will notify you promptly and give you an opportunity to evaluate with us the appropriate professional whose skill sets and experience most closely match the requirements of the engagement. We may also use contractors, as appropriate, to assist in performing the services.

## Company's Responsibilities

The Company acknowledges that the successful delivery of our Services, and the fees charged, are dependent on: (i) providing Stout timely, accurate and complete data within the Company's control and to the Company's knowledge; (ii) obtaining any necessary licenses and authorizations required for Stout to use the data or materials made available by the Company; and (iii) timely notice to Stout of any direction, event, or change that may impact the Services.
The Company shall be solely responsible for the work and fees of any other party engaged by the Company to provide services in connection with the engagement hereunder, regardless of whether such party was introduced to the Company by Stout.

## Fees, Expenses and Billing Arrangements

***Fees***

Our hourly rates are based on experience, training, and level of professional achievement. It is often necessary to consider other factors such as the complexity of the work, prior experience, and engagement timing in establishing staffing for the engagement and our fees. Current hourly rates for our professional staff range from $125 to $975. Our standard hourly rates, reflected below, are reconsidered annually with changes effective October 1st of each year (beginning in October 2027), with the exception of Doug Brickley, whose rate shall remain the same for the duration of this engagement. Stout shall provide the Company at least 15 days' notice of any increase in Stout's hourly rates. During the Chapter 11 Cases, Stout will also file a notice of any rate increase with the Bankruptcy Court at least 10 days before the increase takes effect.

| Professional | Standard Hourly Rates |
|---|---|
| Managing Director | $800 - $975 |
| Director | $600 - $750 |
| Manager/Senior Manager | $425 - $575 |
| Analyst/Associate | $300 - $450 |
| Administrative Personnel | $125 - $275 |

Any estimate of anticipated fees for Services that may be provided to the Company prior to or during the course of the work is Stout's best estimate of the effort that will be required to complete the services based on the information available to Stout at the time. Under no circumstances shall it be deemed a maximum fee or a fixed price. The fees above do not include taxes and other governmental charges (which will be separately identified in our invoices).

The parties understand and agree that the Company shall be solely responsible for paying any amounts that are or become owed to Stout pursuant to this Agreement or in connection with Stout's engagement hereunder, including Stout's fees, reasonable and documented out-of-pocket expenses and any indemnity obligations, in each case subject, during the Chapter 11 Cases, to approval of the Bankruptcy Court.

***Expenses***

In addition to the hourly professional fees, the Company shall also pay all reasonable and documented out-of-pocket disbursements, costs and expenses incurred by Stout and its sub-consultants in connection with the services described herein (e.g., airfare, hotel, car rental, copying of documents, telephone calls, postage and shipping, etc.). Stout will provide a reasonable itemized statement of such expenses, and shall provide copies of original invoices or other documentation on itemized expenses upon request. Non-working travel will be billed at 50% of Stout's hourly rates.

***Retainer***

As is standard practice for an engagement of this type, we require a retainer in the amount of $200,000 before commencing work. This retainer is not intended to represent an estimate of the total cost of the work to be performed. Although it is the intent of the parties that Client pay the invoices without the need of Stout drawing down on the retainer, the retainer may be applied to any invoice at our discretion or to our final invoice at the conclusion of the engagement. If the retainer is drawn against to satisfy or reduce an invoice, the retainer shall be promptly replenished by the Client. If at any point in our engagement the retainer balance reaches zero, we reserve the right to cease work until such time as the retainer balance has been sufficiently replenished to its initial amount. By "cease work", we mean that we may refuse to make our employees available to the Client and/or its advisors. We will notify you if the retainer balance is nearing zero so that the Client has sufficient time to replenish the retainer and keep the engagement moving on schedule. At the end of our engagement, any unused portion of the retainer will be promptly refunded to the Client. An invoice for the retainer is enclosed.

***Billing***

Stout will submit our invoices to the Company on a monthly basis as our work progresses. Invoices will be presented to the Company and paid by the Company in accordance with the attached Professional Terms – Exhibit 1. All payments required hereunder shall be paid by wire or ACH transfer, as instructed by Stout. During the Chapter 11 Cases, Stout's fees and expenses will be subject to approval of the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the Bankruptcy Court (the "Local Rules"), and any other order establishing procedures for interim compensation, and Stout will keep contemporaneous time records in one-tenth (0.1) hour increments by project category in compliance with Local Rule 2016-2.

