**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749 (CTG)<br><br>(Jointly Administered)<br><br>**Objection Deadline: November 23, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: November 30, 2026 at 1:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF BROOKWOOD ASSOCIATES, L.L.C. AS INVESTMENT BANKER TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE, (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS, AND (III) GRANTING RELATED RELIEF**

Cerca Trova Restaurant Group Holdings, Inc. and its affiliated debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**") hereby apply (the "**Application**") to the United States Bankruptcy Court for the District of Delaware (the "**Court**") for entry of an order, substantially in the form attached hereto as Exhibit C (the "**Proposed Order**"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing the Debtors to retain and employ Brookwood Associates, L.L.C. ("**Brookwood**") as their investment banker, effective as of the

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

Petition Date (as defined below), on the terms of the engagement agreement between Brookwood and the Debtors, dated June 29, 2026 (the "**Engagement Agreement**"), a copy of which is attached hereto as Exhibit A, (ii) modifying the time-keeping requirements of Local Rule 2016-1(d) as to Brookwood, and (iii) granting related relief. In support of the Application, the Debtors submit the *Declaration of Anish Gandhi in Support of the Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Brookwood Associates, L.L.C. as Investment Banker to the Debtors Effective as of the Petition Date, (II) Waiving Certain Time-Keeping Requirements, and (III) Granting Related Relief* (the "**Gandhi Declaration**"), attached hereto as Exhibit B. In further support of the Application, the Debtors respectfully represent as follows:

## I. JURISDICTION

1. The Court has jurisdiction over the Cases and the Application pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Cases and the Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the Court's entry of a final judgment or order with respect to the Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## II. BACKGROUND

4. On November 2, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") in the Cases.

5. The Debtors operate sixty-one (61) Outback Steakhouse® restaurants in California, Arizona, Colorado, Nevada, and New Mexico as franchisees of Outback Steakhouse of Florida, LLC (the "**Franchisor**"), an affiliate of Bloomin' Brands, Inc. The Franchisor is also the Debtors' postpetition lender (in such capacity, the "**DIP Lender**") and the stalking horse bidder (in such capacity, the "**Stalking Horse Bidder**") under an asset purchase agreement dated as of November 1, 2026 (the "**Stalking Horse Agreement**"), which permits the Stalking Horse Bidder to credit amounts advanced under the Debtors' postpetition financing facility against the purchase price. Goldman Sachs Specialty Lending Group, L.P. is the administrative and collateral agent (the "**Prepetition Agent**") under the Debtors' prepetition secured credit facility. The Debtors commenced the Cases to pursue a sale of substantially all of their assets under section 363 of the Bankruptcy Code.

6. Additional information about the Debtors' business, capital structure, and the circumstances leading to the Cases is set forth in the *Declaration of David Goronkin in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**") [Docket No. 4].

## III. SCOPE OF ENGAGEMENT AND COMPENSATION

7. In June 2026, the Debtors engaged Brookwood to act as investment banker to provide investment banking services focusing on the sale of all or a part of the Debtors (a "**Sale Transaction**").

8. In connection with the potential sale of the Debtors, Brookwood is being engaged to, among other things:

a. Assist in preparing informational memoranda and marketing materials regarding a potential sale transaction, including the Debtors' historical performance, projected growth and earnings capacity, the management structure, and such other information as may be appropriate for distribution to potential lenders, investors, or purchasers;

b. Assist the Debtors in identifying and screening prospective purchasers ("**Prospects**") and developing and managing a due diligence process, including compiling a data room of necessary and appropriate documentation and information related to a potential sale;

c. Coordinate discussions with, and arrange and participate in, meetings with Prospects, including site visits and management presentations;

d. Assist in soliciting and evaluating proposals from Prospects, and assist in negotiating a contract with any final Prospect, including the form, structure, terms, and pricing of any Sale Transaction;

e. Assist with the coordination of activities toward any closing.

