# EXHIBIT A

## Engagement Agreement

Brookwood Associates

EXPERIENCE.
INSIGHT.
INTEGRITY.

**STRICTLY CONFIDENTIAL**

June 29, 2026

Mr. David Goronkin
Chief Executive Officer
Cerca Trova Restaurant Group Holdings, Inc.
Out West Restaurant Group, Inc.
8885 Rio San Diego Drive, Suite 360
San Diego, CA 92108

Dear Mr. Goronkin:

This letter will constitute the agreement between Brookwood Associates, L.L.C. ("Brookwood") and Cerca Trova Restaurant Group Holdings, Inc., Out West Restaurant Group, Inc. and their subsidiaries (collectively, the "**Company**" or "**Out West**") (hereinafter referred to as the "**Agreement**") that Brookwood will serve as the exclusive financial advisor to the Company with respect to any sale transaction involving one or more of the Outback Steakhouse restaurant assets or business owned by the Company (a "**Sale Transaction**").

A. Services. Upon request by the Company in writing, Brookwood's services relating to a Sale Transaction will include, to the extent necessary under the circumstances:

1) Assistance in preparing a memorandum and other materials for a Sale Transaction describing the Company (including its operations and financial information, its history, such financial information as may be appropriate to reflect the Company's past performance and its projected growth and earnings capacity, the management structure and such other information in such detail as may be appropriate under the circumstances and/or reasonably requested by the Company), it being understood and agreed that Brookwood will rely entirely upon publicly available information and information provided by the Company and its officers, directors, accountants and counsel, without independent verification of the accuracy and completeness of such information;

2) Assistance in identifying and screening prospective purchasers ("Prospects") and contacting such Prospects; provided however Brookwood will not contact any Prospect without the prior written approval of the Company; Assistance in developing and managing a due diligence process, including data room materials;

3) Coordination of discussions with and arranging and participating in meetings with Prospects, including Company visits and management presentations;

4) Assistance in soliciting and evaluating proposals from Prospects and negotiating a contract with any final Prospect, including the form, structure, terms and pricing of any Sale Transaction; and

5) Assist with the coordination of activities toward any Closing.

B. Fees and Expenses. In connection with the services described above, the Company shall pay to Brookwood the following compensation:

1) Advisory Fee. (i) $50,000 to be paid upon execution of this Agreement; and (ii) $25,000 per month starting sixty (60) days after execution of this Agreement and continuing until all Sale Transactions have been consummated or either party terminates this Agreement.

2) Sale Transaction Fee. If during the term of this Agreement or after termination of this Agreement by the Company as set forth in Paragraph D below, the Company consummates a Sale Transaction, the Company agrees to pay to Brookwood, at the time of the closing of the Sale Transaction, in immediately available funds, a transaction fee (the "**Sale Transaction Fee**") equal to the sum of:

a. 2.0% of the Aggregate Consideration (as defined below) up to $30 million, plus
b. 5.0% of Aggregate Consideration in excess of $30 million.
c. The minimum Sale Transaction Fee will be $500,000.

The initial Advisory Fee payments (if paid) through four (4) months from the execution of this Agreement totaling up to $100,000 will not be credited against any Sale Transaction Fee. Any of the subsequent Advisory Fee payments paid to Brookwood

(which begin five (5) months from the execution of this Agreement) will be credited against the Sale Transaction Fee.

For purposes of this Paragraph B.2, "**Aggregate Consideration**" will mean the total amount paid or payable, directly or indirectly, to, or for the benefit of the Company of:

i) cash; and

ii) the fair market value (on the date of payment) of all equity and debt securities, including but not limited to, any "stub" equity in the Company that is retained or received by the Company's shareholders or members in exchange for equity ownership in an entity formed to effect a Sale Transaction; and

iii) the fair market value of any property; and

iv) any other form of consideration paid or payable to, or for the benefit of, the Company and/or its shareholders, members, or other security holders and attributable to or in consideration of the Transaction, including, without limitation, payments pursuant to the terms of any non-compete agreements, seller notes, any consideration held in escrow and future payments which are not contingent upon the performance of the Company.

