**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CERCA TROVA RESTAURANT GROUP HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11749 (CTG)<br><br>(Jointly Administered) |

**Hearing Date: November 23, 2026 at 2:00 p.m. (ET)**
**Objection Deadline: November 16, 2026 at 4:00 p.m. (ET)**

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING PROCEDURES FOR THE SALE OF DE MINIMIS ASSETS, INCLUDING LIQUOR LICENSES, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) AUTHORIZING THE PAYMENT OF RELATED FEES AND EXPENSES, AND (III) GRANTING RELATED RELIEF**

Cerca Trova Restaurant Group Holdings, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") hereby move (this "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) approving the procedures set forth herein (the "**Procedures**") for the sale of De Minimis Assets (as defined below), including liquor licenses, free and clear of all liens, claims, interests, and encumbrances, (ii) authorizing the payment of related fees and expenses, and (iii) granting related relief. In support of the Motion, the Debtors rely on the *Declaration of David Goronkin in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 4] (the "**First Day Declaration**"). In further support of the Motion, the Debtors respectfully represent as follows:

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Cerca Trova Restaurant Group Holdings, Inc. (5725); Out West Restaurant Group, Inc. (0849); Cerca Trova Steakhouse, Inc. (8902); Cerca Trova Steakhouse, L.P. (2006); and Cerca Trova Southwest Restaurant Group, LLC (8835). The Debtors' mailing address is 8885 Rio San Diego Drive, Suite 360, San Diego, California 92108.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1.

## BACKGROUND

4. On November 2, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the order entered by the Court on November 4, 2026 [Docket No. 50]. No trustee or examiner has been appointed in these chapter 11 cases, and no official committee of unsecured creditors (any such committee, the "**Committee**") has been appointed.

5. The Debtors operate sixty-one (61) Outback Steakhouse® restaurants (the "**Restaurants**") in Arizona, California, Colorado, Nevada, and New Mexico as franchisees of Outback Steakhouse of Florida, LLC. A detailed description of the Debtors' business, capital structure, and the events leading to these chapter 11 cases is set forth in the First Day Declaration.

6. Concurrently with the commencement of these cases, the Debtors filed a motion seeking approval of, among other things, bidding procedures and the sale of substantially all of their assets to Outback Steakhouse of Florida, LLC, as stalking horse bidder, under the *Asset Purchase Agreement* dated as of November 1, 2026 (the "**Stalking Horse Agreement**") [Docket No. 17]. The Debtors also obtained approval, on an interim basis, of (i) postpetition financing provided by Outback Steakhouse of Florida, LLC (in such capacity, the "**DIP Lender**") and the use of the cash collateral of the lenders (the "**Existing Lenders**") under the Debtors' prepetition credit facility, for which Goldman Sachs Specialty Lending Group, L.P. serves as administrative and collateral agent (the "**Prepetition Agent**") [Docket No. 51] (together with any final order, the "**DIP Order**"), and (ii) the continued use of their cash management system [Docket No. 56] (together with any final order, the "**Cash Management Order**").

**A. The De Minimis Assets**

7. In the ordinary course of operating a multi-unit restaurant business, the Debtors from time to time close restaurants and sell assets that are no longer used in their operations. Among those assets are alcoholic beverage licenses (the "**Liquor Licenses**") held for restaurants the Debtors have closed or no longer use, including the ten (10) restaurants the Debtors closed before the Petition Date (the "**Closed Restaurants**"), the leases for which the Debtors have moved to reject [Docket No. 20]. Most of these Liquor Licenses were issued in California, where

licenses of the type the Debtors hold are subject to quota restrictions and must be purchased at market value, and generally may be transferred, subject to the approval of the California Department of Alcoholic Beverage Control, and therefore can likely be sold.

8. Before the Petition Date, the Debtors began marketing certain of these Liquor Licenses. As of the Petition Date, the Debtors had accepted an offer for one Liquor License, were negotiating the acceptance of offers for two others, and were marketing additional Liquor Licenses. These Liquor Licenses, and the other Liquor Licenses and assets described above, are not Acquired Assets (as defined in the Stalking Horse Agreement). The Debtors seek to complete these transactions, and any others that arise during these chapter 11 cases, under the Procedures. The Liquor Licenses and any other assets that are not used in the Debtors' operations and are not subject to the Stalking Horse Agreement are referred to herein as the "**De Minimis Assets**."[2]

9. Liquor License buyers are typically restaurant operators seeking to open or expand a location on a schedule, and the market for these licenses moves quickly. Requiring a separate motion and hearing for each sale would add cost and delay that is disproportionate to the value of each transaction, and could cause buyers to walk away.