***Bankruptcy Retention***

**If the Company commences Chapter 11 Cases, the Company will promptly apply to retain Stout as its financial advisor under sections 327(a) and 328(a) of the Bankruptcy Code, effective as of the commencement date, and Stout will cooperate in preparing the retention application and will provide the disclosures required by Bankruptcy Rule 2014, including supplemental disclosures as additional connections become known. Stout's Services during the Chapter 11 Cases are subject to entry of an order of the Bankruptcy Court approving Stout's retention (a "Retention Order"). If this Agreement is inconsistent with a Retention Order, the Retention Order controls. The Company will give Stout a reasonable opportunity to review the retention application and proposed Retention Order before filing, and will pay Stout's outstanding invoices before the commencement date so that Stout is not a prepetition creditor. If the Retention Order is not entered, or is entered on terms that are not reasonably acceptable to Stout, Stout may terminate this engagement and will be paid for Services rendered and expenses incurred through the termination date, subject to Bankruptcy Court approval.**

## Professional Terms

The attached Professional Terms apply to this engagement. Please execute and return a copy of this letter.

* * * * * * *

We appreciate the opportunity to be of service to you and look forward to working with you on this engagement.

Very truly yours,

**STOUT**

By: [signature]
DOUGLAS J. BRICKLEY
Managing Director

Attachments: Professional Terms

Acknowledged and Accepted:

**Out West Restaurant Group, Inc.**

Signed: ______________________

By: David Goronkin

Title: Chief Executive Officer

Date: 10/2/26

STOUT

# EXHIBIT 1

## STOUT PROFESSIONAL TERMS

***To the extent there is a binding order of a bankruptcy court governing Stout's Services and/or the services of any Stout personnel (such order, a "Retention Order"), the terms and conditions of such Retention Order shall control.***

**1. Our Services** We will provide the services described in the Agreement, as may be modified from time to time with the consent of the Company and Stout. Stout's conclusions and work product may only be used by the parties to the Agreement for the purposes expressly set forth therein, and are in no way intended for, nor may they be relied upon by or disclosed to, any other person or entity, or used for any other purpose, without our express, prior written consent, except as provided in the Agreement or as required in connection with the Chapter 11 Cases.

**2. Independent Contractor** We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable employee withholdings.

**3. Fees, Expenses and Billing** Our fees and expenses are set out in our Agreement. Those fees do not include taxes. The Company will be responsible for and pay all applicable sales, use, excise, value added, and other taxes associated with the receipt of the services, excluding taxes on our income generally. If Stout's fees are subject to any such taxes referenced in the preceding sentence, then, to the extent known by Stout, Stout will include such taxes on its invoices as separate line items. Invoices are due upon presentation and will be considered past due 30 days after the invoice date. We reserve the right to defer rendering further services until payment is received on past due invoices, in which event we will not be responsible or liable for any resulting loss, damage or expense connected with such suspension. In the event the Company disagrees with or questions any amount due under any invoice, the Company agrees to communicate such disagreement to us in writing within 30 days of the invoice date specifying the question or reason for the disagreement. If any uncontested bill remains unpaid for 30 days after invoicing, we may, at our sole discretion and right, send the matter to an outside agent for collection. Stout reserves the right to seek pre-judgment or post-judgment interest to which Stout may be entitled by law in the event that it must bring an action to recover unpaid bills. The collection and interest provisions of this Section 3 shall not apply during the Chapter 11 Cases; the deferral provision will apply only to amounts approved for payment by the Bankruptcy Court that remain unpaid when due.