9. As set forth in the Engagement Agreement, and subject to approval of the Court, the Debtors shall pay Brookwood the following:

a. <u>Advisory Fee</u>: (i) fifty-thousand dollars ($50,000) upon execution of the Engagement Agreement (the "**Initial Fee**"); and (ii) monthly fees of twenty-five thousand dollars ($25,000) per month beginning sixty (60) days after execution of the Engagement Agreement (i.e., on or about August 29, 2026, the Engagement Agreement having been executed on June 30, 2026) and continuing until all Sale Transactions have been consummated or either party terminates the Engagement Agreement (the "**Monthly Advisory Fees**" and, together with the Initial Fee, the "**Advisory Fees**").

b. <u>Sale Transaction Fee</u>: If a Sale Transaction is consummated during the term of the Engagement Agreement or during the Tail Period (as defined below), a fee payable in cash at the closing of the Sale Transaction (the "**Sale Transaction Fee**") equal

to the sum of (i) two percent (2.0%) of the Aggregate Consideration (as defined in the Engagement Agreement) up to $30 million, plus (ii) five percent (5.0%) of the Aggregate Consideration in excess of $30 million; provided that the minimum Sale Transaction Fee is $500,000. Notwithstanding the foregoing, (x) in the case of a Sale Transaction with Bloomin' Brands, Inc., the Sale Transaction Fee shall not exceed $500,000 unless the Aggregate Consideration exceeds the Aggregate Consideration set forth in the letter of interest from Bloomin' Brands, Inc. dated as of May 22, 2026, and (y) in the case of a Sale Transaction involving a credit bid by the Debtors' creditors, the Sale Transaction Fee shall not exceed $500,000. Advisory Fees paid through four (4) months after execution of the Engagement Agreement, totaling up to $100,000, will not be credited against the Sale Transaction Fee; Monthly Advisory Fees paid thereafter (beginning five (5) months after execution of the Engagement Agreement) will be credited against the Sale Transaction Fee.

c. Expenses: Regardless of whether a Sale Transaction is consummated, reimbursement on a monthly basis for all reasonable travel and other reasonably documented out-of-pocket expenses directly related to the Engagement Agreement and incurred in connection with Brookwood's services prior to any termination date. Brookwood will not incur any such expenses in excess of $25,000 in the aggregate without the prior written approval of the Debtors.

d. Term and Tail: The initial term of the engagement is twelve (12) months, unless sooner terminated. Either Brookwood or the Debtors may terminate the engagement at any time, with or without cause, upon ten (10) days' written notice. Unless Brookwood resigns or is terminated for cause, Brookwood is entitled to retain, or be paid, the Advisory Fees due prior to termination and to receive the full Sale Transaction Fee (subject to the crediting described above) if, at any time prior to the expiration of twelve (12) months after termination (the "**Tail Period**"), a Sale Transaction is consummated with any party (i) identified in writing by Brookwood during its engagement and prior to the termination date, and (ii) with whom Brookwood or any of its agents had any discussions regarding a potential Sale Transaction during Brookwood's engagement.

10. The Debtors believe that the terms and conditions of the Engagement Agreement were negotiated at arm's length and in good faith, and that the provisions contained therein are reasonable terms and conditions of Brookwood's employment by the Debtors. The Debtors believe the fee and expense structure outlined above is reasonable. The fee and expense structure appropriately reflects the nature of the services to be provided by Brookwood and the fee structures typically utilized by leading investment banking firms of similar stature to Brookwood for comparable engagements, both in and out of court. The fee and expense

structure is consistent with Brookwood's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.

11. Moreover, the Debtors submit the fee and expense structure is reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Brookwood's substantial experience with respect to investment banking services, and (d) the nature and scope of work to be performed by Brookwood in the Cases. In particular, the Debtors believe that the fee and expense structure create a proper balance between fixed monthly fees and contingency fees. Similar fixed and contingency fee arrangements have been approved and implemented in other recent, large chapter 11 cases. [See*, e.g., In re Appvion, Inc.*, Case No. 17-12082 (KJC) (Bankr. D. Del. Oct. 31, 2017); *In re Limited Stores Co., LLC*, Case No. 17-10124 (KJC) (Bankr. D. Del. Feb. 16, 2017); and *In re Essar Steel Minn. and ESML Holdings Inc.*, Case No. 16-11626 (BLS) (Bankr. D. Del. Aug. 6, 2016).]