If the right to receive any Aggregate Consideration is subject to contingent payments related to future events, paid in installments, held in escrow for distribution in the future, or subject to post-closing adjustment or vesting, the portion of the sale transaction fee relating thereto shall be calculated and paid only if and when such aggregate consideration is paid, released, such adjustment is made, or such vesting occurs, as the case may be.

For the avoidance of doubt, Aggregate Consideration shall not include, with respect to any assets that are leased by a potential purchaser, the capitalized amount of the lease on the balance sheet of the purchaser upon consummation of a Transaction, in the case of a capitalized lease, or the present value of all future lease payments otherwise.

Brookwood Associates

EXPERIENCE.
INSIGHT.
INTEGRITY.

Notwithstanding anything herein, (i) in the case of a Sale Transaction with Bloomin' Brands, Inc., the Sale Transaction Fee shall not exceed $500,000 unless the Aggregate Consideration exceeds the Aggregate Consideration set forth in the Letter of Interest from Bloomin' Brands, Inc. dated as of May 22 , 2026, and (ii) in the case of a Sale Transaction involving a credit bid by the Company's creditors, the Sale Transaction Fee shall not exceed $500,000.

Expenses. In addition to any fees payable to Brookwood hereunder and regardless of whether a Sale Transaction is consummated, the Company hereby agrees to reimburse Brookwood on a monthly basis for all reasonable travel and other reasonably documented out-of-pocket expenses directly related to this Agreement and incurred in connection with Brookwood's services hereunder prior to any termination date. Brookwood shall not incur any such expenses in excess of $25,000 in the aggregate without the prior written approval of the Company.

C. Indemnity. The Company agrees to indemnify and hold harmless Brookwood and its officers, employees and controlling persons (collectively, an "**Indemnified Party**") from and against any judgments, losses, claims, damages, liabilities and expenses (including legal and other expenses reasonably incurred by Brookwood in connection with investigating or defending against any such loss, claim, damage or liability) to which an Indemnified Party may become subject, related to or arising out of Brookwood's engagement or performance under this Agreement, or any transaction contemplated hereby or any actual or threatened claim, litigation, investigation or legal proceeding relating to any of the foregoing (hereinafter referred to collectively as a "**Claim**"), and shall upon request, reimburse an Indemnified Party for all reasonable legal and other costs as they are actually incurred in connection with investigating, preparing or defending a Claim, whether or not such Indemnified Party is a party to legal proceedings; *provided, however,* that no such indemnification shall be required to be paid with respect to a Claim that it is finally determined (by a court of competent jurisdiction after exhaustion of all appeals, or in an arbitration conducted in accordance with this Agreement) to have resulted primarily from the gross negligence, or willful misconduct of Brookwood.

D. Further Actions in the Event of Bankruptcy Filing. In the event of any bankruptcy filing, the Company agrees to enter into an indemnification and expense amendment to this Agreement, subject to bankruptcy court approval. The amendment will provide for standard investment banking indemnification for a bankruptcy assignment and also provide that the Company will reimburse Brookwood for the reasonable and documented fees and expenses of Brookwood's legal counsel, not to exceed $25,000 without the Company's prior written consent.

E. Term and Termination of Engagement. The initial term of this engagement will be twelve months (the "**Engagement Period**"), unless sooner terminated as provided for herein. Brookwood's engagement hereunder may be terminated by either Brookwood or the Company at any time, with or without cause, upon ten (10) days written notice thereof to the other party; *provided, however*, that unless Brookwood resigns or is terminated for cause, Brookwood will be entitled to retain, or be paid, the Advisory Fees that are due prior to termination and to receive the full amount of the Sale Transaction Fee (subject to the crediting hereunder), in the event that, at any time prior to the expiration of twelve (12) months after Brookwood's engagement is terminated hereunder, a Sale Transaction is consummated with any party (i) identified in writing by Brookwood during Brookwood's engagement hereunder and prior to the termination date, and; (ii) with whom Brookwood or any of its agents had any discussions regarding a potential Sale Transaction during Brookwood's engagement hereunder, whether or not such discussion was initiated by Brookwood. For purposes of this paragraph, "cause," with respect to Brookwood, means the failure to perform reasonably, as determined by Company in its reasonable determination, the services specified in paragraph A, provided that no such failure shall constitute "cause" unless the Company has given Brookwood written notice of such failure and Brookwood has failed to cure such failure to the reasonable satisfaction of Company, within 10 days after receiving such notice. Upon expiration or termination of this agreement, at the written request of the company, Brookwood shall as promptly as practicable, return and destroy all copies of materials containing non-public information concerning the company (whether prepared by Brookwood or otherwise and whether in the possession of Brookwood or any of its agents), and Brookwood shall not retain any extra extracts or other reproductions in whole or in part of such confidential material.