## RELIEF REQUESTED

10. By this Motion, the Debtors seek entry of the Proposed Order (a) approving the Procedures; (b) authorizing the Debtors to consummate De Minimis Sales (as defined herein) in accordance with the Procedures, free and clear of all liens, claims, interests, and encumbrances (collectively, "**Interests**"), without further order of the Court; (c) authorizing the payment of

[2] The Debtors are addressing the furniture, fixtures, and equipment remaining at the Closed Restaurants in connection with the rejection of the related leases, and do not seek relief with respect to those assets in this Motion. The proposed order on the Debtors' lease rejection motion [Docket No. 20] provides that liquor licenses held by the Debtors are not abandoned.

Transaction Fees; (d) directing escrow holders for California Liquor License sales to disburse the purchase price as set forth in the Procedures; and (e) granting related relief.

## THE PROPOSED PROCEDURES

11. The Debtors propose the following Procedures, which are set forth in full in the Proposed Order:

(a) **Assets Covered.** The Procedures apply to the sale or transfer of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with an aggregate purchase price (as calculated by the Debtors in their reasonable discretion) of not more than $500,000 (each, a "**De Minimis Sale**"), provided that the aggregate purchase price of all De Minimis Sales under the Procedures shall not exceed $2,500,000 without further order of the Court. The Procedures do not apply to (i) any Acquired Asset (as defined in the Stalking Horse Agreement) or any other asset subject to the Stalking Horse Agreement or an agreement with a Successful Bidder (as defined in the Stalking Horse Agreement), including any liquor license used at the Debtors' operating Restaurants, or (ii) any sale to an "insider" of the Debtors, as defined in section 101(31) of the Bankruptcy Code. A De Minimis Sale with an aggregate purchase price of $100,000 or less is a "**Small Sale**," and any other De Minimis Sale is a "**Noticed Sale**." The Debtors may consummate a Small Sale without further notice, hearing, or order of the Court, other than written notice (which may be by e-mail) to counsel to the Prepetition Agent and counsel to the DIP Lender (together, the "**Lender Notice Parties**"), containing the information required in a Sale Notice under paragraph (b) below (a "**Small Sale Notice**"), at least three (3) business days before closing. If a Lender Notice Party objects in writing (which may be by e-mail) to the Debtors within that period, paragraph (e) below shall apply. The Debtors may close a Small Sale before the end of that period if each Lender Notice Party consents in writing (which may be by e-mail).

(b) **Sale Notice.** At least seven (7) calendar days before closing a Noticed Sale, the Debtors shall file with the Court and serve on (A) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov); (B) counsel to the Prepetition Agent, (1) Goldberg Kohn Ltd., 55 East Monroe Street, Suite 3300, Chicago, Illinois 60603, Attn: Danielle Juhle (danielle.juhle@goldbergkohn.com) and Drake Saffell (drake.saffell@goldbergkohn.com), and (2) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801, Attn: John H.

Knight (knight@rlf.com); (C) counsel to the DIP Lender, BakerHostetler LLP, 127 Public Square, Suite 2000, Cleveland, Ohio 44114, Attn: Michael A. VanNiel (mvanniel@bakerlaw.com) and Alexis Beachdell (abeachdell@bakerlaw.com); (D) counsel to any Committee; (E) any party known to the Debtors to assert a lien on or interest in the applicable De Minimis Assets; (F) for any Liquor License, the applicable alcoholic beverage control authority and the landlord of the licensed premises; and (G) for any Liquor License issued in California, the California Department of Tax and Fee Administration, the California Franchise Tax Board, and the California Employment Development Department (collectively, the "**Notice Parties**") a notice substantially in the form attached to the Proposed Order as **Exhibit 1** (each, a "**Sale Notice**"), which shall identify (i) the De Minimis Assets to be sold, including, for any Liquor License, the license number, license type, and licensed premises; (ii) the Debtor that owns the De Minimis Assets; (iii) the purchaser and any relationship between the purchaser and the Debtors, the Prepetition Agent, or the DIP Lender; (iv) the purchase price and any other material economic terms; (v) any commission, fee, or expense to be paid to a broker, escrow holder, or other third party in connection with the De Minimis Sale (collectively, "**Transaction Fees**"); (vi) any party known to the Debtors to assert a lien on or interest in the De Minimis Assets; and (vii) a certification by the Debtors that the De Minimis Sale was negotiated at arm's length and in good faith and that, to the Debtors' knowledge, the purchaser is not an insider of the Debtors and has no relationship with the Debtors, the Prepetition Agent, or the DIP Lender other than as disclosed.