**4. Confidentiality** With respect to any information supplied in connection with this engagement and designated by any party as confidential, or which the other party(s) should reasonably believe is confidential, non-public or proprietary based on its subject matter or the circumstances of its disclosure, the other party(s) agree to protect the confidential information in a reasonable and appropriate manner, not to disclose confidential information without the prior consent of the party to which such confidential information belongs, and to use confidential information only to perform its obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) disclosed by a third party without restriction, (iv) independently developed, or (v) disclosed pursuant to legal requirement or order. Following the completion of our engagement, but not before such time, we may mention the name of the Company and/or use the Company logo and provide a general description of the engagement in our printed or electronic materials, or in our marketing presentations to others; provided that Stout will not use any trademark, service mark, or logo licensed to the Company by its franchisor.

We are not to be characterized as an "expert" for purposes of securities law and we are not to be referred to, either by name or inference, in any public (e.g., S-1) or nonpublic security filing or private placement (any such disclosure document, a "Filing".) Moreover, we are not obligated to provide, nor will we provide, any consent to be named in any such Filing either during the performance of our services or after the conclusion of our engagement. Notwithstanding the foregoing, Stout may be referred to, either by name or inference in connection with any filings with a bankruptcy court presiding over a proceeding under the Bankruptcy Code involving the Company.

**5. Use of Financial & Other Information** In the course of our engagement, we will use financial and other information, including prospective financial information, obtained from you and/or your representatives, and other public and private sources. The scope of our work will not enable us to accept responsibility for the accuracy and completeness of such information, and it is understood that we will have no duty of independent investigation or verification of such information. While our work may involve analysis of various records, our engagement does not include an examination, audit, review,

compilation, or other form of attestation in accordance with generally accepted auditing standards known as "GAAS", or standards under the Public Company Accounting Oversight Board known as "PCAOB". Accordingly, we will not express an opinion or any other form of assurance thereon. Additionally, our services should not be relied upon to detect errors, irregularities, fraud, or other illegal acts. Furthermore, we will take no responsibility for the achievability of any expected, forecasted, projected, or hypothetical results anticipated or assumed by the Company or its representatives, whether relied upon by us or not.

**6. Our Work Product and Your License** Upon full payment of all amounts due to us in connection with this Agreement (or as to deliverables filed with or submitted to the Bankruptcy Court), all right, title and interest in our deliverables will become your sole and exclusive property, except as set forth below. We will retain sole and exclusive ownership of all right, title and interest in our work papers, proprietary information, processes, methodologies, know how, and software, including such information as existed prior to the delivery of our services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of services for you (collectively, "Stout Property"). To the extent our deliverables to you contain Stout Property, we grant you a non-exclusive, non-assignable, royalty-free license to use it in connection with the subject of the engagement and for no other or further use without our express, prior written consent.

**7. Our Warranty** We warrant that our services will be performed with reasonable care in a diligent and competent manner. You acknowledge that you possess sufficient expertise to review Stout's performance of its services and any reports or opinions delivered by Stout, and that you will review any reports or opinions delivered by Stout prior to using Stout's reports or opinions to negotiate or approve any transaction.

We do not warrant and are not responsible for any third party products or services. Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE.

**8. Liability and Indemnification**

(a) The Company, its successors and assigns, will to the fullest extent allowable by law, defend, indemnify, and hold harmless Stout, its affiliates, and its and their respective owners, employees, contractors, and agents (each an "Indemnified Party") from any and all obligations, charges, claims, losses, costs, fees, expenses, damages, and liabilities (including reasonable and documented attorneys' fees and costs) (collectively, "Losses") arising out of our services or this engagement or any matter referred to herein, regardless of the cause of the alleged injury or damage, except to the extent such Losses are finally determined by a court of competent jurisdiction to have resulted primarily from the actual fraud, bad faith, gross negligence or willful misconduct of an Indemnified Party. With respect to litigation or other adversarial proceeding exclusively between Stout and the Company with respect to this Agreement that is not in any way related to a claim by a third-party, the indemnity provision in this paragraph shall not apply, and the prevailing party in such proceeding shall be entitled to recover, in addition to any other appropriate amounts, its reasonable costs and expenses in connection with such proceeding, including, but not limited to, reasonable and documented attorneys' fees and expenses and court costs, except that this provision shall not apply to any claims brought by any person or entity asserting claims on behalf of or in right of the Company, including, without limitation, a claim made derivatively, or by a shareholder, receiver or person serving in a similar capacity, which claims shall be covered by the indemnity provisions set forth in this paragraph. During the Chapter 11 Cases, Stout shall not be entitled to recover fees or expenses incurred in defending its fee applications or any objection to its fees.