12. Indemnification and Bankruptcy Amendment. Under the Engagement Agreement, the Debtors agreed to indemnify and hold harmless Brookwood and its officers, employees, and controlling persons from and against any judgments, losses, claims, damages, liabilities, and expenses (including reasonable legal expenses) related to or arising out of Brookwood's engagement, except to the extent finally determined to have resulted primarily from the gross negligence or willful misconduct of Brookwood, and the Engagement Agreement limits Brookwood's liability to the Debtors. The Engagement Agreement also provides that, in the event of a bankruptcy filing, the Debtors will enter into an amendment, subject to Court approval, providing for standard investment banking indemnification for a bankruptcy assignment and for reimbursement of the reasonable and documented fees and expenses of Brookwood's legal counsel, not to exceed $25,000 without the Debtors' prior written consent.

The Debtors and Brookwood have agreed that the indemnification, contribution, reimbursement, and limitation-of-liability provisions of the Engagement Agreement, and any reimbursement of the fees and expenses of Brookwood's counsel, are subject to the modifications set forth in the Proposed Order.

## IV. RELIEF REQUESTED

13. By the Application, the Debtors respectfully request entry of an order, substantially in the form of the Proposed Order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, (i) approving employment of Brookwood as the Debtors' investment banker in the Cases, effective as of the Petition Date, pursuant to the terms of the Engagement Agreement attached to the Application, (ii) waiving certain time-keeping requirements of Local Rule 2016-1(d), and (iii) granting such further and other related relief as the Court finds appropriate.

## V. BASIS FOR RELIEF REQUESTED

14. Section 327(a) of the Bankruptcy Code provides: "[e]xcept as otherwise provided in this section, the [debtor in possession], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out the [debtor in possession]'s duties under this title." 11 U.S.C. § 327(a).

15. Section 328(a) of the Bankruptcy Code provides, in part: "[t]he [debtor in possession] . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

16. Pursuant to Bankruptcy Rule 2014, by the Application, the Debtors seek to retain and employ Brookwood as the Debtors' investment banker under § 327(a) and § 328(a) to assist and advise the Debtors during the Cases, including to provide investment banking services to the Debtors focusing on a sale transaction of all or a part of the Debtors. Given the complexity of the Debtors' assets and business operations, it is necessary for the Debtors to retain Brookwood as investment banker for these purposes and to obtain Brookwood's experienced guidance to ensure a smooth and successful sale transaction.

17. The Debtors have selected Brookwood by reason of its expertise and experience in investment banking and bankruptcy matters and believe that the professionals of Brookwood are well-qualified to assist and advise the Debtors in the Cases. The Debtors believe that the employment of Brookwood as their investment banker in the Cases is in the best interests of the Debtors' estates and their creditors. Brookwood has agreed to serve as investment banker for the Debtors, with all fee applications subject to review by the Court in accordance with applicable law and other orders of the Court. Further, the services that Brookwood will render to the Debtors are essential to the Debtors' successful sale, and the services are necessary to allow the Debtors to negotiate and implement the terms of a sale.

18. Brookwood is well qualified to provide the professional services requested by the Debtors. It is an established investment banking firm that offers a comprehensive range of investment banking services to middle-market companies, and it has substantial expertise and experience in advising troubled companies in connection with asset sales and related issues. Brookwood is a registered broker-dealer and a member of FINRA and SIPC, and its professionals have particular experience in multi-unit, consumer-facing businesses, including restaurant concepts, franchisors, and multi-unit franchisees. Brookwood's managing directors

and directors have in excess of 150 years of experience and have led the successful completion of hundreds of middle market M&A, private finance, and advisory engagements that aggregate in excess of $10 billion total value.

19. As set forth in the Gandhi Declaration, to the best of the knowledge of the Debtors and Brookwood, Brookwood is a "disinterested person," as defined under 11 U.S.C. § 101(14). As explained in the Application and the Gandhi Declaration attached hereto, Brookwood does not hold or represent any interest adverse to the Debtors' estates.