F. Limitation of Engagement. The Company acknowledges that Brookwood has been retained as an independent adviser (and not in any fiduciary capacity) by the Company only, and that the Company's engagement of Brookwood is not intended to confer any rights upon any shareholder or owner of the Company or any other person not a party hereto as against Brookwood and any of its employees or affiliates. Unless otherwise expressly agreed in writing by Brookwood, no one other than the Company and its shareholders is authorized to rely upon this engagement or the services rendered hereunder, and no one other than the Company and its shareholders is intended to be a beneficiary of this Agreement. The Company and Brookwood agree that neither Brookwood nor any of its employees or affiliates shall have any liability to the Company, its security holders or creditors, or any person asserting claims on behalf of or in the right of the Company for any losses, damages, liabilities, costs, expenses or equitable relief arising out of or relating to this Agreement or the services rendered pursuant thereto, except for losses, damages, liabilities, costs or expenses that are finally determined (by a court of competent jurisdiction after exhaustion of all appeals, or in an arbitration conducted in accordance with this Agreement) to have resulted primarily from the negligence, or willful misconduct, or act or omission of Brookwood.

G. Miscellaneous. Except as required by law, any advice rendered by Brookwood pursuant to this Agreement shall not be disclosed publicly without Brookwood's prior written approval and no such legally required disclosure of advice will be made without prior consultation with Brookwood. In addition, no public announcement or filing in which Brookwood's name appears may be made by the Company, its shareholders or its affiliates without the prior written consent of Brookwood not to be unreasonably withheld, delayed or condition; *provided however* that Brookwood's name and services in connection with this Agreement may be disclosed by the Company as part of any court proceeding. This Agreement represents the entire agreement and understanding of the parties hereto and supersedes all prior agreements and understandings, written or oral, relating to the subject matter of this Agreement. This Agreement shall not be modified except in a writing signed by Brookwood and the Company. This Agreement shall not be assigned without the prior written consent of Brookwood and the Company. The Company acknowledges that this Agreement has been negotiated, executed and delivered in Atlanta, Georgia, and that this Agreement shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of

Brookwood Associates

EXPERIENCE.
INSIGHT.
INTEGRITY.

Georgia. Any claim or controversy arising out of or relating to this Agreement, or breach thereof, shall be settled exclusively in a court of the State of Georgia. Each party waives any objection to forum or jurisdiction of the above named courts.

The Company represents to Brookwood that any information provided to Brookwood does not and will not at any time relevant hereto (i) contain any misstatements or untrue statements of a material fact, or (ii) omit to state any and all material facts required to be stated therein or necessary to make the statement therein not false or misleading in light of the circumstances in which they were made. Prior to Brookwood disseminating a sales memorandum describing the Company, the Company will also verify to Brookwood in writing the accuracy and completeness of the contents of the memorandum. The Company will continuously and reasonably advise Brookwood with respect to any material developments or matters that occur or come to its attention during the term of Brookwood's engagement that could reasonably affect to a Sale Transaction.

*****The remainder of this page is left blank intentionally*****

3575 Piedmont Road | 15 Piedmont Center, Suite 820 | Atlanta, GA 30305 | phone 404.874.7433



brookwoodassociates.com

BWA Brookwood Associates

EXPERIENCE.
INSIGHT.
INTEGRITY.

We are pleased to accept this engagement and look forward to working with you and others at the Company. Please confirm that the foregoing is in accordance with your understanding and agreement with Brookwood by signing and returning to Brookwood the enclosed duplicate of this Agreement.

Sincerely,

BROOKWOOD ASSOCIATES, LLC

By: ______________________
Anish Gandhi
Managing Director

ACCEPTED AND AGREED TO:

CERCA TROVA RESTAURANT GROUP HOLDINGS, INC.

By: ______________________
David Goronkin

Title: Chief Executive Officer

Date: 6/30/26