(c) **Objections.** Any Notice Party may object to a De Minimis Sale by filing a written objection with the Court and serving it on (a) proposed counsel to the Debtors, (i) KTBS Law LLP, 1801 Century Park East, Twenty-Sixth Floor, Los Angeles, California 90067, Attn: Michael L. Tuchin (mtuchin@ktbslaw.com) and Nir Maoz (nmaoz@ktbslaw.com), and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier: 19801), Attn: Bradford J. Sandler (bsandler@pszjlaw.com) and Peter J. Keane (pkeane@pszjlaw.com), and the other Notice Parties, so as to be actually received within seven (7) calendar days after service of the Sale Notice (the "**Objection Period**"). Each objection must state with specificity the grounds for the objection.

(d) **No Objection.** If no objection is timely filed and served, the Debtors may consummate the De Minimis Sale without further notice, hearing, or order of the Court, and the De Minimis Sale shall be deemed fully authorized by the Court. The Debtors may, but need not, submit a proposed order approving any De Minimis Sale under certification of counsel.

(e) **Objection Received.** If a timely objection to a Noticed Sale is filed and served, or a Lender Notice Party timely objects to a Small Sale, and the

objection cannot be resolved consensually, the Debtors shall not consummate the De Minimis Sale unless and until the objection is withdrawn or the Court approves the De Minimis Sale. The Debtors may schedule the objection for hearing at the next omnibus hearing or on such other date as the Court may permit.

(f) **Amended Terms.** If the material terms of a De Minimis Sale are amended after service of the Sale Notice and before closing, the Debtors shall serve an amended Sale Notice, and the Objection Period shall be extended by five (5) calendar days from service of the amended Sale Notice.

(g) **Free and Clear; Proceeds.** Each De Minimis Sale shall be free and clear of all Interests, with all such Interests attaching to the net proceeds with the same validity, extent, priority, and enforceability as they had in the De Minimis Assets immediately before the sale, subject to any rights and defenses of the Debtors. All net proceeds shall be paid to the Debtors and held or applied in accordance with the DIP Order. Each De Minimis Sale shall be on an "as is, where is" basis, without representations or warranties by the Debtors except as set forth in the applicable sale documents.

(h) **Transaction Fees.** The Debtors may pay from the proceeds of a De Minimis Sale, without further order of the Court, the Transaction Fees disclosed in the applicable Sale Notice or Small Sale Notice, provided that any broker commission shall not exceed ten percent (10%) of the purchase price.

(i) **California Liquor License Escrows.** For any De Minimis Sale of a Liquor License issued by the California Department of Alcoholic Beverage Control ("**ABC**"), the escrow holder appointed under section 24074 of the California Business and Professions Code (each, an "**Escrow Holder**") is authorized and directed to (i) pay from the purchase price only (A) the amounts, if any, required to satisfy section 24049 of the California Business and Professions Code as a condition to ABC's approval of the transfer, other than any amounts on account of prepetition penalties or postpetition interest on prepetition taxes, (B) the Transaction Fees disclosed in the applicable Sale Notice or Small Sale Notice, and (C) customary escrow fees and costs; and (ii) remit the balance of the purchase price to the Debtors upon ABC's approval of the transfer. The Escrow Holder shall not pay any other claim filed in the escrow under section 24074 or 24074.1 of the California Business and Professions Code; any such claim shall attach to the net proceeds remitted to the Debtors with the same validity, extent, and priority, if any, it would have had against the purchase price, and may be asserted in these chapter 11 cases. Each Escrow Holder may rely on the Proposed Order without further inquiry.

(j) **Good Faith.** Purchasers in De Minimis Sales consummated in accordance with the Procedures, including the certification required in the Sale Notice

or Small Sale Notice, shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

(k) **Regulatory Matters.** Nothing in the Procedures limits the authority of ABC or any other governmental unit to review and approve the transfer of a Liquor License under applicable law, and the term "Interests" does not include state or local laws or regulations governing the approval of any transfer of a Liquor License, or taxes or fees specifically imposed on a Liquor License under applicable law, except as otherwise provided in paragraph (i) above.