(b) Our total liability relating to this engagement will in no event exceed an amount equal to the fees we receive for the portion of the engagement giving rise to liability, and will not include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).

(c) For the avoidance of doubt, the obligations of Stout are solely corporate obligations. No director, officer, employee, agent, shareholder or controlling person of Stout shall be subject to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to or beneficiary of this Agreement.

**9. Response to Subpoena** In the event we receive or are served with a subpoena, court, governmental, or other legal order, notice, or request for investigation or information (collectively, "Subpoena") that requires us to produce documents

in our possession, provide testimony, cooperate with your legal counsel, or hire outside counsel, in connection with this Agreement (regardless of whether such Subpoena is served during or subsequent to the completion of our work), we will invoice you at our standard hourly rates applicable at the time such services are rendered. We will also invoice you for our related, reasonable and documented out-of-pocket expenses, including, but not limited to, copying charges, courier fees, travel expenses and reasonable attorney fees. Notwithstanding anything to the contrary in this Agreement, expenses incurred related to Stout's response to a Subpoena do not require your advance approval; provided that Stout agrees to consult with the Company regarding any such response to a Subpoena; provided, however, that (i) declarations, testimony, and document production in connection with the Chapter 11 Cases shall constitute Services compensable under the Agreement and not a Subpoena response under this Section 9, and (ii) during the Chapter 11 Cases, any fees and expenses of Stout's counsel shall be included in Stout's fee applications and are subject to approval of the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, without regard to whether such counsel has been retained under section 327 of the Bankruptcy Code.

**10. Non-Solicitation** During the term of this Agreement, and for a period of one year following its expiration or termination, you will not actively solicit, employ or otherwise engage any of our employees (including former employees) who were involved directly in the engagement.

**11. Termination**

(a) Any party may terminate the Agreement at any time upon 10 days written notice.

(b) Stout may suspend or terminate this engagement immediately and without notice in the event of non-payment of amounts due to us, except that, during the Chapter 11 Cases, this right applies only to amounts approved for payment by the Bankruptcy Court that remain unpaid when due.

(c) You will pay us for all services rendered, expenses incurred by us to the effective date of termination, subject, during the Chapter 11 Cases, to approval of the Bankruptcy Court. The Company shall have no obligation to pay any fees for Services performed after the effective date of termination, other than reasonable time spent winding down and preparing Stout's fee applications.

**12. Our Financial Interest / Compensation / Waiver of Conflicts** None of our employees who will work on this Matter have any known financial interest in the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach. We do not warrant or predict results or final developments in this matter.

Stout's determination of conflicts is based on the substance of the work to be performed on an engagement as opposed to the parties involved. We have performed an internal search for potential conflicts based on the names of the parties you have provided and will disclose all such connections to the Company and, in the Chapter 11 Cases, in accordance with Bankruptcy Rule 2014. We have not found any situations which, in our view, constitute actual conflicts of interest and which would impair our ability to objectively provide assistance in the matter. We reserve the right to resign from this matter at any time if conflicts of interest arise or become known to us that, in our judgment, would impair our ability to perform Services objectively. We also reserve the right to accept engagements with other parties consistent with internal, prior practices, and will not be required to advise the Company of such engagements; provided, however, during the term of this Agreement, Stout will not represent any other party adverse to the Company in connection with the Chapter 11 Cases or any sale or other transaction involving the Company, and will promptly disclose to the Company and Counsel (and during the Chapter 11 Cases, supplement its Bankruptcy Rule 2014 disclosures with respect to) any new material connection with a party in interest identified through its conflicts process. If appropriate, Stout will institute procedures to protect the confidentiality of information provided by the Company on this matter.

**13. Staffing** While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel (including contractors), as appropriate, to perform the services.