20. As set forth in the Gandhi Declaration, prior to the Petition Date, Brookwood provided investment banking services to the Debtors under the Engagement Agreement attached to the Application as Exhibit A. Since the execution of the Engagement Agreement, Brookwood has received payments from the Debtors totaling $100,000, consisting of (i) the $50,000 Initial Fee, paid on July 1, 2026 and (ii) Monthly Advisory Fees totaling $50,000, paid in installments of $25,000 on each of September 10, 2026 and October 9, 2026. The Monthly Advisory Fee payments, totaling $50,000, were received during the ninety (90) days before the Petition Date. Brookwood has not received any reimbursement of expenses from the Debtors. As of the Petition Date, Brookwood was not owed any amounts by the Debtors. Accordingly, Brookwood holds no claim against the Debtors' estates for services rendered or expenses incurred prior to the Petition Date.

21. As set forth in the Gandhi Declaration, Brookwood conducted a review of certain of the creditors of the Debtors and other parties in interest to determine whether Brookwood represented them in connection with the Cases or in other matters. Except as set forth in the Gandhi Declaration and other than its engagement by the Debtors under the Engagement Agreement, to the best of its knowledge, Brookwood has not represented any entities that are

creditors or parties in interest (or affiliates of creditors and parties in interest) of the Debtors and their affiliates.

22. Brookwood will promptly disclose any material developments regarding the Debtors or any other pertinent relationship that comes to Brookwood's attention by way of a supplemental declaration.

23. Under § 328(a), the Debtors believe the compensation terms described above are the product of good faith negotiations between the Debtors and Brookwood, market-based, fair, and reasonable terms and conditions for the retention by the Debtors of Brookwood as their investment banker in the Cases.

24. All compensation and expense reimbursement of Brookwood will be paid in accordance with the terms of the Engagement Agreement and a final application for compensation and reimbursement of expenses will be filed after closing of a Sale Transaction in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other orders of the Court.

25. The Debtors and Brookwood request that the Proposed Order be entered, with Brookwood's retention effective as of the Petition Date.

## VI. REQUEST FOR WAIVER OF COMPLIANCE WITH CERTAIN TIME-DETAIL REQUIREMENTS

26. Local Rule 2016-1(d) requires that applications for compensation include detailed time records and activity descriptions, including a complete description of each activity, the time spent on each activity recorded in tenth-of-an-hour increments, and the total fee for each time entry.

27. Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not based on hourly rates, Brookwood does

not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. Given the foregoing and that Brookwood's compensation consists of fixed monthly fees and a contingent transaction fee rather than hourly rates, the Debtors request, pursuant to Local Rule 2016-1(h), that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of the Court, or any other guideline regarding the submission and approval of fee applications, Brookwood's professionals be excused from the information requirements of Local Rule 2016-1(d), including the requirement to maintain time records in tenth-of-an-hour increments, in connection with the services to be rendered pursuant to the Engagement Agreement.

28. Brookwood agrees to maintain reasonably detailed summary time records in half-hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed, which records shall be submitted with any fee application filed by or on behalf of Brookwood. Brookwood agrees the U.S. Trustee shall have the right to object to Brookwood's request for final compensation and reimbursement on the reasonableness standard provided under § 330 of the Bankruptcy Code. Further, Brookwood agrees all compensation and expense reimbursement of Brookwood paid during the pendency of the Cases will be subject to a final application to be approved by the Court after a request made in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other orders of the Court.

## VII. NOTICE

29. The Debtors will provide notice of the Application to: (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) the Prepetition Agent and its counsel; (iv) the Franchisor and DIP Lender and its counsel; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the District of

Delaware; (vii) the offices of the attorneys general for all states in which the Debtors conduct business; and (viii) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## VIII. CONCLUSION

WHEREFORE, for the reasons set forth herein, and in the Gandhi Declaration, the Debtors respectfully request that the Court enter the Proposed Order, (i) authorizing the employment and retention of Brookwood effective as of the Petition Date, on the terms described above, (ii) waiving certain of the information requirements of Local Rule 2016-1(d) as to Brookwood, and (iii) granting such other and further relief as is just and proper.

Dated: November 9, 2026

Respectfully submitted,

Cerca Trova Restaurant Group Holdings, Inc., *et al.*,
Debtors and Debtors in Possession

*/s/ David Goronkin*
David Goronkin
Chief Executive Officer