(l) **Reporting.** Within three (3) business days after closing each De Minimis Sale, the Debtors shall file and serve on the Notice Parties a report of sale in accordance with Bankruptcy Rule 6004(f)(1), which, for a Small Sale, shall include the information required in a Small Sale Notice. In addition, within thirty (30) days after the end of each calendar month in which a De Minimis Sale closes, the Debtors shall file a report identifying each De Minimis Sale closed during that month, the purchaser, the purchase price, and the Transaction Fees paid.

12. The Procedures require advance notice of every Noticed Sale to the Notice Parties, which include the Office of the United States Trustee, the Prepetition Agent, the DIP Lender, any Committee, any party known to assert a lien on or interest in the assets, and, for any Liquor License, the applicable licensing authority, the landlord of the licensed premises, and, in California, the state taxing authorities. Those parties will have an opportunity to object before any Noticed Sale closes. Small Sales of $100,000 or less require advance notice only to the Prepetition Agent and the DIP Lender, which hold the liens on the De Minimis Assets, and will be reported to all Notice Parties promptly after closing. The governmental units with an interest in Liquor License transfers, including ABC, the alcoholic beverage control authorities of the other states in which the Debtors hold Liquor Licenses, and the California taxing authorities, will receive notice of this Motion. The Debtors believe the proposed thresholds are appropriate given the value of the De Minimis Assets relative to the Debtors' overall estates.

## BASIS FOR RELIEF

### A. The Procedures Are a Sound Exercise of the Debtors' Business Judgment.

13. Section 363(b)(1) of the Bankruptcy Code provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in this Circuit approve a sale under section 363(b) where the debtor demonstrates a sound business purpose for it. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149–50 (3d Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991). Section 105(a) of the Bankruptcy Code further authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. The Procedures reflect a sound exercise of the Debtors' business judgment. The De Minimis Assets are not used in the Debtors' operations and are not part of the sale to the stalking horse bidder. Selling them will generate cash for the estates without disrupting the sale process, and the Procedures allow the Debtors to do so at a cost proportionate to the value of each transaction. At the same time, the Procedures give every party with an interest in the De Minimis Assets notice and an opportunity to object, and they exclude sales to insiders.

15. Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice of a proposed sale outside the ordinary course of business "unless the court, for cause, shortens the time or orders another method of giving notice." Fed. R. Bankr. P. 2002(a)(2). Bankruptcy Rule 2002(c)(1) requires that notice of a proposed private sale include its terms and conditions and the deadline for objections, and permits the notice to describe the property generally. Fed. R. Bankr. P. 2002(c)(1). Each Sale Notice will meet these requirements. Bankruptcy Rule 6004(f)(1) permits

sales outside the ordinary course of business to be made by private sale, and Bankruptcy Rule 9006(c) permits the Court to reduce notice periods for cause. The Debtors submit that cause exists to shorten notice to the seven (7)-day Objection Period and to limit advance notice to the Notice Parties for Noticed Sales, and to the Lender Notice Parties for Small Sales, given the size of these transactions. .

16. This Court has approved similar procedures. *See, e.g.*, *In re Yellow Corp.*, No. 23-11069 (CTG), D.I. 551 (Bankr. D. Del. Sept. 14, 2023) (approving procedures for sales of up to $5 million per transaction on seven calendar days' notice, free and clear of liens, with section 363(m) protection for purchasers); *In re BLH TopCo LLC*, No. 25-10576 (CTG), D.I. 212 ¶¶ 2–4, 7 (Bankr. D. Del. June 13, 2025) (approving procedures permitting sales of up to $75,000 without advance notice, other than a report of sale, and sales of up to $200,000 on seven calendar days' notice, free and clear of liens, with section 363(m) protection for purchasers). Courts in this District have also approved sales of California liquor licenses held for closed restaurants free and clear of liens, with section 363(m) protection. *See In re RM* Wind-Down *Holdco LLC*, No. 18-11795 (MFW), D.I. 471 (Bankr. D. Del. Jan. 14, 2019); *In re RM* Wind-Down *Holdco LLC*, No. 18-11795 (MFW), D.I. 533 (Bankr. D. Del. Feb. 21, 2019); *see also In re BL Rests. Holding, LLC*, No. 20-10156 (MFW), D.I. 484 ¶¶ 2–3, 8 (Bankr. D. Del. June 22, 2020) (approving procedures for sales of liquor licenses free and clear of liens, with section 363(m) protection, including sales below $75,000 on three business days' notice to the official committee).