**14. Conclusion of Engagement** Except as otherwise required by law or special circumstances, at the end of this engagement or upon its termination as set forth above, Stout will notify you outlining Stout's case closing procedures. Stout will return all case information provided by the Company, and provide the Company with Stout's final work product in appropriate media as agreed by Stout and the Company. In the event that there are special circumstances (such as a subpoena, court order or other legal hold, or storing of case records and information for the Company for a specified period of time after the scope of work is complete), the Company will be responsible within thirty (30) days for providing Stout with written instructions for Stout to follow. The Company shall be responsible for payment of associated expenses (such as storage, destruction and return shipment costs) incurred by Stout in preserving documents due to such special

circumstances. These associated expenses may be submitted to the Company after the final invoice for Stout's Services has been rendered.

**15. No Officer or Director Role** No Stout principal, employee, or contractor will serve as an officer or director of any Company Party.

**16. [Reserved.]**

**17. General**

(a) This Agreement constitutes the entire understanding and agreement between us with respect to the services and deliverables described in the Agreement, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by all parties.

(b) The Agreement may be executed in counterparts and signature pages exchanged by facsimile, and each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same agreement.

(c) No term of this Agreement will be deemed waived, and no breach of this Agreement shall be excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(d) The terms of this Agreement which by their nature are to survive this Agreement will survive its expiration or termination.

(e) We will retain files related to this engagement in accordance with our document retention policy, which shall include any computer files or documents that have been created as a result of our automatic archiving and backup procedures.

(f) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that none of the parties has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, none of the parties will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(g) We are not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services. Further, we are not a licensed CPA firm. No services provided hereunder shall be construed as providing tax advice, audit assurances or attestations. Stout has not been engaged to provide investment advice, and is not and shall not be construed as a fiduciary of the Company or any other party to or beneficiary of this Agreement, except, during the Chapter 11 Cases, to the extent expressly provided in a Retention Order.

(h) Any delay or failure on our part to perform the obligations provided herein shall be excused if we are unable to provide the deliverable as the result of an event or occurrence beyond our reasonable control and without our fault or negligence, including, but not limited to, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, epidemics, pandemics, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns); provided that written notice of such delay (including the anticipated duration of the delay) shall be given to the Company as soon as possible after the event or occurrence (but in no event more than 10 days thereafter). If requested by the Company, we shall, within 10 days, provide adequate assurances that the delay shall not exceed 30 days. If the delay lasts more than 30 days or we do not provide adequate assurance that the delay will cease within 30 days, the Company may immediately terminate this Agreement without liability beyond the time and expenses incurred to date.

(i) Any controversy or claim arising between the parties out of or relating to this Agreement shall be in accordance with New York law and shall be filed and maintained in any federal or state court of competent jurisdiction sitting in the county of New York in the state of New York or in the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction over the adjudication of such matters. The parties agree to venue in such courts; provided that such consent and agreement shall not be deemed to require any bankruptcy case involving the Company to be filed in such courts, and if the Company becomes a debtor under the Bankruptcy Code, during any such case, any claims may also be heard and determined before the Bankruptcy Court. Further, you agree that venue in this court is proper, convenient, and to submit to the in personam jurisdiction of this court. The prevailing party shall be entitled to an award of reasonable and documented attorney fees as well as reasonable and documented costs and fees incurred; provided that, during the Chapter 11 Cases, Stout shall not be entitled to recover fees or expenses incurred in defending

its fee applications or any objection to its fees. EACH PARTY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

(j) Each person executing this Agreement on behalf of a certain party represents and warrants that he or she is authorized to execute this Agreement on behalf of said party.

FOR STOUT LEGAL USE ONLY [DO NOT REMOVE] DCI-CORPORATE RECOVERY 2023.01.31

STOUT

October 2, 2026Out West Restaurant Group, Inc.
c/o David Goronkin
8885 Rio San Diego Drive, Suite 360
San Diego, CA 92108

**Retainer Invoice**

For services related to Out West Restaurant Group, Inc. –

$200,000.00

If you have any comments or questions, please do not hesitate to contact Douglas Brickley. Please note that receipt of this retainer amount and a signed engagement letter is required prior to the commencement of our work.

Please remit as follows:

By Wire or ACH Transfer
Stout Risius Ross, LLC
BMO Harris Bank

ACH & Wire ABA Number: 071000288
Account Number: 3998895

Sincerely,

**STOUT**

**Payable Upon Receipt**

FED ID 87-3592543