**B. The De Minimis Sales Should Be Free and Clear of All Interests.**

17. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of any interest in such property if, among other things, the holder of the interest consents, or the interest is a lien and the price exceeds the aggregate value of all liens on the property. 11

U.S.C. § 363(f)(2), (3). Section 363(f) is written in the disjunctive, so satisfaction of any one of its requirements is sufficient. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). A party that receives notice of a sale and does not object is deemed to consent for purposes of section 363(f)(2). *See id.* at 345–46; *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994).

18. The Debtors anticipate that the Prepetition Agent, on behalf of the Existing Lenders, holds liens on the De Minimis Assets. The Prepetition Agent and the DIP Lender will receive notice of every De Minimis Sale and may object. Any holder of an Interest that does not object should be deemed to consent under section 363(f)(2). In addition, all Interests will attach to the net proceeds of each sale with the same validity, extent, and priority they had in the De Minimis Assets, which protects any holder of a lien or other interest.

**C. The Court Should Direct Escrow Holders to Disburse California Liquor License Proceeds as Provided in the Procedures.**

19. California requires that the purchase price for a Liquor License be deposited into an escrow before ABC approves the transfer. Cal. Bus. & Prof. Code § 24074. Under section 24074, the escrow holder pays from the purchase price the claims of the seller's creditors that are filed in the escrow before ABC approves the transfer, in the order of priority set forth in the statute. *Id.* Separately, section 24049 permits ABC to refuse to transfer a license if the licensee is delinquent in certain state taxes. Cal. Bus. & Prof. Code § 24049.

20. Applied in these chapter 11 cases, section 24074 would permit prepetition creditors to be paid from estate property outside the distribution scheme of the Bankruptcy Code. The Ninth Circuit has held that it may not. In *In re Leslie*, the court held that the proceeds of a California liquor license sale held in a section 24074 escrow passed to the bankruptcy trustee for distribution under federal bankruptcy law, explaining that "[c]onflicting priorities established by

state law must yield upon the intervention of bankruptcy to superior federal law" and that section 24074 "creates statutory priorities, not statutory liens." 520 F.2d 761, 762 (9th Cir. 1975). Although a state, as the creator of a liquor license, "may validly impose conditions on its transferability for the state's own benefit, it may not, consistently with paramount federal law, impose conditions which discriminate in favor of particular classes of creditors." *Id.* at 763.

21. Section 24049 stands differently. Under the Bankruptcy Code, the Ninth Circuit has held that a debtor's estate takes a California liquor license subject to section 24049, because the State, as the license's transferor, reserved that right for itself. *See State of California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.)*, 792 F.2d 1400, 1402–03 (9th Cir. 1986). Even then, the State's priority extends only to delinquent taxes, and not to prepetition penalties or postpetition interest on prepetition taxes. *See State Bd. of Equalization v. Taxel (In re Del Mission Ltd.)*, 998 F.2d 756, 757–58 (9th Cir. 1993). The distinction drawn in *Leslie* controls here: section 24049 protects the State's own revenue, while section 24074 favors particular private creditors over others.

22. The Procedures accommodate both statutes. Escrow Holders will pay any amounts required by section 24049 as a condition to ABC's approval of the transfer (other than prepetition penalties and postpetition interest on prepetition taxes), together with disclosed Transaction Fees and customary escrow costs, and will remit the balance to the Debtors. Escrow Holders will not pay other creditor claims filed in the escrow under section 24074. Those claims will attach to the net proceeds with whatever validity and priority they would otherwise have, and may be asserted in these chapter 11 cases, where they will be treated in accordance with the Bankruptcy Code. This approach preserves the value of the Liquor Licenses for the estates as a

whole, avoids preferring creditors who happen to file claims in an escrow, and gives Escrow Holders the clear direction they need to close.

**D. Purchasers Should Receive the Protections of Section 363(m).**

23. Section 363(m) of the Bankruptcy Code protects a good faith purchaser from the reversal or modification on appeal of an authorization to sell property under section 363(b), unless the sale was stayed pending appeal. 11 U.S.C. § 363(m). The requirement that a purchaser act in good faith "speaks to the integrity of his conduct in the course of the sale proceedings." *Abbotts Dairies*, 788 F.2d at 147 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). The De Minimis Sales will be negotiated at arm's length, will not involve insiders, and will be disclosed to the Notice Parties before closing. Purchasers that acquire De Minimis Assets in accordance with the Procedures should be entitled to the protections of section 363(m).

24. The Debtors recognize that at least one court has declined to find good faith in advance of de minimis sales that have not yet occurred, requiring instead evidence of good faith at or after closing. *See In re Borders Grp., Inc.*, 453 B.R. 477, 484–85 (Bankr. S.D.N.Y. 2011). This Court has approved section 363(m) protection in de minimis procedures. *See Yellow*, D.I. 551 ¶ 13. To provide an evidentiary basis for that protection, each Sale Notice and Small Sale Notice will include the Debtors' certification that the De Minimis Sale was negotiated at arm's length and in good faith, together with disclosure of any relationship between the purchaser and the Debtors, the Prepetition Agent, or the DIP Lender.

**E. Payment of Transaction Fees Is Appropriate.**

25. Liquor License sales are commonly brokered, and California transfers require an escrow. The Procedures permit the Debtors to pay disclosed Transaction Fees from sale

proceeds, subject to a cap on broker commissions. Permitting these payments without a separate application avoids unnecessary expense, and every Transaction Fee will be disclosed in the Sale Notice and subject to objection.

**WAIVER OF BANKRUPTCY RULE 6004(h)**

26. To implement the foregoing successfully, the Debtors request that the Court waive the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent applicable. The Procedures already provide each Notice Party an opportunity to object before any De Minimis Sale closes, and a stay would delay transactions with buyers that need to proceed promptly.

**COMPLIANCE WITH LOCAL RULE 6004-1**

27. Local Rule 6004-1(b) applies to motions to sell property under section 363(b) of the Bankruptcy Code. Because the Procedures govern future De Minimis Sales that have not yet been negotiated, the Debtors cannot attach a purchase agreement or form of sale order for any particular sale; instead, each Sale Notice will disclose the material terms of the applicable De Minimis Sale. Pursuant to Local Rule 6004-1(b)(iv), the Debtors highlight the following provisions of the Proposed Order:

(a) Sale to Insider: the Procedures do not permit sales to insiders (Proposed Order ¶ 2);

(b) Private Sale/No Competitive Bidding: De Minimis Sales will be private sales without an auction, which the Debtors submit is appropriate given the size of the transactions and the notice and objection rights provided by the Procedures (Proposed Order ¶ 2);

(c) Use of Proceeds: net proceeds will be paid to the Debtors and held or applied in accordance with the DIP Order, and disclosed Transaction Fees and amounts required under

section 24049 of the California Business and Professions Code may be paid from proceeds without further order of the Court (Proposed Order ¶ 2);

(d) Good Faith: purchasers will receive the protections of section 363(m) of the Bankruptcy Code (Proposed Order ¶ 2); and

(e) Relief from Bankruptcy Rule 6004(h) (Proposed Order ¶ 8). Because the Motion does not seek approval of bidding or auction procedures in anticipation of an auction, Local Rule 6004-1(c) does not apply.

## RESERVATION OF RIGHTS

28. Nothing in this Motion or the Proposed Order is intended or should be construed as (a) an admission as to the validity, priority, or amount of any claim or lien against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute any claim or lien; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any agreement, contract, or lease under section 365 of the Bankruptcy Code; or (e) a waiver of any of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## NOTICE

29. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Prepetition Agent; (iii) counsel to the DIP Lender; (iv) the holders of the thirty largest unsecured claims against the Debtors on a consolidated basis; (v) counsel to any Committee; (vi) the California Department of Alcoholic Beverage Control and the alcoholic beverage control authorities of the other states in which the Debtors hold Liquor Licenses; (vii) the attorneys general of Arizona, California, Colorado, Nevada, and New Mexico; (viii) all parties known to the Debtors to assert a lien on the De Minimis Assets; (ix) the landlords of the Closed Restaurants; (x) the California Department of

Tax and Fee Administration, the California Franchise Tax Board, and the California Employment Development Department; and (xi) all parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

30. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as is just and proper.

Dated: November 9, 2026

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford J. Sandler*
Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Email: bsandler@pszjlaw.com
pkeane@pszjlaw.com

-and-

KTBS LAW LLP
Michael L. Tuchin (admitted *pro hac vice*)
Nir Maoz (admitted *pro hac vice*)
1801 Century Park East, Twenty-Sixth Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Email: mtuchin@ktbslaw.com
nmaoz@ktbslaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*